LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP
1100 PEACHTREE STREET, NE
SUITE 800
ATLANTA, GEORGIA 30309-4516

(404) 681-3450
FACSIMILE: (404) 681-1046

David H. Flint

E-Mail: dflint@swfllp.com
Direct Dial: (404) 954-9843

July 25, 2011

**CONFIDENTIAL**

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

Judge Timothy C. Batten, Sr.
18 Greenville Street
Newnan, Georgia 30263

RE:   *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089-TCB

Dear Judge Batten:

Delta has recently produced highly relevant documents from backup tapes that Delta previously represented did not exist, and from hard drives that Delta inaccurately represented that it searched previously. As described in more detail below, these newly produced documents contradict the deposition testimony of several Delta witnesses, and help demonstrate that Defendants imposed a first bag fee as the result of a conspiracy. The documents also contradict Delta's prior representations that Delta's discovery responses during the original discovery period provided a comprehensive and complete picture of Delta's first bag fee decision-making, and reveal the need for additional discovery.

Plaintiffs write to address the appropriate response to Delta's tardy production of relevant documents and related issues, namely: (1) to request that discovery be re-opened on a limited basis; (2) to propose a case schedule; (3) to request discovery sanctions against Delta; and (4) to request that Defendants be ordered to produce ongoing correspondence with the Department of Justice related to the agency's bag fee investigation.

## I.      FACTUAL BACKGROUND

Delta recently produced numerous documents responsive to Plaintiffs' discovery requests, even though the documents could have – and should have – been located and produced near the outset of discovery over a year ago.

Letter from D. Flint to Judge Batten
July 25, 2011

Plaintiffs issued their first set of document requests on February 9, 2010. This Court ordered that Delta produce documents responsive to those requests by June 30, 2010, including documents related to first bag fees.[1] Fact discovery lasted almost a year – from January 21, 2010 to December 15, 2010, during which time Plaintiffs incurred substantial discovery-related litigation expenses.

During the original discovery period, Plaintiffs obtained communications between Delta and DOJ regarding Delta's failure to follow DOJ's February 2, 2009 instructions regarding document preservation. *See* DOJ CID at 3 ¶ 5, Ex. 2 (requiring Delta to identify and preserve relevant backup tapes). As this Court is now well aware, Delta failed to suspend auto-deletion of e-mails for several months, and overwrote several monthly backup tapes. *See* Letter from DOJ to Delta (June 26, 2009), Ex. 3. This revelation led Plaintiffs to write to Delta on August 26, 2010 to inquire about Delta's preservation of backup tapes, and to conduct a 30(b)(6) deposition of Delta on October 7, 2010 to inquire about Delta's preservation and production efforts. During the deposition, Delta represented that all backup tapes that were created before April 2009 had been overwritten, including a tape that was overwritten on June 6, 2009. *See* Delta In-House Counsel Scott McClain 30(b)(6) Depo. Tr. 19:3-17; 16:19-20:4, Ex. 4. Delta also represented that it had searched the hard drives of relevant custodians and produced responsive documents. *See id.* 45:5-10.

Because Delta had produced relatively few first bag fee documents in discovery, because there were apparent holes in Delta's document production, and because Delta had failed to preserve documents after receiving the DOJ's CID (and had overwritten at least one backup tape after receiving Plaintiffs' complaint), Plaintiffs filed a motion for spoliation sanctions. In response to Plaintiffs' motion, Delta assured the Court that it "did what it thought was reasonable under the circumstances to go and collect all of the information," and that "all of the e-mails and electronic information that we're aware of that related to Delta's consideration of the adoption of the first bag fee were preserved and were produced in this case." Hr'g Tr. 45:1-3; 42:23-43:1 (Jan. 27, 2011), Dkt. #264. Delta also represented to the Court that "the files that we do have . . . ought to give comfort that the plaintiffs have a full and complete record," and that DOJ had not expressed any concerns about spoliation to Delta. *Id.* 63:14-16; 45:13-17. Indeed, Delta boldly claimed that the "documents and testimony [provided during discovery] provide a comprehensive and complete picture," and that "there is no evidence any material documents have been lost." Delta Spoliation Surreply at 2, 3, Dkt #257. Delta criticized Plaintiffs for arguing that relevant documents were missing, representing that Plaintiffs' arguments about missing documents were "baseless and premised on either complete falsehoods or groundless speculation." *Id.* at 2.[2]

---

[1] *See* Hr'g Tr. 4:7-9 (May 13, 2010), Dkt. #96 (ordering Defendants to produce documents responsive to Plaintiffs' pending document requests by June 30); Pls.' First Request for Production to Delta, No. 2 (Feb. 9, 2010), Ex. 1 (requesting documents relating to Delta's decision to implement a first bag fee).

[2] *See also* Statement of R. Allen, Hr'g Tr. 48:20-21 (Jan 27, 2011), Dkt. #264 (stating that there was "nothing in [the relevant documents] to indicate or to insinuate that there's some missing piece in Delta's documents").

Letter from D. Flint to Judge Batten
July 25, 2011

But on February 17, 2011, after reviewing the spoliation hearing transcript, DOJ wrote to Delta stating that DOJ was "troubled to learn . . . that Delta apparently destroyed a backup tape in June 2009," after DOJ had raised document preservation issues with Delta. Letter from DOJ to Delta (Feb. 17, 2011), Ex. 5. DOJ also questioned why documents related to first bag fees that were produced to the DOJ in connection with a slot swap investigation had not been produced in connection with the bag fee investigation. *Id.* These documents included, for example, an e-mail related to first bag fees dated September 2008 from the files of Gail Grimmett – the head of Delta's Bag Fee Team – even though Delta had previously represented to the Court that all of Ms. Grimmett's first bag fee e-mails had been permanently deleted. *See* Delta Response to Spoliation Motion at 27 n.22, Dkt#210.

After receiving DOJ's February 17, 2011 letter, Delta did not promptly correct its factual misrepresentations to the Court concerning the completeness of its first bag fee document production (despite submitting a letter to the Court on February 22, 2011 in further support of its spoliation opposition). Rather, Delta waited until March 1, 2011 – after the Court issued an Order on February 22, 2011 denying Plaintiffs' request for spoliation sanctions – to notify Plaintiffs and the Court of the issues raised by the DOJ.

On March 17, 2011, almost three months after the close of discovery, Delta admitted to the Court that documents collected in May 2009 from the hard drives of relevant custodians "were missed in the original search and have not been produced" because "the relevant data . . . was not uploaded." Letter from Delta to J. Batten at 2 (Mar. 17, 2011), Ex. 6.[3] Unfortunately, as described below, Delta's admission regarding its failure to produce documents from its hard drives would ultimately pale in comparison to Delta's subsequent admission that—notwithstanding its sworn testimony and representations to the Court that all relevant backup tapes had been erased—in fact Delta's IT staff possessed a significant number of relevant backup tapes.

Specifically, on March 8, 2011, DOJ asked if Delta had backup tapes older than April 2009 for any relevant bag fee custodians. *See* Letter from Delta to DOJ (Mar. 8, 2011), Ex. 7. In response, the very next day, Delta asked its IT staff – for the first time – where backup tapes were normally stored. The IT staff directed Delta to a closet where a number of unsearched backup tapes were located.[4] The existence of these backup tapes – in the very location where Delta's IT staff knows that Delta stores its backup tapes – contradicted Delta's prior sworn representations that no backup tapes existed that were created prior to April 2009.[5] Delta

---

[3] *But see* McClain 30(b)(6) Depo. Tr. 45:6-10, Ex. 4 ("We captured all of the custodians, you know, imaged their hard drives . . . and then used filtering tools to sift through that for responsive material.").

[4] Delta described these events to Plaintiffs' counsel – Daniel Kotchen, Daniel Low, and Stuart McCluer – in a telephone call on or around April 13, 2011. Delta has subsequently backed away from this description. *See* E-mail from R. Allen to D. Low (July 12, 2011), Ex. 10.

[5] *See* McClain 30(b)(6) Depo. Tr. 19:3-17, Ex. 4; Delta's Responses to Pls.' First Set of Requests for Admission, No. 34, Ex. 11; *see also* Delta's Response to Pls.' Fourth Set of Interrogatories, No. 7, Ex. 12 (stating that Delta is not aware of any backup tapes containing e-mails related to

Letter from D. Flint to Judge Batten
July 25, 2011

subsequently located hundreds of additional backup tapes in two other locations that it had not previously searched. Letter from R. Allen to J. Batten at 2 (Apr. 15, 2011), Ex. 8. Dozens of backup tapes were created from July 2008 through January 2009, and contain e-mails from some of the custodians relevant to this case. *Id.* The data preserved on the backup tapes is limited to email files. *See* Letter from Delta to DOJ at 2 (Apr. 27, 2011), Ex. 9. Other types of files were not preserved on these backup tapes. *Id.*

The files of at least eight custodians who were involved in Delta's bag fee decision or analysis were not included on any of the relevant backup tapes that have been located, including four individuals identified by Delta as having responsibility for analysis and recommendations regarding bag fees (i.e., Jeff Bertram, Kathy Howard, Tom Holton, and Daniel Elkon), and four members of the Corporate Leadership Team allegedly responsible for approving the fee (i.e., Mike Becker, Ben Hirst, Ned Walker, and Theresa Wise).[6] The files of several other custodians requested by Plaintiffs are also missing from the backup tapes. *See* Letter from Delta to Plaintiffs at 3 (July 8, 2011), Ex. 13 (identifying 8 additional potential custodians whose files were not located on the existing backup tapes or in the slot swap collection).

In March and April 2011, Delta and DOJ exchanged several letters in which DOJ raised questions about Delta's preservation and production efforts, representations made by Delta, and substantive issues related to AirTran's October 23, 2008 earnings call. *See, e.g.*, Letter from DOJ to Delta (Mar. 11, 2011), Ex. 14 ("[W]e have additional questions . . . relating to the adequacy of Delta's response to [the] CID."); Letter from DOJ to Delta (Mar. 29, 2011), Ex. 15 ("In May and June 2009, . . . it became clear that Delta had failed to take timely steps to preserve relevant documents"); *id.* at 2 (disputing Delta's representation that placement of three CID custodians on a litigation hold server "'ought to give comfort that plaintiffs have a full and complete record,'" where "these custodians retained the ability to manually delete files, were not subject to litigation holds that involved document requests related to bag fees, and do not appear to have been subject to a different backup procedure."); Letter from Delta to DOJ (Apr. 27, 2011), Ex. 9 (discussing Delta employees who accessed AirTran's October 23, 2008 earnings call on the internet and discussing "deficiencies in Delta's original production").

In April and May 2011, Delta produced to Plaintiffs approximately 60,000 pages of documents (compared to approximately 103,000 pages produced prior to the close of discovery). A number of these newly produced documents contradict the deposition testimony of Delta witnesses, help demonstrate that Defendants imposed a first bag fee as the result of a conspiracy, and contradict Delta's representations that it had provided a full and complete record of events.

For example, Delta witnesses previously testified that the two executives responsible for making a recommendation regarding first bag fees – Gail Grimmett from Revenue Management and Gil West from Airport Customer Service ("ACS") – were divided on whether they should

---

first bag fees that was in Delta's possession on February 2, 2009 that has been lost or cannot be found).

[6] *Compare* Delta CID Response at 4-5, Ex. 20 (listing relevant custodians involved in the bag fee analysis or who were part of the CLT), *with* Delta Backup Custodian List (Apr. 28, 2011), Ex. 21.

Letter from D. Flint to Judge Batten
July 25, 2011

impose first bag fees. Delta asserted that Mr. West and others in ACS favored a first bag fee
long before AirTran's October 23, 2008 earnings call. *See, e.g.*, R. Anderson Depo. Tr. 47:16-
48:7, Ex. 16 (testifying that ACS favored the first bag fee in June 2008 and that "Gil West was
clearly an advocate toward imposing the bag fee way back at the beginning."); G. Hauenstein
Depo. Tr. 62:19-24, Ex. 17 (testifying that ACS favored first bag fees beginning around July
2008); G. West DOJ Depo. Tr. 117:14-17, Ex. 18 (testifying that ACS favored the first bag fee in
September 2008). This testimony was consistent with the story crafted by Delta. *See* Statement
of R. Allen, Hr'g Tr. 54:22-24 (Jan. 27, 2011), Dkt. #264 ("[T]he Airport Customer Services
group saw the bag fee -- as just pure profits, just an easy revenue stream. They liked it. . . . The
Revenue Management group saw it as an event that was likely to disrupt traffic . . . . So . . . the
battle lines were sort of drawn."). The head of ACS, Mr. West, reported to Executive Vice
President of Operations Steve Gorman, who testified that he supported ACS's position in favor
of first bag fees by July 2008. S. Gorman Depo. Tr. 40:13-17, 43:9-22, Ex. 19 (testifying that by
mid-July, he "took a very strong position, as did ACS, that we need to implement the first bag
fee"); G. West Depo. DOJ Tr. 133:16-134:8, Ex. 18 (testifying that Steve Gorman favored first
bag fees by September 2008).

Delta's sworn testimony about ACS's support for the fee is contradicted by newly
produced documents which indicate that before AirTran's earnings call, Revenue Management
(including Ms. Grimmett) and ACS (including ACS Senior Vice President Mr. West) were
united in their opposition to first bag fees because they anticipated that the imposition of first bag
fees would cause an overall decline in revenue because of market share losses to AirTran and
other airlines. These new documents include several e-mails from Delta executives during the
months immediately preceding AirTran's October 23, 2008 earnings call, including:

June 13, 2008

- E-mail from Executive VP Steve Gorman: "My recommendation to [the] C[orporate]
  L[eadership] T[eam] is we not take this action at this time and have DL as the lone major
  not charging for first bag be a differentiator." DLTAPE 3694, Ex. 22.
- E-mail from CEO Richard Anderson: "Gorman and I agreed yesterday that we will not be
  charging for the first bag." DLTAPE 2911, Ex. 23.

August 22, 2008

- E-mail from Steve Gorman: "I still do not recommend first bag fee. . . . we are concerned
  competitively with CO, Jet Blue and AirTran domestically on the 1st bag fee." DLTAPE
  3404, Ex. 24.

September 5, 2008

- E-mail from ACS Senior Vice President Gil West to Steve Gorman: "I assume we still
  want to hold until Airtran moves?" DLBAG 9726, Ex. 25.
- E-mail from Gil West: "AirTran and jetblue don't charge and they are our key
  competitors in our main hubs. . . . No need to do any[] additional [evaluation] at this
  point . . . ." DLBAG 9724, Ex. 26.

Letter from D. Flint to Judge Batten
July 25, 2011

- E-mail from Gil West to Gail Grimmett: "R[ichard] A[nderson] asked that the two of us determine the fees for the 'new' DL unilaterally (without NW input due to antitrust) . . . I just plan to propose the current DL bag fees for the new DL." DLTAPE 4040, Ex. 27.[7]

October 23, 2008, 8:50 a.m. (just prior to AirTran's 10 a.m. earnings call)

- E-mail from Gil West: "Gail [Grimmett] has analyzed the book away sensitivity. . . . Sounds like [first bag fees are] about a wash in terms of net revenue *which would mean we would not implement 1st bag fee*." DLBAG 11053 (emphasis added), Ex. 28.[8]

Thus, the newly produced e-mails indicate that both Delta divisions responsible for the first bag fee determination – ACS and Revenue Management – opposed first bag fees up until AirTran's October 23 third quarter earnings call. Because of AirTran's earnings call, Delta changed its analysis to reflect that a first bag fee would be positive in terms of net revenue. *See* Value Proposition v.4 at 15 (Oct. 22, 2008), Ex. 32 (finding bag fee would likely result in revenue loss); Value Proposition v. 6 at 16 (Oct. 24, 2008), Ex. 33 (finding bag fee would be profitable); E. Phillips DOJ Tr. 231:15-234:3, Ex. 34. Just days later (despite dropping fuel costs and a long history of not charging such fees), Delta adopted a first bag fee, followed by AirTran. The timing of Delta's change in position regarding first bag fee as evidenced by the newly produced documents  provides strong evidence that the first bag fee was imposed as a direct result of AirTran's October 23, 2008 earnings call.[9]

---

[7] *Compare* G. West DOJ Depo. Tr. 140:3-142:4, Ex. 18 (testifying that ACS favored first bag fees in September 2008, and that ACS's written proposal that a first bag fee should not be charged for the combined Delta-Northwest entity in a September 2008 document "was completely the opposite of" ACS's actual position).

[8] While a recently-produced October 8, 2008 e-mail from Gil West implies that he may have favored a first bag fee in early October 2008 (DLBAG 39341, Ex. 29), Mr. West did not receive a copy of the share shift analysis until October 22, 2008 (DLBAG 9906, Ex. 30), based on which Mr. West concluded that Delta would not impose the fee. (Ex. 28). Before the share shift analysis was conducted, another Delta executive – Ed Bastian – may have favored the fee because he assumed that it would be revenue positive, but wanted to discuss the issue with another executive whose team was conducting the share shift and revenue analysis that the CLT reviewed when deciding to implement a first bag fee. *See* Email from E. Bastian to R. Anderson (Sept. 28, 2008), DLTAPE 3069, Ex. 31 (Anderson: "A lot of revenue involved." Bastian: "Think we prob should do . . . Glen has different thoughts so should have a disc at right time.").

[9] Some witnesses testified that Delta intended to reconsider its position on first bag fees after the summer. *See, e.g.*, G. West Depo. Tr. 84:3-5, Ex. 18 ("[W]e were really on hold for first-bag fee until we get through the summer."); E. Bastian Depo. Tr. 117:22-118:7, Ex. 35. But Delta CEO, Richard Anderson, demanded a review of the first bag fee in late October 2008 (for a fee effective for travel in December 2008). *See* DLTAPE 3665, E-mail exchange between R. Anderson, G. West, G. Grimmett, and S. Gorman (Oct. 21-23, 2008), Ex. 36 (Anderson: "Where are we on the overall fee structure upon closing? . . . Can we have a review?"; G. West: "Gail and I have coordinated the post closing fee structure. The one loose end is the first bag fee. Gail

Letter from D. Flint to Judge Batten
July 25, 2011

Other newly produced documents impeach other aspects of the testimony of Delta witnesses. For example, Steve Gorman testified that Delta did not consider AirTran's position on first bag fees when deciding whether Delta would impose a first bag fee: "Q. . . . was there any discussion . . . about AirTran or what AirTran's position would be . . . on a first bag fee? A. . . . all along we knew there was three other carriers for sure that did not have a bag fee. [A]nd frankly that didn't even enter into our consideration set." Gorman Tr. 44:11-45:2, Ex. 19. Contrary to Mr. Gorman's testimony, however, the newly produced documents make clear that AirTran's position was part of Delta's "consideration set," including e-mails to and from Mr. Gorman himself:

- Aug. 22, 2008 E-mail from S. Gorman: "I still do not recommend first bag fee. . . . we are concerned competitively with CO, Jet Blue and AirTran domestically on the 1st bag fee" DLTAPE 3404, Ex. 24.
- Sept. 5, 2008 E-mail from G. West to S. Gorman: "I assume we still want to hold until Airtran moves?" DLBAG 9726, Ex. 25.

Newly produced documents also undermine representations made by Delta in connection with Delta's opposition to Plaintiffs' spoliation motion about the completeness of its production. For example, Delta stated that all of Gail Grimmett's e-mails regarding first bag fees had been permanently deleted on November 1, 2008, as Ms. Grimmett testified. Delta Response to Spoliation Motion at 27 n.22, Dkt. #210 (citing G. Grimmett Depo. Tr. 34:22-36:21).[10]  But Delta has recently produced a number of e-mails related to first bag fees from the files of Gail Grimmett.[11]

Similarly, Delta asserted that, based on the movement of Mr. Gorman's e-mails to a litigation hold server by December 11, 2008, and Mr. Gorman's testimony that he never manually deleted e-mails, "there is . . . no basis for speculation about lost or destroyed e-mails" from Mr. Gorman's files. Delta Spoliation Surreply at 3-4, Dkt. #257.[12]  Contrary to Delta's

---

has been analyzing the impact the first bag fee would have on pax revenue. We'll set up a review with you."; Anderson: "We need to do it."; S. Gorman: "It is on Monday CLT agenda.").

[10] See also Statement of R. Allen, Hr'g Tr. 62:14-16 (Jan. 27, 2011) ("[T]here's no reason to think that in February of 2009, there was any document on backup tapes or otherwise of Ms. Grimmett's to find.").

[11] See, e.g., Letter from DOJ to Delta (Feb. 17, 2011), Ex. 5 (citing Gail Grimmett e-mail regarding first bag fees produced in connection with the slot swap investigation but not the bag fee investigation); DLBAG 757-1108, 7930-50, 21564-22178, DLTAPE 3669-4093, 15262-15339 (newly produced documents from Gail Grimmett's files, including a number of documents from 2008 regarding first bag fees, e.g., E-mail from H. Halter produced from the files of G. Grimmett (June 13, 2008), DLTAPE 3694, Ex. 39 ("I would like to see DL as the lone major not charging"); E-mail from Pam Elledge produced from the files of G. Grimmett (Sept. 30, 2008), DLTAPE 3978, Ex. 40 (providing input from the Sales department regarding a $15 first bag fee)).

[12] But see Letter from DOJ to Delta (Mar. 29, 2011), Ex. 15 ("[T]he fact that . . . three custodians [including Mr. Gorman] were on Delta's litigation hold server gives us no reason to believe that

Letter from D. Flint to Judge Batten
July 25, 2011

assertion, however, the backup tapes located by Delta contain previously unproduced e-mails from Mr. Gorman's files regarding first bag fees. *See, e.g.*, E-mail from S. Gorman (Aug. 22, 2008), DLTAPE 3404, Ex. 24 ("I still do not recommend first bag fee."); E-mails between S. Gorman and R. Anderson (June 12, 2008), DLTAPE 3414, Ex. 37 (Anderson to Gorman: "I think we hold firm on no first bag fee"; Gorman to Anderson: "Agree. . . . [W]e should message this differentiator.").

In opposing Plaintiffs' spoliation motion, Delta also questioned Plaintiffs' assertion that Delta had failed to produce documents reflecting Delta's reaction to AirTran's October 23, 2008 earnings call. Hr'g Tr. 59:9-15 (Jan. 27, 2011). But among the newly produced documents is an October 24, 2008 e-mail from Glen Hauenstein to Delta's CEO, Richard Anderson, reacting to the earnings call, stating: "[AirTran] clearly want[s] the first bag fees. Will look forward to our discussions on Monday." DLTAPE 3257, Ex. 38.

While the newly produced documents provide evidence of Defendants' conspiracy, additional evidence remains missing. The backup tapes recently located by Delta are only a partial record of the e-mails and backup tapes that existed on February 2, 2009, when Delta received the DOJ CID. Delta did not suspend auto-deletion of e-mails until mid-May 2009, and allowed IBM to destroy five monthly backup tapes in IBM's possession between February 7, 2009 and June 6, 2009. Pls.' Mem. in Support of Spoliation Mot. at 6-7 (Nov. 5, 2010).[13] Delta apparently made no effort to locate or preserve relevant backup tapes in its own possession until March 9, 2011 (well over a month *after* this Court's hearing on Plaintiffs' spoliation motion), when it asked its IT staff where Delta kept its backup tapes. "Neither Delta's IT group nor Delta's outside vendor . . . (IBM) possessed a log of the tapes or a record explaining why and when the tapes were set aside." Letter from Delta to DOJ (Apr. 27, 2011), Ex. 9. Thus, for over two years – from February 2, 2009 to March 9, 2011 – a number of additional backup tapes may have also been destroyed, and Delta has no log or record of such destruction. None of the remaining tapes include any files from numerous relevant custodians. *See* Backup Tape Custodian List, Ex. 21; Letter from Delta to Plaintiffs at 3 (July 8, 2011), Ex. 13.

In April and May 2011, Plaintiffs requested that Delta confirm that it had produced its correspondence with DOJ related to DOJ's first bag fee investigation. Although Delta agreed to produce prior correspondence with DOJ,[14] Delta has refused to produce ongoing correspondence with DOJ, arguing that ongoing correspondence may not be relevant. *See* E-mail from R. Allen to D. Kotchen (May 13, 2011), Ex. 43.

---

relevant documents have not been lost. Notably, Delta produced only six documents [to DOJ] from the files of Steve Gorman and no documents from the files of Ed Bastian and Glen Hauenstein, though all three executives were involved in Delta's first bag fee analysis and decision.").

[13] At the spoliation hearing, Delta represented that it instructed IBM to preserve the tapes by May 13, 2009, but later admitted that the instruction was not issued until as late as June 5, 2009. *See* Letter from Delta to J. Batten at 1-2 (Feb. 16, 2011), Ex. 41.

[14] Delta Responses to Pls.' First Request for Production at 5, Ex. 42.

Letter from D. Flint to Judge Batten
July 25, 2011

Plaintiffs conferred with Defendants about re-opening discovery, a proposed schedule, discovery sanctions, and production of DOJ communications, but the parties were unable to reach agreement.[15]

## II.    ARGUMENT

**A.    Discovery Should Be Re-Opened on a Limited Basis to Allow Plaintiffs to Explore Issues Raised by Newly Produced Documents**

A discovery schedule may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When a defendant fails to produce responsive documents prior to the close of discovery, good cause exists to re-open discovery. *See SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, No. 1:04-CV-0641-JEC, 2008 WL 228032, at *1 (N.D. Ga. Jan. 25, 2008) ("[Because] defendant had failed to produce a number of documents that were responsive to discovery requests . . . the Court granted plaintiff's motion to reopen discovery to allow plaintiff to explore the issues raised by the new documents.").

Delta has recently produced to Plaintiffs approximately 60,000 pages of new documents. This is a substantial volume of new documents, especially considering that Delta's production prior to the close of discovery was approximately 103,000 pages. Plaintiffs have not had an opportunity to question witnesses about these newly produced documents, issue follow-up discovery, or otherwise explore the issues raised by the new documents. Discovery should therefore be reopened on a limited basis to allow Plaintiffs to explore the issues raised by these documents. *SCQuARE Int'l*, 2008 WL 228032, at *1.[16]

**B.    Plaintiffs' Proposed Schedule**

Plaintiffs propose the following schedule:

- Discovery re-opens on a limited basis
- Two weeks after discovery is re-opened and as necessary thereafter: Delta supplements its discovery responses pursuant to Fed. R. Civ. P. 26(e)
- Four months after Delta completes its document production: Close of discovery
- Three weeks after close of discovery: Summary judgment briefs; Plaintiffs' supplemental brief regarding class certification
- Four weeks after summary judgment briefs: Summary judgment opposition briefs
- Three weeks after summary judgment opposition briefs: Summary judgment reply briefs.

---

[15] Plaintiffs conferred with Delta by phone on June 28, 29, 30, and July 14, 2011, the parties exchanged letters on June 17, 30, and July 8, and the parties exchange several e-mails, but were unable to reach agreement.

[16] Plaintiffs do not seek to reopen discovery generally, but only discovery related to topics or issues about which new or additional information is provided by documents produced after the close of discovery.

Letter from D. Flint to Judge Batten
July 25, 2011

Depending on what discovery reveals, Plaintiffs may seek leave of Court to file a supplemental expert report.[17]

**C.      Discovery Sanctions Are Appropriate to Compensate Plaintiffs for the Added Expense Caused by Delta's Late Production of Documents**

This Court should impose discovery sanctions against Delta to compensate Plaintiffs for the incremental expense caused by Delta's late production of documents and incorrect testimony and representations regarding its discovery conduct.   Such sanctions are appropriate under Federal Rules of Civil Procedure 26(g) and 37 because Delta violated this Court's discovery Orders and falsely certified that it had completed discovery without making a reasonable inquiry.

1.      Sanctions Are Appropriate Under Federal Rules of Civil Procedure 26(g) and 37

Delta should be sanctioned because it:  (1) failed to produce responsive documents prior to the discovery deadlines set by this Court; (2) failed to conduct a reasonable inquiry into the existence of e-mail backup tapes; and (3) falsely represented that it did not possess any such backup tapes without even searching its own IT department.  Delta flouted this Court's discovery Orders and ignored the repeated inquiries by Plaintiffs and the DOJ regarding the existence of e-mail backup tapes.  This Court should not condone Delta's blatant disregard for its discovery obligations.

The Federal Rules of Civil Procedure are designed to ensure that parties act reasonably during discovery.  In signing discovery responses, a party is certifying that the response is complete and accurate "to the best of the person's knowledge, information and belief formed *after a reasonable inquiry*."  Fed. R. Civ. P. 26(g)(1) (emphasis added).  This provision "is intended to impose an 'affirmative duty' on counsel to behave responsibly during discovery, and to ensure that it is conducted in a way that is consistent 'with the spirit and purposes of the discovery rules.'" *Mancia v. Mayflower Textile Servs.*, 253 F.R.D. 354, 357 (D. Md. 2008) (Grimm, M.J.) (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments).  Pursuant to this requirement, an attorney is required to make an inquiry that is "reasonable under the circumstances" before providing a discovery response.  Fed. R. Civ. P. 26(g) advisory committee's notes.

The Rules require a party to make a reasonable search for responsive documents in its possession, including documents of which it ought to be aware.  "The federal discovery rules place an affirmative duty upon a party and its counsel to produce not only responsive materials of which they are aware, but also those which they reasonably ought to have been aware." *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D. Ala. 2001).  "'Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.'"  *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 663 (M.D. Fla. 2007) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)).  "'This will invariably involve speaking with information technology personnel, who can explain

---

[17] The parties are currently negotiating over which additional custodians' files should be searched based on the newly produced documents.

Letter from D. Flint to Judge Batten
July 25, 2011

system-wide backup procedures and the actual (as opposed to theoretical) implementation of the firm's recycling policy.'" *Id.* (quoting *Zubulake*, 229 F.R.D. at 432).[18]

When a party fails to comply with its discovery obligations, it should be sanctioned absent proof that its actions are substantially justified. Specifically, Rule 26(g) mandates sanctions where a party fails to make a reasonable inquiry before certifying its discovery responses absent "substantial justification." Fed. R. Civ. P. 26(g)(3).[19] Similarly, Rule 37 provides that sanctions may be imposed for a party's failure to comply with an order to provide discovery, or for a failure to disclose required discovery information, unless that failure is substantially justified. Fed. R. Civ. P. 37(b)(2), (c)(1). A party's failure to comply is "substantially justified" only if the party shows that they made "all reasonable efforts to comply with the court's order." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994).[20] Whether under Rule 26(g) or Rule 37, the question before the court is whether the party acted reasonably under the circumstances. Discovery conduct is substantially justified "if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Under these well-established standards, Delta should be sanctioned. It is undisputed that Delta failed to produce responsive documents on a number of backup tapes prior to the close of discovery. Similarly, it is undisputed that Delta failed to search the hard drives of its custodians for responsive documents prior to the close of discovery. Delta's failure to produce these documents prior to the deadline set by the Court amounts to a failure to comply with this Court's discovery Orders. *See SCQuARE Int'l*, 2008 WL 228032, at *2-3. Delta also repeatedly and inaccurately represented to Plaintiffs and this Court that it possessed no backup tapes that were created prior to April 2009.[21] Similarly, Delta falsely represented to the Court that "all of the e-

---

[18] In determining whether to impose sanctions, it is appropriate to look at all incidents of a party's misconduct. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993).

[19] "Because of the asserted reluctance to impose sanctions on attorneys who abuse the discovery rules, Rule 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it." Fed. R. Civ. P. 26(g) advisory committee's notes; *see also Kipperman v. Onex Corp.*, 260 F.R.D. 682, 689 (N.D. Ga. 2009) (stating that Rule 26(g) sanctions are not discretionary if the rule is violated).

[20] A showing of willfulness or bad faith is not required to justify sanctions (unless the court imposes the severe sanction of a default judgment). *BankAtlantic*, 12 F.3d at 1049.

[21] *See* McClain 30(b)(6) Depo. Tr. 19:3-17, Ex. 4; Delta's Responses to Pls.' First Set of Requests for Admission, No. 34, Ex. 11 (certifying that "the earliest e-mail backup tape that it has preserved is a backup tape believed to contain the April 2009 back up of its Microsoft Exchange servers."); Delta's Response to Pls.' Fourth Set of Interrogatories, No. 7, Ex. 12 (certifying that Delta "is not aware of any backup tape . . . containing e-mails of Delta employees regarding first bag fees that was in Delta's possession, custody, or control on February 2, 2009, but has since been lost, destroyed, overwritten, or otherwise cannot be found."); *see also id.* No. 4 (certifying that Delta is unaware of any evidence relevant to Plaintiffs' claims that was in Delta's possession but was lost or destroyed after February 2, 2009); Delta's Response to Pls.'

mails and electronic information that we're aware of that related to Delta's consideration of the adoption of the first bag fee were preserved and were produced in this case." Hr'g Tr. 42:23-43:1 (Jan. 27, 2011).[22]

And Delta cannot demonstrate that its actions were substantially justified under either Rule 26 or Rule 37 because it failed to take reasonable steps to comply with its discovery obligations. Delta did not, for example, ensure that "'all sources of discoverable information are identified and searched,'" and did not determine "'the actual (as opposed to theoretical) implementation of the firm's recycling policy.'" *Seroquel Prods.*, 244 F.R.D. at 663 (quoting *Zubulake*, 229 F.R.D. at 432). Indeed, prior to the discovery deadline, Delta failed to search the very location in its IT department where backup tapes are normally stored. Delta's failure to discover and search backup tapes held by its IT department and its failure to search and produce documents from the hard drives of its custodians are inexcusable.

Delta's discovery failures are especially egregious in light of the repeated inquiries from the DOJ and Plaintiffs about the dearth of its production and the existence of backup tapes. Here, the DOJ and Plaintiffs repeatedly asked Delta about the existence of e-mail backup tapes and Delta repeatedly denied that any such tapes existed. DOJ instructed Delta to preserve backup tapes on February 2, 2009, and asked Delta about the existence of backup tapes in May and June 2009.[23] Plaintiffs inquired about backup tapes in an August 26, 2010 letter (Ex. 44), in an October 7, 2010 30(b)(6) deposition (Ex. 4), and in discovery requests in November 2010 (Exs. 11, 12).[24] In light of Delta's responses, Plaintiffs filed a motion for spoliation sanctions partly related to backup tapes on November 5, 2010. DOJ again asked Delta about backup tapes on March 8, 2011.[25] Delta did not search the storage area where its IT department normally stores backup tapes until March 9, 2011 – over two years after DOJ instructed Delta to preserve backup tapes, and over six months after Plaintiffs began asking about such backup tapes.[26]

---

Spoliation Motion at 24, Dkt. #210 (asserting "there are no missing or destroyed documents," and that "plaintiffs have a full and complete record"); Hr'g Tr. 63:14-16, Dkt #264; Delta Spoliation Surreply at 2, 3, Dkt. #257 (asserting that Plaintiffs' assertions about missing documents were "baseless and premised on either complete falsehoods or groundless speculation").

[22] Further, Delta inaccurately represented that it had searched the hard drives of relevant custodians and produced responsive documents. McClain Depo. Tr. 45:5-10, Ex. 4.

[23] *See* Letter from DOJ to Delta (June 26, 2009), Ex. 3 ("In addition, we have previously asked whether Delta currently has monthly backup tapes older than April 2009 for any server used by CID custodians.").

[24] Plaintiffs began asking about auto-deletion and preservation of e-mails by June 2010. *See* E-mail from D. Kotchen to S. Gant (June 24, 2010), Ex. 47.

[25] *See* Letter from Delta to DOJ (Mar. 8, 2011), Ex. 7 ("[Q]uestions raised during our call today . . . [include:] Does Delta currently have monthly backup tapes older than April 2009 for any server used by CID custodians?").

[26] *See* Letter from Delta to DOJ at 1 & Ex. A (Apr. 27, 2011), Ex. 9 (stating that numerous tapes were discovered on March 9, 2011 in "a storage area in the offices of Delta's IT group").

Letter from D. Flint to Judge Batten
July 25, 2011

Courts have imposed sanctions under similar facts. *See Metro. Opera Assoc., Inc. v. Local 100, Hotel Employees*, 212 F.R.D. 178, 221-22 (S.D.N.Y 2003) (imposing Rule 26(g) sanctions where plaintiff repeatedly questioned the adequacy of defendant's production, and defendant's counsel repeatedly responded that all relevant emails and computer files had been produced despite having failed to conduct a reasonable investigation); *R & R Sails Inc. v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 527 (S.D. Cal. 2008) (imposing Rule 26(g) sanctions where defendant denied the existence of certain electronic documents that were later produced, where there was no evidence of a reasonable inquiry).[27]

Delta did not comply with its discovery obligations and it did not engage in a reasonable inquiry to ensure that it was complying with its obligations.   As such, Delta should be sanctioned.

        2.      <u>This Court Should Order Delta To Pay Plaintiffs' Fees and Expenses Incurred as a Result of Delta's Discovery Misconduct and Should Bar Delta from Using the Newly Produced Documents</u>

This Court should order that Delta reimburse Plaintiffs' counsel for:   (1) fees and expenses in seeking discovery sanctions, (2) fees and expenses incurred in the extended

---

[27] The Court's spoliation Order found that Delta's discovery obligations that were triggered by actions of the DOJ could not be enforced by Plaintiffs, where Plaintiffs were unable to cite any authority supporting their position that Delta owed a duty to the Court, and not just to DOJ. Dkt. #271 at 15. Two newly decided cases provide such authority. *See Ashton v. Knight Transp., Inc.*, No. 3:09-CV-0759, 2011 WL 734282, at *26, __ F. Supp. 2d __ (N.D. Tex. Feb. 22, 2011); *Surowiec v. Capital Title Agency, Inc.*, No. CV-09-2153, 2011 WL 1671925, at *6 (D. Ariz. May 4, 2011).

In *Ashton*, law enforcement authorities asked a defendant trucking company to preserve e-mails and other relevant evidence in connection with the investigation of a traffic accident. 2011 WL 734282, at *28.   The accident victim's spouse and estate brought suit against the trucking company, and moved for spoliation sanctions.   The Court found that "[t]he duty to preserve evidence is a duty owed to the *court*, not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process." *Id.* at *26 (citing *Victor Stanley v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525-26 (D. Md. 2010)).   Thus, the court held that "the fact that [a law enforcement officer] asked [the defendant trucking company] Knight to preserve . . . messages within days after the accident, unquestionably establishes . . . that Knight had a duty to preserve the communication" in the civil lawsuit. *Id.* at *28.   The Court further found that "Knight's failure to preserve . . . in the face of a request to produce and preserve by a law enforcement agency . . . strongly evinces bad faith." *Id.*

Similarly, in *Surowiec*, a homeowner brought suit against a title company and an employee of the title company that served as an escrow agent.   A third party – the developer who sold the property to the homeowner/plaintiff – had sent a letter to defendants that threatened future litigation.   The court rejected the argument that there was "no duty to preserve evidence relating to any potential claim *by Plaintiff*" because "the duty to preserve evidence 'is a duty owed to the *court*, not to the party's potential adversary.'"   2011 WL 1671925, at *6 (quoting *Ashton*, 2011 WL 734282, at *26).

Letter from D. Flint to Judge Batten
July 25, 2011

discovery period, and (3) fees and expenses related to the motion for spoliation sanctions. This Court should also order that Delta may not use any late-produced documents or evidence during any proceeding.

Under both Rule 26(g) and Rule 37(b)(2)(C), a court *is required* to impose sanctions on a party that violates its discovery obligations. *See* Fed. R. Civ. P. 26(g)(3), 37(b)(2)(C). Rule 37 makes clear that these sanctions must include an award of fees and expenses "caused by" the discovery abuse:

> Instead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). "Rule 37 sanctions are intended to compensate the court and other parties for the added expense caused by discovery abuses, and to penalize the offending party or lawyer." *SCQuARE Int'l*, 2008 WL 228032, at *3 (citing *Wouters v. Martin County, Fla.*, 9 F.3d 924, 933 (11th Cir. 1993)).

The Court is not limited to awarding fees and expenses, however, but instead has broad discretion to fashion appropriate sanctions under Rule 37. *In re Seroquel Prods.*, 244 F.R.D. 650, 656 (M.D. Fla. 2007). When a party fails to obey a discovery order, the court may impose a variety of sanctions, including prohibiting a party from introducing evidence, or as extreme as entry of a default judgment.[28] Rule 37(c)(1) expressly provides that a party that fails to timely supplement its document production "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In factual situations similar to this case, courts have awarded fees and expenses, including fees associated with additional or altered discovery periods. In *BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, for example, the plaintiff learned through independent investigation after discovery had closed that the defendant possessed unproduced responsive documents despite a court order granting a motion to compel production. 127 F.R.D. 224, 226-27 (S.D. Fla. 1989), *aff'd* 12 F.3d 1045 (11th Cir. 1994).[29] The court found that the defendant had "failed to meet its obligation to search" certain files where responsive documents were

---

[28] Under Rule 37, the Court may: (i) order certain facts to be taken as established; (ii) prohibit the disobedient party from supporting the designated claims or defenses, or from introducing evidence; (iii) strike pleadings; (iv) stay proceedings; (v) dismiss the action; (vi) enter a default judgment; or (vii) treat the failure to obey the order as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

[29] *See also Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 326 (N.D. Cal. 1995) ("The fact that Pacific Lumber has belatedly produced documents only after their existence was revealed through another source raises serious concerns about the adequacy of its initial review and possible deliberate failure to produce documents.").

14

Letter from D. Flint to Judge Batten
July 25, 2011

located. *Id.* at 233. The *BankAtlantic* court ordered, among other sanctions: (1) that the defendant pay reasonable costs and attorney's fees for plaintiff's time and preparation in filing the sanctions motion and in preparing for trial, including certain discovery costs; (2) that an instruction be given to the jury on defendant's failure to produce discovery as a factor to be considered in determining defendant's liability; (3) that defendant produce all witnesses requested by plaintiffs; and (4) that defendant produce all responsive documents. *Id.* at 234.

Similarly, in *SCQuARE International*, plaintiff became aware after discovery closed that defendant had failed to produce a number of responsive documents. *SCQuARE Int'l*, 2008 WL 228032, at *3. This court granted plaintiff's motion to reopen discovery, and defendant located over ten thousand pages of unproduced responsive documents. *Id.* at *2. The court prohibited defendant from introducing or relying on the late-produced documents and awarded attorneys' fees and expenses related to the added discovery costs. *Id.* at *3.[30]

Discovery sanctions are "intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999). Delta's failure to timely produce the requested discovery has caused substantial prejudice to Plaintiffs. The extended discovery period is not likely to end until over one year after the original discovery period ended. During this time, Plaintiffs will continue to incur litigation expenses, and will continue to pay overcharges to Defendants for first bag fees.[31] Plaintiffs were also denied the opportunity to ask witnesses about the newly produced documents while the witnesses' memories were relatively fresh. *See Calhoun v. Lilenas Publ'g*, 298 F.3d 1228, (11th Cir. 2002) (stating that delay causes prejudice where "the memories of witnesses have been dulled"). Finally, as a direct result of Delta's discovery abuses, Plaintiffs and the Court have been forced to address collateral discovery issues rather than focusing on the merits:

---

[30] Other courts have similarly found that a sanction of costs and attorneys' fees is appropriate when documents are produced after the close of discovery where the party initially represented that the documents had been destroyed. *See, e.g.*, *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 219 F.R.D. 93 (D. Md. 2003) (Grimm, M.J.) (where 80,000 e-mail records were produced after the close of discovery despite prior representations that they did not exist because they had been deleted, granting Rule 37 sanctions by precluding defendants from using the e-mails as evidence or to prepare or refresh witnesses, and awarding attorneys' fees and expenses to plaintiffs for review of e-mails); *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 151 F.R.D. at 347, 353 (N.D. Cal. 1993) (affirming Rule 37 dismissal of a counterclaim where the defendant falsely represented that documents had been destroyed before belatedly producing them).

[31] Courts have found that "'[p]rejudice from unreasonable delay is presumed. Failure to produce documents as ordered is sufficient prejudice, whether or not there is belated compliance.'" *See In re Seroquel*, 244 F.R.D. at 665 (quoting *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006)). "Particularly in complex litigation, the rules and principles governing the imposition of sanctions require special care because misconduct may have more severe consequences." *In re Seroquel*, 244 F.R.D. at 664 (citing Manual for Complex Litig. § 10.151 (4th ed. 2004)).

Letter from D. Flint to Judge Batten
July 25, 2011

> When a party feels at liberty to disobey not just a discovery request
> but . . . court orders compelling production of the same material in
> its control, weeks or months (as in this case) pass without progress
> in the litigation. Hours, days, weeks of lawyers' time are consumed
> at great expense. Focus shifts from the merits to the collateral and
> needless. This is not speedy, inexpensive, or just.   Just the
> opposite.  And no doubt tolerating such behavior would encourage
> only more of it.   But there is such thing as discovery karma.
> Discovery   misconduct   often   may   be   seen   as   tactically
> advantageous at first.   But just as our good and bad deeds
> eventually tend to catch up with us, so do discovery machinations.
> Or at least that's what Rule 37 seeks to ensure.

*Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011).

As in *SCQuARE*, Delta should be prohibited from using any of the newly produced evidence during the litigation and should be "required to reimburse plaintiff for all of the attorney's fees and expenses that are related to defendant's discovery violations." 2008 WL 228032, at *3. The award should include fees associated both with bringing this request and the reasonable fees and expenses that Plaintiffs will incur during the additional period of limited discovery. *Id.* Here, there is an additional category of fees that should be included in the sanctions – fees and expenses incurred in connection with Plaintiffs' previous motion for spoliation sanctions, which would not have been necessary absent Delta's failure to properly locate, preserve, and produce relevant documents. Plaintiffs filed that motion because it was apparent that Delta's document production was woefully inadequate and because Delta gave sworn testimony that it had deleted numerous relevant back-up tapes and that no other such tapes existed. Since this Court's ruling on that motion, it has become apparent that Plaintiffs were correct to question Delta's document production. Moreover, Plaintiffs' spoliation motion ultimately caused Delta to discover the additional backup tapes and to discover that it had not produced documents from its hard drives. As such, Plaintiffs' fees incurred in connection with their spoliation motion are properly considered an expense that is directly related to Delta's discovery misconduct.

Plaintiffs request that the Court allow them three weeks following the close of discovery to submit an application for relevant fees and costs.

**D.   Delta Should Be Compelled to Produce Its Correspondence with the Department of Justice**

Although Delta has produced prior correspondence with the Department of Justice related to DOJ's bag fee investigation, Delta has inexplicably changed course and is now rejecting Plaintiffs' request that they produce all such future correspondence with DOJ.[32]  Because

---

[32] Correspondence between Defendants and the DOJ related to the bag fee investigation was requested in Plaintiffs' First Set of Requests for Production of Documents, No. 1, Ex. 1.

Letter from D. Flint to Judge Batten
July 25, 2011

Plaintiffs' request is narrowly tailored and seeks relevant evidence, Plaintiffs request that the Court order Delta to produce these documents.[33]

Plaintiffs' request seeks only correspondence related to DOJ's first bag fee investigation, and not correspondence related to other investigations. The volume of responsive documents will not be burdensome to produce. Plaintiffs' request is reasonably calculated to lead to the discovery of admissible evidence – and, in fact, has led to the discovery of admissible evidence. For example, Plaintiffs first learned of Delta's destruction of backup tapes and auto-deletion of e-mails by reviewing June 2009 correspondence between DOJ and Delta. Similarly, a February 2011 letter from DOJ to Delta revealed that Delta had failed to produce to Plaintiffs responsive e-mails from Gail Grimmett and other custodians that had been produced to DOJ. *See* Letter from DOJ to Delta (Feb. 17, 2011), Ex. 5. DOJ identified additional custodians relevant to the bag fee investigation in a March 11, 2011 letter. *See* Letter from DOJ to Delta (Mar. 11, 2011), Ex. 14. Other DOJ letters undermine or contradict certain representations made by Delta to the Court in connection with Plaintiffs' spoliation motion.[34]

Having produced prior communications with DOJ regarding its bag fee investigation, Delta cannot seriously challenge the relevancy and discoverability of these documents. Delta suggests that production of ongoing correspondence should be addressed in the future based on the contents of each piece of correspondence. *See* E-mail from R. Allen to D. Kotchen (May 13, 2011), Ex. 43. But such a document-by-document approach is unwieldy and inefficient, as it would potentially lead to disputes over each piece of correspondence between DOJ and Delta. This Court should not be burdened with these future disputes because Delta has not articulated any defense or privilege that would justify it withholding future DOJ correspondence and in fact there is none. Delta's DOJ communications regarding its bag fee investigation are directly relevant to this litigation, and Plaintiffs respectfully ask this Court to order Delta to produce all such future communications.

---

[33] DOJ informed Delta that it has no objection to Delta providing Plaintiffs with the correspondence between Delta and DOJ. *See* DLBF105606, E-mail from DOJ to Delta (Apr. 14, 2011), Ex. 45.

[34] *See* Letter from DOJ to Delta at 2 (Mar. 29, 2011), Ex. 15 (disputing Delta's representation that placement of three CID custodians on a litigation hold server "'ought to give comfort that plaintiffs have a full and complete record'"). *Compare* Hr'g Tr. 45:13-17 (Jan. 27, 2011) (representation by Delta that DOJ had not expressed concerns about spoliation by Delta), *with* Letter from DOJ to Delta at 1 (Feb. 17, 2011), Ex. 5 ("In May and June 2009, . . . it became clear that Delta had failed to take timely steps to preserve relevant documents"); *and* Letter from Delta to DOJ (Feb. 24, 2011), Ex. 46 ("Based on our discussion on Tuesday, [Delta's] impression [that destruction of backup tapes was no longer an open issue] was obviously in error and we apologize for any confusion. . . . We are anxious to resolve any remaining concerns you have about this issue . . . .").

Letter from D. Flint to Judge Batten
July 25, 2011

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs request: that discovery be reopened on a limited basis; that Plaintiffs' proposed schedule be entered; that discovery sanctions be imposed against Delta awarding Plaintiffs' fees and costs related to Delta's discovery violations, and precluding Delta from relying on the late-produced documents; and that Defendants be ordered to produce correspondence with DOJ related to the first bag fee investigation.

Sincerely,

David Flint

cc:   Bert Rein, Esq.
      Roger Fones, Esq.
      Scott Gant, Esq.
      Randall Allen, Esq.

K:\7691\1\Correspondence\Batten Letter 07 25 11\2011 07 25 Pls to J Batten re backup tapes Final.docx