LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

1100 PEACHTREE STREET, NE

SUITE 800

ATLANTA, GEORGIA 30309-4516

(404) 681-3450

FACSIMILE: (404) 681-1046

David H. Flint

E-Mail: dflint@swfllp.com

Direct Dial: (404) 954-9843

August 26, 2011

## CONFIDENTIAL

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

RE:     *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

Plaintiffs write this reply in response to Delta's August 2 and August 11, 2011 letters to the Court.

Delta admits that it failed to produce e-mails contained on its custodians' hard drives and, even more troubling, that it failed to produce e-mails from back-up tapes in the possession of its IT department notwithstanding its repeated representations to the Court and Plaintiffs that no such back-up tapes existed. In spite of its undisputed failure to produce a plethora of responsive documents, Delta asserts that no discovery sanctions are warranted. However, the Federal Rules clearly authorize the sanctions requested by Plaintiffs, and Delta has failed to demonstrate that its discovery violations were substantially justified. Delta's numerous false discovery certifications to Plaintiffs and the Court and its subsequent "discovery" of additional documents in an obvious repository – only after inquiry by the DOJ – caused Plaintiffs to incur substantial expenses and delayed resolution of this case by over a year. Even if one assumes Delta's actions were not in "bad faith," the narrowly tailored sanctions requested by Plaintiffs are appropriate.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 2
August 26, 2011
Judge Timothy C. Batten, Sr.

# I.  Factual Background

## A.    Delta Failed to Produce Documents from Hard Drives

As Delta concedes, "Delta neglected to search and produce responsive documents from the hard drives collected in May 2009 from the relevant bag fee custodians." Letter from R. Allen to J. Batten at 5 (Aug. 2, 2011) ("Delta Aug. 2 Letter").  Delta admits that this "neglect" was the fault of Delta personnel.  R. Allen to J. Batten at 2-3 (Aug. 11, 2011) ("Delta Letter"). According to Delta, its internal IT personnel were instructed by Delta's in-house counsel to collect the hard drives and upload them for review and production.  *Id.* at 2-3.  But Delta failed to upload the documents.  Delta claims that after the data was collected and should have been uploaded, a Delta IT employee was asked "to confirm that the material loaded into Clearwell was '100% of the user-generated data from the current sweep.'" *Id.* at 2-3 (quoting Ex. 1 ¶ 7).  The Delta employee never confirmed whether the data had been uploaded, and no additional inquiries were made.  *Id.* at Ex. 1.

In February 2010, Delta collected additional hard drives in connection with discovery requests from Plaintiffs.  Delta similarly failed to upload e-mail files from these hard drives for review and production.  Letter from Delta to J. Batten at 2 (Mar. 17, 2011).

## B.    Delta Neglected to Search for Backup Tapes in Delta's Possession

In 2009 and 2010, Delta made little or no effort to search for or locate backup tapes in its possession, and Delta's efforts to locate and preserve certain monthly backup tapes in the possession of its vendor, IBM, were delayed until after documents from the key time period had been destroyed.  On February 2, 2009, DOJ issued a CID to Delta that required Delta to either search or preserve relevant backup tapes.  Delta's vendor, IBM, overwrote five relevant monthly backup tapes between February 7, 2009 and June 6, 2009.  Beginning on or around May 19, 2009, after receiving inquiries from DOJ, Delta began inquiring about IBM's "backup procedures" and "backup strategies" for Delta's Exchange server, as Delta's IT staff was still "not familiar" with backup procedures for Delta's Exchange server e-mails.[1]  IBM explained that

---

[1] *See* Verified Responses (Feb. 16, 2011), Ex. 48, at 2 ("The procedures followed by IBM to back-up Delta's email system were not familiar to Delta's CSIRT staff working on responding to the questions from DOJ."); *id.* at Ex. 3, E-mail from Delta IT to IBM (June 5, 2009) ("I still do not have a complete picture of the *backup strategies* for some systems.  I would like to . . . have complete narrative explanations") (emphasis added); *id.* at Ex. 4, E-mail from S. McClain to IBM (June 8, 2009) (requesting "technical details of the *back up process*") (emphasis added).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 3
August 26, 2011
Judge Timothy C. Batten, Sr.

it possessed three monthly backups of the Delta Exchange server that are rotated monthly.[2]
Delta did not ask IBM to preserve the monthly Exchange server email backup for Atlanta
custodians until on or around June 9, 2009. Verified Responses at Ex. 5, E-mail from IBM to
Delta p. 2 (June 9, 2009), Ex. 48 ("I believe you asked us to execute two follow up actions from
today's [June 9] call . . . . 2. Collect the oldest monthly Atlanta campus exchange server tapes
(those cycling in now for use the 1st Saturday of Jul[y]). . . . Please confirm[.]").

Sometime after June 9, 2009, Delta IT staff obtained an April 2009 backup tape from
IBM and placed it in the offices of Delta's IT group within an "evidence locker," which is "used
by [Delta IT] for the specific purpose of storing evidentiary materials (including . . . backup
tapes)." Delta Letter at 3. In the same evidence locker where Delta IT staff placed the IBM tape,
there were at least two dozen relevant backup tapes that were correctly labeled as having been
made in 2008. *Id.* at 4. In placing the April 2009 tape in the locker, IT staff presumably
observed the presence of additional backup tapes, but they had not been asked to identify the
backup tapes in their possession, and did not report these tapes to counsel. In August 2010,
Delta IT staff looked in the evidence locker and confirmed that the locker contained the April
2009 tape. *Id.* In doing so, the Delta employees presumably would have again observed the
additional relevant backup tapes.

Because of the meager volume of documents produced by Delta in discovery, Plaintiffs
made repeated inquiries to Delta about its document production and preservation, including at a
Rule 30(b)(6) deposition in October 2010. In November 2010, Plaintiffs filed a motion for
spoliation sanctions because Delta had represented that it destroyed all backup tapes created
before April 2009. In connection with the spoliation motion, Delta represented to the Court that
Delta had conducted a "reasonable" investigation, that all e-mails regarding the first bag fee that
Delta was aware of had been preserved and produced, and that "plaintiffs have a full and
complete record." Hr'g Tr. 42:23-43:1, 45:1-3, 63:14-16 (Jan. 27, 2011), Dkt. #264.

On March 8, 2011, DOJ asked Delta about the existence of additional backup tapes.
Letter from Delta to DOJ (March 8, 2011), Ex. 7. The following day, Delta looked for relevant
tapes in the evidence locker for the very first time. *See* Letter from Delta to DOJ at 1 & Ex. A
(Apr. 27, 2011), Ex. 9 (stating that on March 9, 2011, in the course of its investigation of Delta's
document collection, Delta "located a storage area in the offices of Delta's IT group in which a

---

[2] *Id.* at Ex. 3.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 4
August 26, 2011
Judge Timothy C. Batten, Sr.

number of tapes were found").[3]  As soon as Delta looked in the evidence locker, Delta located dozens of relevant backup tapes.[4]

After locating relevant backup tapes in the evidence locker, Delta decided to look – apparently for the first time – in other locations where backup tapes would likely be stored. Letter from Delta to DOJ at 1 (Apr. 27, 2011), Ex. 9 (stating that after locating backup tapes on March 9, 2011, Delta decided to "collect and secure all similar tapes in Delta's possession, custody, or control.").  Delta promptly located hundreds of additional backup tapes, including tapes found in another Delta IT building.  Letter from Delta to J. Batten (Apr. 15, 2011) ("[O]ver 300 tapes . . . were found in . . . an off-site storage facility . . . and two separate Delta IT buildings.").[5]

Before DOJ's March 8, 2011 inquiry about the existence of additional backup tapes, Delta had not undertaken any search for backup tapes other than the monthly tapes in IBM's possession, despite numerous events that should have caused Delta to conduct a reasonable search for backup tapes in its possession, custody, or control, including: (1) Delta's receipt of DOJ's CID on February 2, 2009; (2) DOJ's inquiries about backup tapes in May and June 2009; (3) Plaintiffs' May 22, 2009 Complaint; (4) Plaintiffs' first document requests served on February 9, 2010; (5) Plaintiffs' inquiries about backup tapes, including in an August 26, 2010 letter (Ex. 44); (6) Plaintiffs' October 7, 2010 Rule 30(b)(6) deposition of Delta regarding

---

[3] Delta denies that Delta's counsel asked its IT staff for the first time in March 2011 where backup tapes are normally stored, citing Delta's efforts to locate and preserve backup tapes *in IBM's possession*.  Delta Letter at 3 (citing Pls.' Letter at 3).  But Delta does not dispute its prior admission to Plaintiffs that Delta did not ask Delta IT staff about backup tapes *in Delta's possession* until March 2011.  *Id.*  The documents provided by Delta reflect that it inquired about backup "strategies" and the backup "process," not the actual location or existence of relevant tapes.

[4] Delta submitted declarations from two individuals.  While both state that their "understanding" was that Delta did not possess backup tapes older than April 2009, neither represents that counsel asked IT staff whether older tapes existed, and neither represents that IT staff told counsel that older tapes did not exist.  R. Allen Decl. ¶ 20; S. McClain Decl. ¶ 17.

[5] Delta waited more than a month after Delta's March 9, 2011 discovery of relevant backup tapes before informing Plaintiffs.

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 5
August 26, 2011
Judge Timothy C. Batten, Sr.

document collection and preservation (Ex. 4); (7) Plaintiffs' inquiries about backup tapes in November 2010 discovery requests (Exs. 11, 12); (8) Delta's filing of a November 22, 2010 response and January 5, 2011 surreply opposing spoliation sanctions in which Delta made false representations about the existence of back-up tapes and the completeness of Delta's production; and (9) Delta's representations to the Court at the January 27, 2011 spoliation hearing about the completeness of its production.

**C.**    **Plaintiffs' Efforts to Meet and Confer with Delta About Sanctions**

Plaintiffs made extensive efforts to meet and confer with Delta before requesting sanctions, but Delta stated that it would not agree to the sanctions requested by Plaintiffs, and expressed an unwillingness to further discuss the issue.

In a letter dated June 17, 2011, Plaintiffs informed Delta that they intended to seek discovery sanctions against Delta pursuant to Fed. R. Civ. P. 26(g) and 37. Letter from D. Kotchen to R. Allen (June. 17, 2011) at 2, Ex. 49. In the same letter, Plaintiffs identified to Delta additional discovery that they currently intend to take. *Id.* at 1-2. Delta responded on or around June 24, 2011, when the parties conferred briefly by phone, and scheduled a more extensive meet and confer call that took place on June 28, 2011. The parties conferred by phone again on June 29 and 30, 2011 about the issues raised in Plaintiffs' June 17, 2011 letter. Delta asked for additional details regarding the sanctions that Plaintiffs intended to seek, and Plaintiffs provided additional detail in a June 30, 2011 letter. Letter from D. Low to R. Allen (June 30, 2011), Ex. 50 at 2 (explaining that Plaintiffs intended to seek costs and fees caused by Delta's late-production of documents, including costs and fees related to Plaintiffs' spoliation motion, and an order prohibiting Delta from using the late-produced documents).

Delta responded to Plaintiffs' June 30 letter on July 8, 2011, and stated that it would not agree to sanctions related to Plaintiffs' spoliation motion. Letter from Delta to Plaintiffs at 4 (July 8, 2011), Ex. 13. Although Plaintiffs had already articulated in their June 17, 2011 letter the known discovery that they intend to take, Delta stated that it was not "willing to discuss the issue" of sanctions further unless Plaintiffs "first articulate the discovery they wish to take." *Id.* Plaintiffs responded in a July 11, 2011 e-mail pointing out that they had already shared discovery topics with Delta. E-mail from D. Low to R. Allen (July 11, 2011), Ex. 10. In the same e-mail, Plaintiffs provided additional detail about one of the topics that they intended to explore, and offered to provide additional details regarding the other topics listed in their June 17, 2011 letter.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 6
August 26, 2011
Judge Timothy C. Batten, Sr.

*Id.*[6]  Plaintiffs explained that "[i]t is not possible . . . for Plaintiffs to know the precise scope of discovery that they will want to take, as Delta's document production is incomplete and Plaintiffs will want to follow up on what they learn in discovery." *Id.*  Delta responded that they believed that it would be inappropriate for Plaintiffs to take certain of their proposed discovery (*i.e.*, discovery related to Delta's efforts to locate backup tapes).  E-mail from R. Allen to D. Low (July 12, 2011), Ex. 10.  Delta also repeated its request for Plaintiffs' current understanding of the additional discovery that they intended to take.  The parties conferred by phone on July 14, 2011, and Plaintiffs reminded Delta that Plaintiffs had already provided Delta with this information.  During the call, Delta confirmed that it would oppose the relief that Plaintiffs eventually requested in their July 25, 2011 letter. Consistent with this representation, Delta has not offered to provide any relief to Plaintiffs and has opposed the Court granting any sanctions to Plaintiffs.

**D.     Delta Responses to Other Pending Requests**

Delta claims that it has "worked diligently to . . . address Plaintiffs' supplemental discovery" and has "attempt[ed] to stay in regular contact with Plaintiffs."  Delta Letter at 5. This is not accurate.  For example, the Plaintiffs have been attempting to meet and confer regarding relevant custodians since June 17, 2011.  Letter from D. Kotchen to R. Allen (June. 17, 2011), Ex. 49.  After conferring several times, Delta asked for additional detailed information from Plaintiffs about the basis for their request, which Plaintiffs provided in a July 18, 2011 letter.  Ex. 54.  Delta did not respond to the July 18, 2011 letter until a month later, on August 18, 2011.  E-mail from R. Allen to D. Low (Aug. 18, 2011), Ex. 51.  Delta's month-long delay does not reflect "diligence" or "regular contact," and may result in a corresponding month-long delay in the resolution of this case.

Similarly, Plaintiffs have requested documents from Delta related to their efforts to search for and produce responsive documents.  E-mail from D. Low to R. Allen (Aug. 15, 2011), Ex. 52.  As of the date of this letter, Delta has not responded to that request.

---

[6] In light of Plaintiffs' June 17 and 30, 2011 letters and July 12, 2011 e-mail regarding Plaintiffs' discovery plans, Delta's sworn representations that "Plaintiffs declined to provide any details" and "refuse[d] . . . to provide substantive details about their desired discovery or the sanctions they would seek against Delta" are misleading.  R. Allen Decl. ¶¶ 14, 16.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 7
August 26, 2011
Judge Timothy C. Batten, Sr.

## II.   Argument

### III.   *Delta Has Failed to Demonstrate that Its Violations of This Court's Discovery Orders and Delta's False Discovery Certifications Are Substantially Justified*

Because Delta violated a Court Order and made false discovery certifications, and has not carried its burden of proving substantial justification, sanctions should be imposed pursuant to Fed. R. Civ. P. 37(b)(2), 26(g)(3), and 37(c)(1).

1.   Delta Should be Sanctioned Under Rule 37(b)(2) for Violating a Court Order

Delta does not, and cannot, dispute that it failed to comply with the Court-ordered deadline for producing documents related to first bag fees. *See* Hr'g Tr. 4:7-9 (May 13, 2010), Dkt. #96 (ordering production of documents related to first bag fees by June 30, 2010).[7] Delta also violated the Initial Case Management Order's December 15, 2010 deadline for "[d]ocument production by all parties." Order at 9, Dkt. #51.

Once the moving party makes a prima facie showing that a court's discovery order has been violated, Rule 37(b)(2) places the burden on the non-moving party to "prove that it was impossible to comply" and that "all reasonable efforts were made to comply with the court's order" in order to avoid sanctions. *United States v. One 1999 Forty Seven Foot Fountain Motor Vessel*, 240 F.R.D. 695, 698 (S.D. Fla. 2007) (citing *In re Chase & Sanborn Corp.*, 872 F.2d 397 (11th Cir. 1989); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976)).

Delta argues that it was free to disregard the Court's May 13, 2010 Order (and the Court's Initial Case Management Order) because, Delta asserts, "[g]eneral discovery orders . . . do not constitute the prerequisite 'order' that is required under Rule 37(b)." Delta Letter at 12. In support of this argument, Delta relies exclusively on *R.W. International Corp. v. Welch Foods,*

---

[7] Delta suggests that the May 13, 2010 Order only addressed a motion to compel production by AirTran and that Plaintiffs did not seek to compel production by Delta. Delta Letter at 12 n.14. This is inaccurate. *See* Pls.' to J. Batten at 2 (May 10, 2010) (requesting that Delta be compelled to produce documents in response to Plaintiffs' First Request for Production by a certain date); Delta to J. Batten (May 12, 2010) (responding to "[Plaintiffs'] May 10, 2010 letter requesting that the Court establish a deadline for completion of document production in response to outstanding document requests").

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 8
August 26, 2011
Judge Timothy C. Batten, Sr.

*Inc.*, 937 F.2d 11, 16-17 (1st Cir. 1991). In *R.W. International*, however, sanctions were denied because it was unclear whether a court order had been violated at all, and even if the order had been violated, defendants were able to show that the violation was substantially justified.[8]

Here, unlike in *R.W. International*, the late-produced documents were indisputably within the scope of the Court's Order, and Delta has not demonstrated substantial justification for its violations. Notwithstanding Plaintiffs' discovery requests, a Rule 30(b)(6) deposition on document production issues, and a hearing before this Court on spoliation issues, Delta did not make reasonable efforts to locate backup tapes within its own possession, as demonstrated by Delta's failure to locate dozens of relevant backup tapes in the "locker" where Delta customarily stores backup tapes that it is preserving as evidence. It was only after the DOJ inquired about Delta's possession of back-up tapes that Delta made a reasonable effort to locate backup tapes in March 2011. As a result of these efforts, Delta promptly located hundreds of backup tapes in the offices of its IT department. *See Coleman (Parent) Holdings Inc. v. Morgan Stanley, Inc.*, No. 03-5045, 2005 WL 674885, at *5 (Fla. Cir. Ct. Mar. 23, 2005) (finding that defendant "had not done a good faith search for the oldest full backup tapes" where the tapes were "in locations where e-mail backup tapes customarily were stored").

Delta argues that it should be excused for its failure to search its own offices (and the very location where backup tapes being preserved as evidence are customarily stored) because Delta's counsel and IT staff "corresponded with staff at IBM . . . in May and June 2009 in an attempt to identify the oldest e-mail backup tapes." Delta Letter at 3. But the contemporaneous documents provided by Delta reflect that counsel merely inquired about the monthly "back up process" and "backup strategies."[9] On June 9, 2009, IBM was asked to "[c]ollect the oldest

---

[8] The *R.W. International* court ordered production of documents related to plaintiffs' claimed damages, and plaintiffs produced documents related to damages, but failed to produce certain financial documents related to a non-party corporation wholly owned by the sole shareholder of the plaintiff corporations, as these documents were "arguably outside the order's scope." 937 F.2d at 14, 17. Defendants moved for dismissal under Rule 37(b)(2) one day after the production deadline, and plaintiffs promptly sought clarification from the court regarding whether these documents were within the scope of the order. *Id.* at 17.

[9] *See* Verified Responses (Feb. 16, 2011), Ex. 48, at Ex. 2, E-mail from Delta IT to IBM (May 19, 2009); *id.* at Ex. 3, E-mail from Delta IT to IBM (June 5, 2009); *id.* at Ex. 4, E-mail from S. McClain to IBM (June 8, 2009).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 9
August 26, 2011
Judge Timothy C. Batten, Sr.

monthly Atlanta campus exchange server tapes,"[10] but there is no correspondence or declaration suggesting that either IBM or Delta was asked to search for or preserve any relevant backup tapes besides the monthly Atlanta campus Exchange server backup that was scheduled to be overwritten in July 2009. Delta also does not explain why – if it indeed had taken reasonable steps to satisfy its discovery obligations in this litigation – it was able to so quickly locate the backup tapes in its evidence locker and in other locations after the inquiry by the DOJ. Thus, Delta has failed to meet its burden of showing that it made a diligent search for backup tapes in its possession. *Stallworth v. E-Z Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001) ("The burden rests on the non-producing party to show that its actions were substantially justified."); *Stern v. Shelley*, No. 4:08-cv-2753, 2010 WL 4721708, at \*3 (D.S.C. Nov. 12, 2010) ("Rule 34 . . . contemplates that a party will conduct a diligent search for documents . . . . [S]he did not meet the requirements of Rule 34 because a simple search . . . would have revealed the existence of the [documents]").

Moreover, even if Delta's counsel had made appropriate inquiries about the location of relevant backup tapes, and even if the failure to conduct a diligent search was the fault of Delta's IT department rather than counsel, sanctions against Delta are still appropriate, as the duty to conduct a diligent search extends to the client, and not just counsel. *See Devaney v. Cont. Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993) ("Rule 37 identifies attorneys . . . as possible subjects of sanctions along with their clients").[11] Delta and its IT staff clearly did not conduct a diligent search of the locations where backup tapes are often stored (*e.g.*, the evidence locker), or it would have promptly located the tapes.

---

[10] Verified Responses (Feb. 16, 2011), at Ex. 5, E-mail from IBM to Delta IT (June 9, 2009), Ex. 48.

[11] *See, e.g., Boyer v. Home Depot U.S.A., Inc.*, No. 08-13382, 2010 WL 1254847, at \*3 (E.D. Mich. Mar. 26, 2010) (striking late-produced discovery responses where "it appears to have been the client itself [rather than counsel] that was less than diligent in answering the [discovery] request" and "a party has an obligation to conduct a reasonable inquiry"); *Medina v. Gonzalez*, No. 08-Civ.-1520, 2010 WL 3744344, at \*23-24 (S.D.N.Y. Sept. 23, 2010) (finding that complicity of the client weighs in favor of harsher sanction); *Tarlton v. Cumberland County Corr. Facility*, 192 F.R.D. 165, 170 (D.N.J. 2000) ("It is not an excuse that defense counsel did not know about the [documents]. Counsel had a duty to . . . ask how and where relevant documents may be maintained. The client is charged with knowledge of what documents it possesses.").

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 10
August 26, 2011
Judge Timothy C. Batten, Sr.

With regard to its failure to produce responsive documents from its hard drives, Delta states that its counsel instructed its IT department to upload custodians' hard drives for review, and asked its IT staff to confirm that it had done so. But Delta is responsible for the failure of its IT department to carry out the upload, and Delta offers no excuse for its IT department's failures. *Boyer*, 2010 WL 1254847, at *3.

Relying on *R.W. International*, Delta argues that failure to comply with a general discovery order is sanctionable only if the failure is absolute. Delta Letter at 12 (citing *R.W. Int'l*, 937 F.2d at 16-17).[12]  But sanctions are often awarded under Rule 37(b)(2) where a party only partially fails to comply with a court order, including where, as here, the party fails to search certain files for responsive documents but produces documents from other files. *See, e.g.*, *BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994); *SCQuARE Int'l, Ltd. v. BBDO Atl., Inc.*, No. 1:04-CV-641, 2008 WL 228032, at *1-2 (N.D. Ga. Jan. 25, 2008); *see also* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete . . . response must be treated as a failure to . . . respond."). Similarly, courts have consistently held that a partial failure to produce documents within the deadline set by a court's scheduling order or within the deadline in a court's order on a motion to compel is sanctionable under Rule 37(b).[13]

---

[12] In *R.W. International*, the court explained that, "[m]ore particularly," it was referring to a situation where the withheld documents were "arguably outside the order's scope." 937 F.2d at 17.

[13] *See Semper v. Santos*, 845 F.2d 1233, 1238 (3d Cir. 1988) ("The trial court's exclusion of testimony because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion."); *AT&T Wireless Servs. of Cal. LLC v. City of Carlsbad*, No. 01-cv-2045, 2002 WL 34396709, at *4 (S.D. Fla. Nov. 7, 2002) ("Violation of a court's pre-trial scheduling Order is misconduct adequate to support an evidentiary or other sanction.") (citing Fed. R. Civ. P. 37(b)(2)); *Pereira v. Narragansett Fishing Corp.*, 135 F.R.D. 24, 26 (D. Mass. 1991) ("The violation of this order . . . to produce all requested documents by [a specified date] . . . . subjects the [party] to sanctions pursuant to Rule 37(b)(2)"); *Syufy Enters. v. Am. Multicinema, Inc.*, 575 F. Supp. 431, 433 (N.D. Cal. 1983) (discussing prior related action in which court excluded evidence produced after close of discovery from being introduced at trial in connection with Sherman Act § 1 claim).

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 11
August 26, 2011
Judge Timothy C. Batten, Sr.

Delta contends that Rule 37(b)(2) sanctions are inappropriate in the absence of bad faith. Courts, however, routinely impose Rule 37(b)(2) sanctions other than default judgment absent a finding of bad faith. *See, e.g., Carlson v. Bosem*, No. 06-13904, 2007 WL 1841067, at *2 (11th Cir. June 28, 2007); *BankAtlantic*, 12 F.3d at 1049 ("Our caselaw is clear that only in a case where the court imposes the most severe sanction – default or dismissal – is a finding of willfulness or bad faith failure to comply necessary."); *Devaney*, 989 F.2d at 17 ("[T]he 1970 amendments [to Rule 37] were specifically enacted to eliminate the possibility that a bad faith requirement would be read into the rule."); [14] *see also R&R Sails Inc. v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 526 (S.D. Cal. 2008) (finding no substantial justification even if delayed production was the result of inadvertent mistakes and unintentional oversights).

Furthermore, a finding of bad faith or willfulness under Rule 37(b)(2) sufficient to support a default judgment requires only disobedient "conduct that is within the party's control." *Versage v. Marriott Int'l, Inc.*, No. 6:05-cv-974, 2006 WL 3614921, at *6 (M.D. Fla. Dec. 11, 2006). As discussed above, Delta's failure to search its own evidence locker for backup tapes notwithstanding its repeated representations to Plaintiffs and the Court that no such tapes existed warrants an inference of bad faith. *See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l Union*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003) ("That, in response [to opposing party's complaints about inadequate production] counsel continually professed full compliance – falsely and . . . without making reasonable inquiry – constitutes such gross negligence as to rise to intentional misconduct."). A inference of bad faith is also appropriate in light of recent case law clarifying that a defendant's bad faith can be inferred in private litigation based on a defendant's failure to search for and preserve documents in response to a government inquiry, as a "failure to preserve . . . in the face of a request to produce and preserve by a law enforcement agency . . . strongly evinces bad faith." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 802 (N.D. Tex. Feb. 22, 2011).[15]

---

[14] Delta's reliance on a district court case from another circuit is misplaced in light of these contrary Eleventh Circuit cases. *See* Delta Letter at 14 (citing factually inapposite Rule 37(d) District of Rhode Island case).

[15] After DOJ served a CID on Delta that explicitly instructed Delta to preserve relevant backup tapes and produce relevant e-mails, Delta failed to preserve, continuing automatic deletion of e-mails for over three months and overwriting five monthly backup tapes. *Id.*; Fed. R. Civ. P. 37, Advisory Cmte. Note (stating that failure to suspend auto-deletion may demonstrate a lack of good faith). Delta repeatedly made false representations to Plaintiffs and the Court about the

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 12
August 26, 2011
Judge Timothy C. Batten, Sr.

In sum, Delta has failed to demonstrate that its violations of the Court's Order to produce documents related to first bag fees by June 30, 2010 was substantially justified, and sanctions are therefore mandatory under Rule 37(b)(2).

2.    <u>Sanctions Are Appropriate Under Rule 26(g) for False Discovery Certifications</u>

Rule 26(g) provides that every signature on a "discovery response . . . 'certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry' that the response is complete and correct." *R&R Sails*, 251 F.R.D. at 525 (quoting Fed. R. Civ. P. 26(g)). The signature certifies that the responding attorney has made a "reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Fed. R. Civ. P. 26(g) Advisory Cmte. Note.[16] Rule 26(g) sanctions are mandatory. Fed. R. Civ. P. 26(g)(3). Rule 26(g) sanctions are appropriate where, as here, counsel makes false representations about discovery in "formal responses, in letters[,] and to the Court – particularly counsel's repeated representations that all responsive documents had been produced." *Metro. Opera*, 212 F.R.D. at 221.

Delta does not deny that representations it made to Plaintiffs and the Court were false. *Compare* Pls.' Letter to J. Batten at 11 -12 & n.21 (listing false representations made by Delta), *with* Delta Letter to J. Batten at 9-10. Delta claims, however, that only formal discovery

---

completeness of its document production and preservation despite Plaintiffs' and DOJ's repeatedly raising document production and preservation questions. Delta only searched for and preserved backup tapes in its own possession after DOJ identified documents missing from Delta's production, and DOJ inquired about the existence of additional backup tapes in March 2011. Between February 2009 and March 2011, Delta failed to make a reasonable effort to locate and preserve backup tapes in its possession despite having a duty to do so on multiple occasions. Further, previously undisclosed documents undermine the story crafted by Delta and its executives. *See* Letter from Plaintiffs at 4-7 (July 25, 2011); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993) (finding that court may consider all instances of a party's misconduct in imposing Rule 37 sanctions).

[16] Rule 26(g) requires that both "the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26(g) Advisory Cmte. Note.

Page 13
August 26, 2011
Judge Timothy C. Batten, Sr.

responses constitute discovery certifications subject to Rule 26(g) and, therefore, its misrepresentations are beyond sanction. This is incorrect. Courts have recognized that less formal representations about the completeness of discovery, including letters and representations to the Court, can serve as the basis for Rule 26(g) sanctions. *Metro Opera*, 212 F.R.D. at 221 & n.28 (citing *Phinney v. Paulshock*, 181 F.R.D. 185, 204 (D.N.H. 1998)).

Delta also claims that it made a reasonable inquiry into the existence of additional backup tapes. But Delta has not demonstrated that it made *any* inquiry about the existence of backup tapes other than the monthly Atlanta Exchange server tape that it requested from IBM in June 2009. Rather, Delta's correspondence and declarations indicate that Delta's counsel inquired about backup procedures and strategies, and not whether additional backup tapes actually existed. *See In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 653 (M.D. Fla. 2007) (stating that counsel are invariably required to determine "the actual (as opposed to theoretical) implementation of the firm's recycling policy").

Delta's failure to conduct a reasonable investigation can be inferred from Delta's failure to locate backup tapes in an obvious location for relevant documents – the evidence locker where Delta customarily stores backup tapes that it is preserving. *See Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) (affirming Rule 26(g) sanctions where responsive documents were "in the defendants' possession and . . . a reasonable search would have located them"); *Zander v. Craig Hosp.*, No. 09-cv-2121, 2011 WL 834190, at *8 (D. Colo. Mar. 4, 2011) ("A reasonable search . . . would have disclosed the recently revealed documents."); *Rottlund Co. v. Pinnacle Corp.*, 222 F.R.D. 362, 385 (D. Minn. 2004), *adopted in part, rejected in part on other grounds*, 2005 WL 407860 (D. Minn. 2005). As the court explained in *Rottlund*:

> Documents responsive to [plaintiff's] requests existed in [defendant's] files, despite [defendant's] counsel's repeated assurances that all documents had been produced, and the documents would have been discovered if a reasonable, elementary inquiry had been made. [Defendant] must be sanctioned pursuant to [Rule] 26(g).

*Id.*[17]

---

[17] Delta argues that Rule 26(g) is only violated if a party making a discovery certification has "knowledge" that the response is "improper." Delta Letter at 9. But the plain text of the rule requires the party making the certification to affirmatively make a reasonable inquiry to ensure

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 14
August 26, 2011
Judge Timothy C. Batten, Sr.

Delta implies that it should not be sanctioned for the failure of its IT personnel to locate responsive documents. Delta Letter at 11. But Delta cannot avoid responsibility by attempting to shift blame to its own IT staff, as "[i]t is equally the litigant's responsibility (and that of its counsel) to determine beforehand the accuracy of any representations that production is complete." *Fendi Adele v. Filene's Basement, Inc.*, 06-cv-244, 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009) (citing Fed. R. Civ. P. 26(g)).[18]

    3.    <u>Sanctions Are Appropriate Under Rule 37(c)(1) for Delta's Failure to Supplement Its Document Production as Ordered</u>

Sanctions are also appropriate under Rule 37(c)(1) because Delta failed to produce responsive documents as ordered by the Court. *See* Fed. R. Civ. P. 26(e)(1)(B) (requiring a party to "supplement . . . its disclosure or response . . . as ordered by the court"); *Medina v. Gonzalez*, No. 08 Civ. 1520, 2010 WL 3744344, at *23 (S.D.N.Y. Sept. 23, 2010) ("[M]any sanctions [are] made available to a judicial officer by Federal Rule of Civil Procedure 37(c)(1)(C), when a party fails to comply with court orders compelling discovery.").[19] Delta is subject to Rule 37(c)(1) sanctions because it failed to obey this Court's Order to supplement its responses to Plaintiffs' First Request for Production by producing all responsive documents by June 30, 2010. Hr'g Tr. 4:7-9, Dkt. #96; *Stallworth*, 199 F.R.D. at 368-69 (precluding evidence and imposing fees under Rule 37(c)(1) where defendant produced documents after deadline in scheduling order despite absence of willfulness or bad faith).

---

that the response is complete and proper, and does not allow the certifying party to avoid sanctions by burying its head in the sand to avoid "knowledge" of the impropriety of the response. Fed. R. Civ. P. 26(g); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner [and] obliges each attorney to stop and think about the legitimacy of a discovery . . . response") (quoting Advisory Cmte. Note to Fed. R. Civ. P. 26(g)).

[18] Even if IBM rather than Delta were at fault, "a party is responsible for the errors of its vendors." *In re Seroquel*, 244 F.R.D. at 664 (citing *The Sedona Principles, Second Ed.: Best Practices, Recommendations & Principles for Addressing Electronic Document Discovery*, at 6.d (2007)).

[19] Delta argues that Rule 37(c)(1) does not apply because Delta has not violated Rule 26(a) or (e). Delta quotes what it states is the "pertinent part" of Rule 26(e) in its letter, but omits the key subpart – 26(e)(1)(B) – which states that a party must supplement discovery responses "as ordered by the court." Fed. R. Civ. P. 26(e).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 15
August 26, 2011
Judge Timothy C. Batten, Sr.

> 4.   Prejudice Is Not Required Under Rules 26(g)(3) or 37(b)(2), and Delta's Conduct Was Not Harmless

Delta argues that a finding of prejudice is required to support the imposition of sanctions. But Rule 26(g)(3) and 37(b)(2)(C) sanctions are mandatory unless Delta proves that its violations were substantially justified. *See* Fed. R. Civ. P. 26(g)(3), 37(b)(2)(C); *One 1999 Forty Seven Foot Fountain Motor Vessel*, 240 F.R.D. at 698 (citing Fed. R. Civ. P. 37(b)(2)).

Sanctions under Rule 37(c)(1) may be avoided only if Delta demonstrates that its violation was justified or is "harmless." Fed. R. Civ. P. 37(c)(1). "'The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.'" *Mitchell v. Ford Motor Co.*, 318 F. App'x. 821, 824 (11th Cir. 2009). For purposes of preclusion of evidence under Rule 37(c)(1), "[a] discovery mistake is harmless if it is honest, and is coupled with the other party having sufficient knowledge that the material has not been produced." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003).

Delta asserts that "[a]ny harm to Plaintiffs was . . . averted." Delta Letter at 15. But until well after the close of discovery, Plaintiffs lacked "sufficient knowledge" of the emails that had not been produced, and their non-disclosure therefore was not harmless for purposes of Rule 37(c)(1). *See Go Med. Indus.*, 300 F. Supp. 2d at 1308; *Stallworth*, 199 F.R.D. at 369 (finding defendant's conduct was not harmless where "Defendant points to no evidence that Plaintiff knew of the material" until the documents were untimely disclosed and plaintiff was forced to spend additional time and resources responding to the material late in the litigation). Moreover, "Defendant's discovery violations have been taxing to plaintiff[s] and the Court, and have expanded this litigation in ways defendant still does not seem to grasp." *SCQuARE*, 2008 WL 228032, at *3. The parties were poised to present their cases on summary judgment when a substantial volume of new evidence was uncovered, causing a delay in the resolution of this case of over a year. *See BankAtlantic*, 12 F.3d at 1051 (affirming finding of prejudice where late production of new evidence resulted in wasted time and expense); *Moore v. Chertoff*, 255 F.R.D. 10, 33-36 (D.D.C. 2008) (finding prejudice and imposing sanctions where defendant initially failed to conduct a reasonable search, causing delay in resolution of case, and causing prejudice to the judicial system from failure to obey order); *Tarlton*, 192 F.R.D. at 170. Even during the original discovery period, Plaintiffs were forced to focus on collateral discovery issues relating to Delta's incomplete document production, including the filing of a spoliation motion that consumed the resources of the parties and the Court. As this Court is well aware, the genesis of that motion was Delta's repeated representations that no additional back-up tapes existed – representations that Delta now concedes were false. In sum, sanctions are mandatory under

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 16
August 26, 2011
Judge Timothy C. Batten, Sr.

Rules 26(g)(3) and 37(b)(2), and Delta cannot meet its burden under Rule 37(c)(1) of demonstrating that its discovery violations were harmless.

### IV.   *Appropriate Sanctions Under Rule 26(g) and 37 Include an Award of Fees and Expenses Caused by Delta's Discovery Misconduct and the Preclusion of Delta's Use of the Newly Produced Documents*

Because Delta violated its discovery obligations, and its violations were not substantially justified, sanctions are mandatory.  *See* Fed. R. Civ. P. 26(g)(3), 37(b)(2)(C), 37(c)(1).  Rule 37 sanctions are properly imposed to: "'1) compensate the court and other parties for the added expense caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party or attorney.'"  *Carlson v. Bosem*, No. 06-13904, 2007 WL 1841067, at *2 (11th Cir. June 28, 2007) (quoting *Wouters v. Martin County, Fla.*, 9 F.3d 924, 933 (11th Cir. 1993)).  Here, appropriate sanctions include the award of reasonable fees and expenses caused by Delta's violations, and the exclusion of the late-produced documents.  *See SCQuARE*, 2008 WL 228032, at *3 (awarding all fees and expenses related to discovery violations and excluding late-produced documents).

V.   The Award of Reasonable Fees and Expenses Is Mandatory

Under Rule 37(b)(2)(C), "the court *must* order the disobedient party [that has violated a discovery order], the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  The Court has discretion to award a variety of additional sanctions.  Fed. R. Civ. P. 37(b)(2)(A).  The award of expenses and fees is "one of the lesser sanctions contemplated by the Federal Rules."  *Devaney*, 989 F.2d at 1159.  Plaintiffs request that the court award reasonable expenses and fees caused by Delta's discovery misconduct, including those related to:  (a) Plaintiffs' request for discovery sanctions; (b) the extended discovery period; and (c) Plaintiffs' motion for spoliation sanctions.

### Expenses Related to the Sanctions Request Are Mandatory

Because the expenses and fees related to Plaintiffs' request for sanctions are "caused by the failure" of Delta to obey discovery orders, such an award is mandatory.  Fed. R. Civ. P. 37(b)(2)(C); *see also BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 234 (S.D. Fla. 1989), *aff'd* 12 F.3d 1045 (11th Cir. 1994) (awarding fees related to request for sanctions).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 17
August 26, 2011
Judge Timothy C. Batten, Sr.

Lacking any significant arguments on the merits, Delta attempts to manufacture a procedural issue, inaccurately arguing that Plaintiffs violated Local Rule 37.1 by failing to meet and confer with Delta. But Rule 37.1 explicitly applies only to a "motion to compel," L.R. 37.1(A), and not a motion for sanctions.

Despite the inapplicability of Rule 37.1, Plaintiffs made repeated efforts to confer with Delta in good faith. After Plaintiffs informed Delta that they intended to seek discovery sanctions pursuant to Rules 26(g) and 37, Delta stated that it was not even "willing to discuss the issue" of sanctions until Plaintiffs detailed to Delta the precise discovery Plaintiffs intend to take, even before Delta finished producing responsive documents. Letter from R. Allen to D. Low at 4 (July 8, 2011), Ex. 13. But as Plaintiffs explained to Delta, they do not, and cannot, know before the extended discovery period even begins what additional discovery they may need to take. Plaintiffs have identified the additional custodians whose files they want Delta to search, and they have identified certain topics that they intend to explore in discovery. Letter from D. Kotchen to R. Allen (June. 17, 2011) at 2, Ex. 49. After Delta completes its document production, Plaintiffs will assess what additional discovery is needed. Plaintiffs offered to provide additional details to Delta on the topics they previously identified, but Delta did not waiver from its position that it was not "willing to discuss the issue" of sanctions. E-mail from R. Allen to D. Low (July 12, 2011), Ex. 10. Accordingly, Plaintiffs were forced to seek relief from the Court.

## Expenses Related to the Extended Discovery Period Should Be Awarded

Expenses related to the extended discovery period are mandatory insofar as they are "caused by" Delta's discovery misconduct. Fed. R. Civ. P. 37(b)(2)(C). Delta's late-production of documents has delayed the likely resolution of this case by over a year, forcing Plaintiffs to substantially increase their investment of time, expenses, and fees in this lawsuit. As in *SCQuARE*, the Court should award Plaintiffs reasonable "fees incurred by plaintiff[s] during the extended discovery period." 2008 WL 228032, at *3.[20]

Plaintiffs agree that the extended discovery should be limited to issues related to the newly produced documents, and that they should only be reimbursed for *reasonable* expenses

---

[20] Delta implicitly agrees that it is appropriate for Delta to pay some of Plaintiffs' expenses. *See* Delta Letter at 19 ("Delta would likely have agreed to reimburse Plaintiffs for reasonable costs associated with having to re-convene and re-depose a Delta witness").

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 18
August 26, 2011
Judge Timothy C. Batten, Sr.

and fees related to that discovery.[21]  Plaintiffs have proposed that they be allowed to submit a petition detailing relevant fees and expenses following the close of discovery.  *Id.* (awarding fees related to extended discovery period and ordering plaintiff to submit a detailed fee petition after trial).  If Delta believes that any of the requested fees or expenses are unreasonable or unrelated to the newly-produced documents, Delta will have an opportunity to challenge the request at that time.  *Id.* (providing that defendant would be permitted to challenge plaintiff's fee petition after it was submitted).[22]

### Expenses Related to Plaintiffs' Spoliation Motion Should Be Awarded

Plaintiffs filed their initial motion for spoliation sanctions based upon Delta's representations that it had destroyed virtually all responsive backup tapes relevant to this litigation.  At deposition, in numerous briefs, and at a hearing before this Court, Delta repeatedly represented that no backup tapes prior to April 2009 existed.  Had Delta timely produced documents from the scores of backup tapes in its possession, Plaintiffs would not have filed a motion challenging the absence of backup tapes prior to April 2009.  Accordingly, the fees and expenses incurred in filing the spoliation motion were "caused by" Delta's discovery violations, and related expenses are therefore a mandatory sanction under Fed. R. Civ. P. 37(b)(2).  Although Delta describes the motion as "failed," the outcome of the motion is immaterial with regard to the issue before the Court.  Moreover, it was only because Plaintiffs repeatedly expressed concerns about Delta's production, including through the spoliation briefing, that the DOJ focused on Delta's discovery conduct and, in response, Delta finally searched for responsive backup tapes.

---

[21] Delta contends that Plaintiffs are engaged in a "continuing open-ended fishing expedition." Delta Letter at 19.  While Delta has frequently accused Plaintiffs of engaging in a fishing expedition, including for missing e-mails, Plaintiffs' concerns about missing documents have proven to be well-founded.

[22] Delta argues that Plaintiffs should not be permitted to take discovery that they could have pursued during the original discovery period.  Delta Aug. 2 Letter at 3.  In *BankAtlantic*, the defendant similarly sought to avoid sanctions because the plaintiff "could have" sought additional discovery from a third party whose relevance was revealed by late-produced documents, but failed to do so during the original discovery period.  127 F.R.D. at 233-34.  The court rejected defendant's argument as an "unseemly" attempt to "divert attention from its own wrongdoing by pointing the finger at Plaintiff."  *Id.* at 234.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 19
August 26, 2011
Judge Timothy C. Batten, Sr.


VI.    Late-Produced Documents Should Be Excluded

While Delta asserts that there is "no basis" to preclude Delta's use of late-produced documents,[23] Rule 37(c)(1) explicitly provides that if a party fails to provide information as required by Rule 26(e) (*i.e.*, "as ordered by the court"), then "the party is not allowed to use that information . . . on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[24] This sanction is "self-executing" and "automatic." Fed. R. Civ. P. 37(c)(1) Advisory Cmte. Note.[25] Delta's use of late-produced documents may also be precluded pursuant to Rule 37(b)(2). *SCQuARE*, 2008 WL 228032, at *3. Consistent with these Rules, courts have frequently precluded the use of late-produced documents. *Id.*; *Stallworth*, 199 F.R.D. at 368; *Syufy Enters.*, 575 F. Supp. at 433.

Delta argues that preclusion would be a "drastic" sanction, but almost all of the relevant documents in the new production undermine Delta's arguments and support Plaintiffs' allegations of conspiracy. *See* Pls.' Letter to J. Batten at 4-8 (July 25, 2011). In stark contrast to the numerous e-mails and documents that support Plaintiffs' allegations, Delta cites several ambiguous e-mails as support for its defense. For example, Delta argues that an October 21, 2008 e-mail about the need to schedule a meeting about post-merger fees, including a first bag fee,[26] demonstrates that Delta CEO Richard Anderson had reached a decision about first bag fees by October 21, 2008. But Mr. Anderson testified that he did not reach a decision on first bag

---

[23] Delta Aug. 2 Letter at 5.

[24] "In addition to or instead of this sanction, the court" may order certain alternative sanctions. Fed. R. Civ. P. 37(c)(1).

[25] Delta asserts that Plaintiffs "curiously request" preclusion sanctions. Delta Aug. 2 Letter at 5. But there is nothing "curious" about a request to enforce an automatic sanction.

[26] *See* DLTAPE 3665, E-mail exchange between R. Anderson, G. West, G. Grimmett, and S. Gorman (Oct. 21-23, 2008), Ex. 36 (Anderson: "Where are we on the overall fee structure upon closing? . . . *Can we have a review*?"; G. West: "Gail and I have coordinated the post closing fee structure. The one loose end is the first bag fee. Gail has been analyzing the impact the first bag fee would have on pax revenue. *We'll set up a review with you*."; Anderson: "*We need to do it*."; S. Gorman: "*It is on Monday CLT agenda*.") (emphasis added).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 20
August 26, 2011
Judge Timothy C. Batten, Sr.

fees until after October 29, 2008, contrary to Delta's strained interpretation of the e-mail. *Compare* Anderson Depo. Tr. 60:25-61:3, Ex. 53 (Q. "[W]hen ultimately did you decide to impose a first bag fee? A. . . . I believe it was after we closed the merger with Northwest [on October 29, 2008]."), *with* Delta Aug. 2 Letter at 9 (asserting that it is "undisputed" that Mr. Anderson decided in favor of a first bag fee "before the AirTran earnings call" on October 23, 2008).

Delta argues that preclusion of late-produced evidence is only appropriate if the documents are produced "after summary judgment or on the eve of trial." Delta Letter at 17. But Delta cites no cases in which a court declined to exclude documents produced after the close of discovery but before summary judgment briefing.[27]  In *Syufy Enterprises*, which is more analogous to the facts of this case, evidence was excluded that was produced just five weeks after the close of discovery in connection with a Sherman Act § 1 claim. 575 F. Supp. at 432-33 & n.3 (discussing exclusion in prior related case); *see also Lumbermens Mus. Cas. Co. v. Able Telecomm. & Power, Inc.*, No. 1-04-CV-339, 2006 WL 229212, at *3 (N.D. Ga. Jan. 31, 2006) (precluding use of documents produced after close of discovery despite reopening discovery on a limited basis).  Here, Delta produced numerous responsive documents over five *months* after the close of discovery and more than ten months after the Court-ordered deadline for production of first bag fee documents.  As of today – over eight months after the close of discovery – Delta has not yet completed its production of documents related to first bag fees, in continuing violation of this Court's May 13, 2010 Order.  E-mail from D. Low to R. Allen (Aug. 21, 2011), Ex. 51, (requesting that Delta promptly produce documents from additional agreed custodians).

Delta also claims that preclusion of evidence is not appropriate in the absence of bad faith.  Delta Letter at 17 (citing unpublished Fourth Circuit case).  But courts in this Circuit have

---

[27]  Instead, Delta cites cases that are not on point, such as cases in which courts imposed discovery sanctions but declined to enter a default judgment.  Delta Letter at 17-18 (citing *Tritchler v. Consol. Coal Co.*, No. 95-2679, 91 F.3d 134, at *2 (4th Cir. June 28, 1996) (unpublished) (affirming exclusion of document that was not timely produced and affirming admission of evidence that *was* properly disclosed); *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970) (discussing Rule 37 as it existed prior to July 1, 1970 amendments); *Kipperman v. Onex Corp.*, 260 F.R.D. 682, 700 (N.D. Ga. 2009) (refusing to impose sanction equivalent to dismissal but awarding sanction of $1 million); *Hawkins v. Fulton County*, 96 F.R.D. 416 (N.D. Ga. 1982) (awarding expenses and fees but not default).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 21
August 26, 2011
Judge Timothy C. Batten, Sr.

found that bad faith is not required for imposition of Rule 37(c)(1) preclusion sanctions. *See, e.g.*, *Young v. Lexington Ins. Co.*, 269 F.R.D. 692, 694 (S.D. Fla. 2010) (imposing "mandatory" sanction of exclusion where violation was not justified or harmless despite defendant's assertion that violation was unintentional); *Discrete Wireless, Inc. v. Coleman Techs., Inc.*, No. 1:06-cv-0554, 2009 WL 3334873, at *5 (N.D. Ga. Mar. 4, 2009) (excluding evidence pursuant to Fed. R. Civ. P. 37(c)(1) even though its late disclosure purportedly "was an innocent and harmless oversight"); *SCQuARE Int'l*, 2008 WL 228032, at *2-3 (N.D. Ga.) (precluding use of documents despite defendant's representation that discovery violation was "unintentional"); *Go Med. Indus.*, 300 F. Supp. 2d at 1308 (precluding documents and evidence without a finding of bad faith).

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs request for discovery sanctions should be granted, and the Court should enter the attached Proposed Order.

Sincerely,

David H. Flint

DHF/cb
cc:     Bert Rein, Esq.
        Roger Fones, Esq.
        Scott Gant, Esq.
        Randall Allen, Esq.

K:\7691\1\Correspondence\Batten Ltr 8-26-11.doc