IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE DELTA/AIRTRAN BAGGAGE        )        CIVIL ACTION FILE
FEE ANTITRUST LITIGATION           )        NUMBER 1:09-md-2089-TCB

O R D E R

The case is before the Court on Plaintiffs' motion to reopen discovery

and for a new case schedule as to Defendants Delta Air Lines and AirTran

Holdings, Inc., and for sanctions against Delta [294].[1]

I.    The Gist of the Case

On December 5, 2008, Delta and AirTran started charging passengers

$15 to check their first bag.  Within six months lawsuits were filed across

the country asserting that the two airlines had conspired to impose the

---

[1] As directed in the Court's Instructions to Parties and Counsel [49], on July 25, 2011, Plaintiffs emailed the Court a letter explaining the matters in dispute.  Both Delta and AirTran responded via email letters.  The letters (without exhibits) were filed on February 3, 2012 [294-301].  The Court notes that although the parties have stamped every document associated with this case "Confidential," there is nothing truly confidential about the contents of counsel's letters to the Court.

first-bag fee, which would be a violation of § 1 of the Sherman Act.[2]  A total

of thirteen cases have been filed, and they have been consolidated into this

multi-district litigation.

In addition to this litigation, on February 2, 2009, the United States

Department of Justice Antitrust Division (the "DOJ") served a Civil

Investigative Demand ("CID") upon Delta, seeking information regarding

its decision to adopt the first-bag fee.  The CID required Delta to produce

documents relating to any actual or contemplated changes in Delta's

policies or practices relating to fees charged for checked baggage.


## II.    The Subject Matter of the Current Motion: Delta's Document Production

On February 9, 2010, the Plaintiffs served document requests upon

both Defendants, seeking all documents related to their decisions to impose

a first-bag fee.  In a brief May 13, 2010 telephone conference, the Court

ordered that all such documents be produced to Plaintiffs by June 30, 2010.

On November 8, 2010, Plaintiffs filed a motion for spoliation

sanctions against Delta relating to Delta's noncompliance with the DOJ's

---

[2] For more details about Plaintiffs' claims, see *In re Delta/AirTran Baggage Fee Antitrust Litigation*, 733 F. Supp. 2d 1348 (N.D. Ga. 2010).

bag-fee CID.  To understand the basis for this motion, it is necessary to explain Delta's email retention policy.

Delta creates and maintains daily and monthly back-up tapes for disaster-recovery purposes.  It contracts with IBM to perform these back-up services.

With respect to the daily tapes, every day the data on each of Delta's exchange servers, which contain data such as employees' emails, calendar entries and contacts, is copied on a series of seven rotating tapes.  When the last tape is full, the first tape in the set is reused.  This process provides two weeks of daily backup tapes for each server.

With respect to the monthly tapes, on or about the first Saturday of each month, a back-up tape is created for each server.  Each such tape contains a "snap-shot" of the data on the server on the particular date upon which it is backed up.  Monthly back-up tapes are retained for three months and then reused, similar to the reusing of the weekly back-up tapes.  Thus, at the time Delta received the CID on February 2, 2009, it should have had monthly back-up tapes for at least November and December 2008 and January 2009 for each server.

Delta also has an email policy that manages employees' emails. Copies of outgoing emails are stored in a sent-items folder.  If an employee reads an email but does not manually delete or move it to another folder, after sixty days the email is automatically moved to a deleted-items folder, and approximately sixty days thereafter it is permanently deleted.  An employee who wants to retain a copy of an email for a longer period of time can do so by moving the email to a personal folder, where the email is retained until the employee chooses to delete it.  Under Delta's document-retention policy, users are instructed to create custom personal folders for emails and other electronic files when there is a business need to retain them.

Delta received the CID on February 2, 2009.  It imposed two important implicit if not explicit requirements upon Delta.  First, Delta was to identify each person responsible for analyzing, recommending or approving changes in its policies relating to fees for checked baggage. Second, Delta was to produce all documents relating to any actual or contemplated changes in its policies or practices related to bag fees.  Based on Delta's response to the CID, it is apparent that Delta interpreted the CID's instructions as requiring it to copy all files on the computers of its

4

employees that might contain any of the requested documents and suspend its standard electronic-document-destruction policy, i.e., Delta knew that it needed to cease and desist its practice of overwriting both daily and monthly back-up tapes.

Consequently, on February 3, Scott McClain, Delta's assistant general counsel, emailed a document-preservation and litigation-hold notice to each of the twenty-two persons ("custodians") whose computers Delta believed might contain documents responsive to the CID.  McClain's notice was also sent to the administrative assistants for each member of Delta's corporate leadership team.

Pursuant to McClain's notice, each recipient was informed that the DOJ had requested all documents related to any actual or contemplated changes in the checked-bag-fee policies of Delta or any other airline at any time since January 1, 2008.  The notice also directed each recipient to search for, preserve and refrain from deleting or destroying any potentially responsive documents, including emails, other electronic documents, and paper documents.  Over the course of the next few weeks, Delta collected paper and electronic documents, including emails, from the custodians and

produced them to the DOJ.  Thus, Delta did take steps to preserve responsive documents.

However, the problem (as perceived at the time Plaintiffs filed their spoliation motion) was not that Delta had failed to comply with the CID, but rather that it had waited several months before complying completely. Specifically, although Delta received the CID on February 2, 2009, it waited over three months—until May 13, 2009—to copy all files on the custodians' computers and suspend the employee email-destruction policy.  Moreover, Delta waited even longer—until sometime between May 19 and June 5, 2009—to instruct IBM to stop overwriting its daily and monthly back-up tapes.  As a result, Plaintiffs contended, voluminous, highly relevant emails and documents going back to the crucial time period of July through November 2008, when Delta and AirTran announced that they would impose the first-bag fees, were lost.[3]

On February 22, 2011, the Court denied Plaintiffs' motion for spoliation sanctions, for three reasons.  First, the Court rejected Plaintiffs'

---

[3] As discussed in the February 22 order on Plaintiffs' motion for spoliation sanctions, if Delta had imposed a litigation hold the day it received the DOJ's bag fee CID (February 2, 2009), the oldest back-up tape in its possession would have been from November 2008.  *See In re Delta/AirTran Baggage Fee Antitrust Litigation*, 770 F. Supp. 2d 1299, 1306 (N.D. Ga. 2011).

contention that Delta owed *Plaintiffs*—and not just the DOJ—a duty to comply with the CID and that Delta could therefore be sanctioned in *this* case for failing to comply with the CID.  Second, Plaintiffs had not shown prejudice, i.e., that critical evidence existed and was destroyed, or that Delta had acted in bad faith.  Finally, the Court was influenced by Delta's myriad emphatic and unqualified assurances that it had produced absolutely every document in its possession, custody or control that Plaintiffs had requested.  It is worth pausing at this point to consider the nature and number of those important assurances:

During the November 8, 2010 status conference, Delta's counsel stated:

> So, there's no reason to think that we didn't do a good job.  We did a good job in collecting the documents.  And as the record would indicate, all of the documents that we had that covered the bag fee issues have been produced.  (Tr. at 57.)

> . . . .

> So I think, Your Honor, when you peel away the onion on this, what you'll see is we undertook certainly reasonable steps to preserve the evidence at the time we received the CID.  (Tr. at 58.)

> . . . .

> So, the—all of the decisions that we're talking about, all the discussions and the analysis we're talking about, took place

at Delta.  We've produced everything that we have with regard to that.  So, there is nothing with regard to the adoption of a bag fee between Delta and Northwest.  (Tr. at 66.)

In its brief in opposition to Plaintiffs' motion for spoliation sanctions, Delta stated:

> There is no evidence that any document regarding Delta's decision to adopt a first bag fee in 2008 has not been produced by Delta to Plaintiffs.  (Br. at 16.)

. . . .

> Again, there are no missing or destroyed documents.  (Br. at 24.)

. . . .

> There is no basis to believe, much less evidence to suggest, that there are missing documents.  (Br. at 24.)

. . . .

> Plaintiffs also claim that relevant emails from Gail Grimmett have been lost or destroyed.  This ignores her testimony on that subject . . . .  Thus, there is no reason to believe that any relevant emails still existed in February 2009. (Br. at 27 n.22.)

In its surreply brief in opposition to Plaintiffs' motion for spoliation sanctions, Delta stated:

> Delta established in its original response . . . that the steps it took to preserve documents in response to the CID were reasonable, that there is no evidence any material documents have been lost. (Br. at 2.)

. . . .

There is thus no basis for speculation about lost or destroyed emails, much less about any emails material to Delta's decision to adopt a first bag fee.  (Br. at 4.)

. . . .

The same is true with respect to allegedly 'missing' emails from Gail Grimmett.  In light of Ms. Grimmett's personal email retention practices, there is still no basis for believing any relevant emails from her files existed in February 2009.  (Br. at 4 n.2.)

Finally, during the January 27, 2011 hearing on the motion for

spoliation sanctions, Delta's counsel stated:

And as the Court is keenly aware, all of those documents have been preserved and indeed presented to the plaintiff.  (Tr. at 41.)

. . . .

Well, all of the emails and electronic information that we're aware of that related to Delta's consideration of the adoption of the first bag fee were preserved and were produced in this case.  (Tr. at 42-43.)

. . . .

I want to walk you through that decision-making process for you and what documents do exist and why the documents that do exist give you—give the Court, should give the plaintiffs, no reason to worry that some documents—some documents were misplaced.  (Tr. at 45.)

. . . .

9

There's no reason to believe that any documents relevant to this decision-making process were lost or destroyed.  (Tr. at 45.)

. . . .

They don't reflect any—there's nothing in them to indicate or to insinuate that there's some missing piece in Delta's documents.  (Tr. at 48.)

. . . .

I don't think there's any suggestion that there were notes taken that are lost.  (Tr. at 61.)

. . . .

So, there's no reason to think that in February of 2009, there was any document on backup tapes or otherwise of Ms. Grimmett's to find.  (Tr. at 62.)

. . . .

One more thing about the—the—the files that we do have and what we do know and what ought to give comfort that the plaintiffs have a full and complete record.  (Tr. at 63.)

. . . .

There's nothing in those documents to suggest there's something missing somewhere else.  It gives—it gives a full and complete and, frankly, I think, hopefully to the Court comforting view that everything exactly as I just walked you through, everything is there, there is no collection of documents missing.  (Tr. at 64.)

Basically, it would be impossible for Delta to have been more forceful in its assurances that it had fully complied with Plaintiffs' document requests and the DOJ's CID.

## III.   Delta's Failure to Produce 60,000 Pages of Responsive Documents

### A.   Recently Discovered Hard Drives

While the DOJ's bag-fee investigation was pending, the DOJ was also conducting an unrelated investigation of Delta regarding its proposed swap of airport landing slots with U.S. Airways at Washington and New York area airports.  In connection with that investigation, the DOJ received from Delta several documents relevant to the DOJ's *bag-fee* investigation that Delta had not produced in response to the bag-fee CID.  On February 17, 2011, the DOJ sent Delta a letter asking why Delta had failed to produce those documents in response to the CID issued in the bag-fee investigation.

On March 1, Delta's counsel informed the Court that it had recently become aware of additional "potential issues" with its document production in this case.

By letters dated March 8, 2011, Delta explained to both the DOJ and Plaintiffs that the slots-swap investigation documents were collected and produced by a different law firm not involved in the bag-fee investigation or this case, meaning that the slots-swap investigation documents were not readily available to Delta's counsel in this case.  Delta then stated that a preliminary review of the slots-swap investigation documents— approximately two terabytes of data—showed that these documents contained some "additional documents responsive to Plaintiffs' discovery requests in this case."  Delta promised that it would search the slots-swap investigation documents and produce all such additional documents.

As of March 8, 2011, Delta still did not know how relevant documents could have been produced in the slots-swap investigation but not in response to the DOJ's bag-fee CID or Plaintiffs' discovery requests. However, Delta's investigation would show that it failed to (1) upload all of the data from the relevant custodians' hard drives and (2) discover additional back-up tapes containing documents relevant to this case.

On March 17, 2011, Delta informed the Court that it had retained PricewaterhouseCoopers LLP ("PwC") to investigate what happened, and as a result of that investigation Delta discovered the existence of about 60,000

pages of documents responsive to Plaintiffs' document requests that had not been produced. The 60,000 pages included (1) documents found on the previously un-checked individual hard drives, and (2) documents located on recently discovered back-up tapes, which are discussed infra at 15–17.

Delta offers the following explanation of how it could have been as wrong as it was dogmatic in its assertions that it had fully complied with the DOJ's CID and Plaintiffs' document requests.

Delta uses a computer software program called Clearwell to help manage its electronically stored information. Clearwell enables Delta to search its computer files, such as emails, letters, and memoranda, using key terms or phrases (e.g., "bag fee"). Files containing the key terms or phrases can then be copied to other computer storage media and/or printed.

In May 2009, Delta copied and saved data from numerous hard drives of various custodians as part of its efforts to respond to the DOJ's bag-fee CID. However, the contents of some of the hard drives were not uploaded to Clearwell, but Delta's legal team did not discover this fact until nearly two years later, in March 2011. Consequently, when Delta searched its electronic documents in 2009, only Delta's active email servers or

shared network servers were searched; files located on the custodians' hard drives, including archived emails on the hard drives but not on the shared servers, were not searched and thus not produced.  Apparently, at some point the data on those hard drives *was* uploaded to Clearwell in connection with the slots-swap investigation.  As a result, Delta produced documents to the DOJ in connection with the slots-swap investigation.  The DOJ noticed that some of those documents were responsive to the DOJ's bag-fee CID, yet were not produced by Delta in response to the bag-fee CID.  As previously indicated, on February 17, 2011, the DOJ sent Delta a letter asking why the documents responsive to both CIDs were not produced in response to the bag-fee CID.

Delta's explanation is that it failed to upload all of the data on the hard drives to Clearwell for the bag-fee investigation due to a misunderstanding between its counsel in this case and its internal technology department, CSIRT.[4]  Back on May 13, 2009, Delta's counsel instructed CSIRT to copy and save the hard drives and shared server files of the relevant custodians.  Nine days later CSIRT informed counsel that it

---

[4] Delta's IT group is called the "Computer Security and Investigative Response Team," or "CSIRT."  It is housed in a separate building from Delta's counsel, approximately one mile away.

had almost finished copying and saving the data on the custodians' hard drives, and it needed to know whether all of that data should be uploaded to Delta's then-new search tool, Clearwell.  Delta's in-house counsel replied in the affirmative.  Two weeks later counsel followed-up to make sure that all of the data collected from the custodians' individual hard drives had been uploaded to Clearwell.  Nevertheless (according to PwC in March 2011), CSIRT had not in fact uploaded to Clearwell all of the data from the custodians' hard drives.  Significantly, Delta offers no explanation for this failure.

B.    Recently Discovered Back-Up Tapes

In addition to discovering that it failed to produce documents because it did not search several individual hard drives for documents as required, Delta also discovered in March 2011 the existence of additional back-up tapes in a CSIRT evidence locker.[5]  Delta offers the following explanation for why it did not discover and could not have discovered these tapes before March 2011.

---

[5] Apparently, that's really what it's called.

As stated above, sometime between May 19 and June 5, 2009, Delta instructed IBM to suspend the overwriting of Delta's daily and monthly back-up tapes.  Based on conversations at that time between Delta's counsel and both CSIRT and IBM, Delta then believed that (1) its oldest back-up tapes were from April 2009, and (2) those tapes were stored by CSIRT in CSIRT's "evidence locker."  Delta contends that CSIRT stores only those back-up tapes that have been collected in connection with litigation or investigations, whereas IBM is the custodian of Delta's other, routine back-up tapes.

In August 2010, Delta's counsel contacted CSIRT to confirm that the April 2009 back-up tapes were being stored, which CSIRT confirmed. CSIRT also informed Delta's counsel that it was storing a set of back-up tapes delivered by IBM to CSIRT sometime in September or October 2009.[6] CSIRT did not mention that it was also storing a set of back-up tapes predating April 2009—the "recently discovered back-up tapes."

Not until March 2011, when Delta's counsel met with representatives of CSIRT and PwC at CSIRT's offices, were the recently discovered back-up tapes found.  At that time, Delta's counsel asked to see the April 2009 back-

---

[6] IBM delivered these tapes to CSIRT pursuant to a preservation instruction from Delta's law department in connection with the slots-swap investigation.

up tapes, and for the first time CSIRT showed counsel an unmarked box of back-up tapes. Nothing on the tapes indicated why they were being stored, and CSIRT could not explain what the tapes were or why they were being preserved. Neither CSIRT nor IBM has been able to determine who requested that the tapes be preserved and stored in the evidence locker. After the tapes were discovered in March 2011, Delta had a vendor perform a forensic scan of the tapes to determine their age and relevance and promptly informed Plaintiffs of their existence upon determining their relevance. The scan showed that the tapes, which pre-dated the April 2009 back-up tapes that Delta thought were the oldest tapes available, contained documents responsive to Plaintiffs' document requests. Delta produced these documents to Plaintiffs in April and May 2011; they are included among the 60,000 pages of documents produced to Plaintiffs.

## IV.   Plaintiffs' July 25 Letter and Delta's Responses Thereto

None of this sat too well with Plaintiffs, who had suspected as early as 2009—when Delta admittedly destroyed documents when it delayed in instructing IBM to stop overwriting the back-up tapes (albeit inadvertently, if one were inclined to take Delta at its word)—that Delta's production was

woefully incomplete, suggesting that Delta had destroyed or intentionally withheld evidence.  On July 25, 2011, Plaintiffs' counsel wrote the Court an eighteen-page letter accompanied by 47 exhibits totaling 361 pages, expressing Plaintiffs' ire.  Plaintiffs seek four things: (1) a re-opening of the discovery period; (2) a proposed case schedule; (3) sanctions against Delta; and (4) an order compelling Delta and AirTran to produce ongoing correspondence with the DOJ related to its bag-fee investigation.

By letter dated August 2, Delta responded to Plaintiffs' letter indicating that it (1) did not object to a limited reopening of discovery; (2) would respond to the motion for sanctions within the time allowed under the Federal Rules of Civil Procedure; (3) objected to producing additional correspondence between it and the DOJ; and (4) commented generally on the nature of the recently produced documents.  Delta's letter did not dispute that Delta (1) failed to search and produce responsive documents from the hard drives collected in May 2009 from the relevant bag-fee custodians, and (2) located after the close of discovery the recently discovered back-up tapes containing emails from certain custodians.  It characterized these blunders as "inadvertent mistakes."

On August 11, Delta sent a letter to the Court responding to Plaintiffs'
request for sanctions.  The details of this letter are addressed below.

## V.    The Evidentiary Significance of the Newly Produced Documents

Before addressing Plaintiffs' requested sanctions and Delta's response
thereto, it is necessary to consider both sides' evaluations of the
approximately 60,000 pages of documents[7] that Delta produced to
Plaintiffs in April and May of 2011.  Plaintiffs have two main issues with the
newly produced documents.

Plaintiffs first contend that a number of the newly produced
documents contradict the deposition testimony of Delta witnesses as to
when Delta adopted a first-bag fee and that the contradictions as to the
timing of Delta's decision "help demonstrate that Defendants imposed a
first bag fee as the result of a conspiracy."  Second, Plaintiffs argue that
Delta should be sanctioned for its late production because the existence of
these newly produced documents (1) refutes Delta's numerous
representations that it had provided a full and complete record of events,

---

[7] Prior to the close of discovery on December 15, 2010, Delta had produced to
Plaintiffs approximately 103,000 pages of documents.

and (2) suggests that even more documents remain missing or were destroyed.

The Court addresses each contention in turn.

### A.   The Deposition Testimony of Delta's Witnesses and Evidence of a Conspiracy

Plaintiffs contend that Delta's witnesses previously testified that its two divisions responsible for making a recommendation about the first-bag fee—Revenue Management ("RM") and Airport Customer Service ("ACS")— were divided on whether Delta should impose the fee. Generally speaking, Delta's witnesses testified that ACS favored a first-bag fee long before AirTran's October 23, 2008 earnings call and that RM always opposed the fee. Plaintiffs contend that the newly produced documents show that ACS was actually opposed to the fee in the months prior to AirTran's earnings call, but that Delta changed its position after the call. Thus, Plaintiffs assert that Delta decided to adopt the first-bag fee as a direct result of AirTran's earnings call.

Plaintiffs also contend that the new documents "impeach other aspects of the testimony of Delta witnesses." However, Plaintiffs compare the new documents to the testimony of only one witness—Delta's executive

vice president Steve Gorman.  Plaintiffs assert that Gorman testified that Delta knew that three other carriers did not have a first-bag fee but that this did not enter into Delta's consideration.  Plaintiffs claim that the new documents refute this testimony and make clear that AirTran's position was indeed a factor taken into consideration by Delta and Gorman.  Thus, to summarize, Plaintiffs contend that the timing of Delta's decision about the first-bag fee, as evidenced by the newly produced documents, shows that Delta's adoption of the fee was a direct result of AirTran's October 23, 2008 earnings call, and that this evidence supports their conspiracy claim.

Delta offers three responses to Plaintiffs' assertions about the alleged inconsistencies between the depositions and documents.  Delta first responds that the alleged inconsistencies are trivial and that Plaintiffs inaccurately represent the contents of the new documents.  More importantly, Delta contends that "what is noticeably absent from Plaintiffs' letter [is] *any* evidence, in the newly produced documents or otherwise, supporting [Plaintiffs'] allegations that Delta entered into an *agreement* with AirTran to adopt the first bag fee."[8]  Finally, Delta asserts that the

---

[8] AirTran made a similar statement in its August 2 letter to the Court.  It stated that "[n]one of the newly produced documents [Plaintiffs] attach to their submission establishes, directly or indirectly, any communication between AirTran and Delta.  Nor do they show any interaction at all between AirTran and Delta."  AirTran contends that

documents actually confirm its defense because they show that (1) its two most senior executives and the ultimate decisionmakers—CEO Richard Anderson and president Ed Bastian—decided that Delta should adopt the fee in advance of AirTran's earnings call; (2) the leaders of ACS decided that Delta should adopt the fee and advocated its decision long before AirTran's call; (3) RM, led by Glen Hauenstein, was implacably opposed to the fee both before and after AirTran's call; and (4) information provided by Northwest to Delta after the merger and before Delta's final decision about the fee confirmed the substantial profitability of the fee.  Thus, to summarize Delta's position, it contends that the new documents show only that it made a unilateral decision to adopt a first-bag fee and that AirTran's earnings call had no effect on that decision, contrary to Plaintiffs' theory of the case—that Defendants conspired to adopt the first-bag fee and used AirTran's October 2008 earnings call to cover their actions.

On August 26, 2011, Plaintiffs responded to Delta's arguments in both its August 2 and 11 letters.  Noticeably absent from Plaintiffs' August 26 letter to the Court is a complete response to Delta's contention that there is

---

the documents upon which Plaintiffs rely show that Delta, acting independently, was aware of (1) what other airlines had done, and (2) AirTran's public statements, and that those were among the many factors Delta considered after its merger with Northwest. Thus, AirTran asserts that these parallel actions by Delta are completely lawful.

not "*any* evidence, in the newly produced documents or otherwise, supporting their allegations that Delta entered into an *agreement* with AirTran to adopt the first bag fee."  In reply to such a strong assertion, Plaintiffs state only,

> [A]lmost all of the relevant documents in the new production undermine Delta's arguments and support Plaintiffs' allegations of conspiracy.  *See* Pls.' Ltr. to J. Batten at 4-8 (July 25, 2011).  In stark contrast to the numerous e-mails and documents that support Plaintiffs' allegations, Delta cites several ambiguous e-mails as support for its defense.  For example, Delta argues that an October 21, 2008 e-mail about the need to schedule a meeting about post-merger fees, including a first bag fee, demonstrates that Delta CEO Richard Anderson had reached a decision about first bag fees by October 21, 2008.  But Mr. Anderson testified that he did not reach a decision on first bag fees until October 29, 2008, contrary to Delta's strained interpretation of the e-mail.

This argument is buried on page nineteen of Plaintiffs' twenty-one-page letter.  By contrast, Plaintiffs' first letter to the Court (dated July 25) addressed the impact of the new documents beginning on page four and continued for over four pages.  Thus, if Plaintiffs had better examples of how the new documents show that Defendants conspired to impose a first-bag fee, surely they would have said so in their August 26 letter.

Plaintiffs also offer no additional or direct evidence of a conspiracy between Defendants in their August 26 letter.  Indeed, in their letter

Plaintiffs offer only one example of how the recently produced documents allegedly undermine Delta's arguments and support theirs.  That example is the alleged contradiction between the first-bag-fee emails sent by Delta's CEO Richard Anderson and his testimony about when he made his decision to adopt a first-bag fee.  This example is tepid support for Plaintiffs' contention that "[t]he timing of Delta's change in position regarding first bag fee as evidenced by the newly produced documents provides evidence that the first bag fee was imposed as a direct result of AirTran's October 23, 2008 earnings call."

> **B.**  **Delta's Representations That It Had Provided a Full and Complete Record of Events, and Plaintiffs' Contention that Relevant Documents Are Still Missing**

Plaintiffs also take issue with Delta's representations that it had produced everything, in light of the existence of these new documents.  Plaintiffs also argue that additional documents remain missing.

Plaintiffs first contend that the "[n]ewly produced documents . . . undermine representations made by Delta in connection with Delta's opposition to Plaintiffs' spoliation motion about the completeness of its production."  For example, Delta previously stated that all of Gail

Grimmett's (the head of its bag-fee team) emails regarding first-bag fees had been permanently deleted on November 1, 2008, whereas, the recently produced documents contain a number of Grimmett's first-bag-fee emails.

Indeed, as discussed above in Part II, Delta made several representations about its complete production, and some of these representations pertained to Grimmett's emails. For example, during the hearing on Plaintiffs' spoliation motion, Delta's counsel stated, "It was [Grimmett's] normal practice in 2008 to delete her emails on a regular basis and for her deleted email box to clear every time she exited the computer. So there's no reason to think that in February of 2009, there was any document on back-up tapes or otherwise of Ms. Grimmett's to find." Despite this assurance, the newly produced documents include additional Grimmett emails.

In response, Delta acknowledges that it dropped the ball by failing to timely produce 60,000 pages of responsive documents. However, it insists that these documents are of little, if any, evidentiary significance to the case; in fact, as stated above, Delta contends that the documents actually support its defense, not Plaintiffs' conspiracy claim. Significantly, Delta

points out that of the almost 10,000 responsive documents[9] located on the

imaged hard drives and back-up tapes, the majority of those documents did

not relate to bag fees.

Plaintiffs also contend that not only do the newly produced

documents show that Delta failed to produce inculpatory documents, but

that these new documents suggest that additional documents—presumably

inculpatory as well—have still not been produced.  In their July 25 letter,

Plaintiffs state:

> While the newly produced documents provide evidence of
> Defendants' conspiracy, additional evidence remains missing.
> The backup tapes recently located by Delta are only a partial
> record of the e-mails and backup tapes that existed on February
> 2, 2009, when Delta received the DOJ CID.  Delta did not
> suspend auto-deletion of e-mails until mid-May 2009, and
> allowed IBM to destroy five monthly backup tapes in IBM's
> possession between February 7, 2009 and June 6, 2009. . . .
> Delta apparently made no effort to locate or preserve relevant
> backup tapes in its own possession until March 9, 2011 (well
> over a month *after* this Court's hearing on Plaintiffs' spoliation
> motion), when it asked its IT staff where Delta kept its backup
> tapes.  "Neither Delta's IT group nor Delta's outside vendor . . .
> (IBM) possessed a log of the tapes or a record explaining why
> and when the tapes were set aside."  Letter from Delta to DOJ
> (Apr. 27, 2011), Ex. 9.  Thus, for over two years—from February
> 2, 2009 to March 9, 2011—a number of additional backup tapes

---

[9] Plaintiffs state that they received 60,000 pages of documents and Delta
contends that only 10,000 documents were produced.  It is unclear whether the 10,000
documents produced by Delta are the same documents as the 60,000 pages Plaintiffs
contend they received.

may have also been destroyed, and Delta has no log or record of such destruction.

Delta's two letters to the Court do not address this contention.  However, Plaintiffs offer nothing more than speculation to support their theory that documents have been destroyed or that additional documents remain missing.

## VI.   Reopening Discovery

Plaintiffs contend that discovery should be reopened on a limited basis to allow them to explore issues raised by the newly produced documents.  Plaintiffs propose that:

(1)    Discovery be reopened on a limited basis;

(2)    Two weeks after discovery is reopened and as necessary thereafter, Delta and AirTran[10] supplement their discovery responses pursuant to Fed. R. Civ. P. 26(e);

(3)    Four months after Delta and AirTran complete their document production, discovery closes;

---

[10] Plaintiffs' discovery issues with AirTran are discussed at the end of this order.

(4)     Three weeks after discovery closes, the parties file summary

judgment briefs and Plaintiffs file their supplemental brief

regarding class certification;[11]

(5)     Briefs in opposition to the motion for summary judgment be

filed four weeks after the summary judgment motions are filed;

and

(6)     Reply briefs be filed three weeks after the opposition briefs are

filed.

Delta agrees that discovery should be reopened; however, it believes

that Plaintiffs' proposed open-ended schedule is not helpful.  Delta

contends that the Court should either issue a clear instruction on the

purpose and scope of any new discovery (e.g., the order Delta proposed

with its August 2 letter to the Court) or order Plaintiffs to identify what

additional discovery needs to be conducted during the new discovery

period.  Delta also argues that point (3) is superfluous, as Delta completed

its document production months ago and is now attempting to compromise

with Plaintiffs on their new document requests.

---

[11] Delta and AirTran object to the supplemental class certification brief.  This, too,
is addressed at the end of the order.

28

As to the start time of the new discovery period, Delta believes that its document production is complete, and thus the four months of additional discovery, as proposed by Plaintiffs, should commence immediately. However, Delta also acknowledges that it is producing documents as a result of new document requests by Plaintiffs.

Because Delta agrees that discovery should be reopened, the Court will grant Plaintiffs' request to reopen discovery.  However, discovery will be limited to the matters related to the documents produced by Delta after the close of the original discovery period, which includes but is not limited to the recently produced documents on the hard drives and back-up tapes produced by Delta in recent months.  Discovery will reopen immediately and end four months from the date of this Order.

VII.   Plaintiffs' Request for Sanctions

In addition to reopening discovery, Plaintiffs contend that Delta should be sanctioned for not locating the recently produced documents sooner.  Specifically, Plaintiffs contend that Delta should be sanctioned pursuant to Fed. R. Civ. P. 26(g) and 37 because it failed to produce responsive documents prior to the close of discovery; failed to conduct a

reasonable inquiry into the existence and location of its back-up tapes; and misrepresented that it did not possess the recently located back-up tapes. As for the type of sanctions, Plaintiffs seek reimbursement of their fees and expenses associated with (1) their motion for spoliation sanctions; (2) their request for sanctions, and (3) the extended discovery period. They also urge the Court to enter an order barring Delta from using any of the late-produced documents at any stage of the litigation.

Delta responds that there is no basis for sanctions under Rule 26(g) or Rule 37. It contends that its failure to timely search its individual custodians' hard drives was the inadvertent result of a misunderstanding by Delta's IT department of instructions from Delta's counsel. Delta further contends that its failure to locate the recently discovered back-up tapes was equally inadvertent, i.e., the result of the tapes' storage in an unexpected location: the evidence locker. Thus, Delta asserts that its in-house and outside counsel reasonably believed that all requested hard drives had been searched and that the oldest available back-up tapes had been produced. Consequently, it argues that its responses are not sanctionable now just because in hindsight its discovery responses may have been incomplete or incorrect.

Additionally, Delta asserts that it was obligated to, and did, provide in a timely manner the additional or corrective information once it became aware of the relevant but unproduced documents.  It also argues that it has been in constant communication with Plaintiffs and the Court about the additional discovery and has offered to cover the fees and expenses related to the additional discovery but that Plaintiffs have refused to identify what discovery they think is needed.

Despite its arguments against the propriety of sanctions, Delta does not dispute that it (1) neglected to search and produce responsive documents from the hard drives collected in May 2009 from the relevant bag fee custodians; and (2) located and identified additional back-up tapes containing emails from relevant custodians after the close of discovery.

It is also undisputed that prior to the discovery of these documents, Delta represented to the Court approximately twenty times[12] that it had produced every document responsive to Plaintiffs' discovery requests that it had in its possession.  Delta's representations are best summarized by its

---

[12] These representations can be found on (1) pages 16, 24 and 27 of Delta's brief in response to Plaintiffs' spoliation motion [210]; (2) pages 2 and 4 of Delta's surreply brief to Plaintiffs' spoliation motion [272]; (3) pages 57, 58 and 66 of the November 8, 2010 status conference transcript [200]; and pages 41, 42, 48, 61, 63, 64 and 66 of the spoliation motion hearing transcript [264].

counsel's statement to the Court during the hearing on Plaintiffs' motion for spoliation sanctions.  During that hearing, Delta's counsel stated, "There's nothing in those documents to suggest there's something missing somewhere else.  It gives—it gives a full and complete and, frankly, I think, hopefully to the Court comforting view that everything exactly as I just walked you through, everything is there, there is no collection of documents missing."

However, although Delta clearly failed to comply with its obligation to produce documents—and misrepresented through counsel that it had not so failed—the 60,000 pages of documents that Delta recently produced do not appear to contain "smoking gun" evidence of a conspiracy between Delta and AirTran to impose the first-bag fee.  This, of course, does not excuse Delta's discovery failures and misrepresentations to the Court.  But it does affect the Court's analysis of the relief that Plaintiffs seek.

The Court now addresses whether Delta should be sanctioned under Rule 26(g), Rule 37 or both, and what sanctions, if any, are appropriate.

### A.    Rule 26(g)

Plaintiffs contend that Delta violated Rule 26(g)(1), which states that a signing attorney certifies discovery responses are complete and correct to the best of his knowledge, information and belief *after a reasonable inquiry*, and that Delta's counsel failed to take reasonable steps to comply with this obligation.  Specifically, Plaintiffs assert that Delta inexcusably failed to ensure that all sources of discoverable information (i.e., its custodians' hard drives) were identified and searched, did not determine the actual implementation of its e-discovery retention policy, and did not search the storage area where its internal technology department stored back-up tapes until March 9, 2011.

Delta responds that sanctions pursuant to Rule 26(g) as a result of recently produced documents are limited in scope to the elements delineated in subsection (g)(1)(B).  This subsection requires a signing attorney to certify after a reasonable inquiry that his client's discovery responses are (1) consistent with the Federal Rules of Civil Procedure and warranted by existing law or by nonfrivolous arguments for changing the existing law; (2) not interposed for any improper purpose; and (3) neither unreasonable nor unduly burdensome or expensive.  Thus, Delta contends

that Rule 26(g) only requires a reasonable inquiry limited to these three elements and that Plaintiffs have not shown that its conduct violated any of these elements.  However, the comments to Rule 26(g) show that the rule is not as limited in scope as Delta contends.

Rule 26(g)(1) requires an attorney of record to sign every discovery request, response or objection.  By signing, an attorney certifies that to the best of his knowledge, information, and belief formed after a reasonable inquiry that a discovery request, response or objection is:

    (i)    consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

    (ii)    not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

    (iii)    neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

FED. R. CIV. P. 26(g)(1)(B).  The comments to subsection (g)(1) clarify that Rule 26(g) broadly "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." FED. R. CIV. P. 26(g) advisory committee's note.  This broad duty is satisfied when an attorney makes "a

reasonable inquiry into the factual basis of his response, request, or objection." *Id.* Specifically, the attorney's investigation and conclusions drawn therefrom must be reasonable under the circumstances. *Id.* Thus, the comments make clear that Rule 26(g) is broader than Delta portrays it. The Court now determines whether Delta has in fact violated subsection (g).

Delta admits that it belatedly produced relevant documents; however, it contends that its conduct does not run afoul of subsection (g) because its counsel made reasonable inquiries prior to signing the certifications. It asserts that "each response was given only after Delta counsel had engaged in several conversations with Delta's CSIRT department and/or IBM to verify the relevant back-up tapes Delta had in its possession."

Plaintiffs assert that Delta did not conduct a reasonable inquiry into the factual basis for its implicit representations that (1) all of the relevant hard drives had been processed through Clearwell, and (2) there were no missing back-up tapes. They argue that Delta should have ensured that all sources of discoverable information were identified and searched and searched in (where else?) the evidence locker, where CSIRT typically keeps back-up tapes. Consequently, Plaintiffs contend, Delta falsely certified that

its discovery responses were correct and complete.  Plaintiffs argue that as a result, the case has been unnecessarily delayed and its costs unnecessarily increased, and the fact that Delta is now producing these documents is immaterial.  The Court agrees.  *See Kipperman v. Onex Corp.*, 260 F.R.D. 682, 698 (N.D. Ga. 2009) (imposing sanctions under Rule 26(g) for defendant's misrepresentations about its e-discovery and rejecting defendant's arguments it had finally complied with discovery orders and plaintiff was not prejudiced); *R&R Sails Inc. v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 524–25 (S.D. Cal. 2008) (imposing Rule 26(g) sanctions where defendant without substantial justification belatedly produced electronic information despite certifications to court and plaintiff that its discovery production was complete); *see also* 8A CHARLES WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2052 (3d ed. 2010) (collecting cases where parties asserted opponent neglected to produce all electronically stored information and sanctions appropriate under Rule 26(g)).

The Court finds that Delta did not conduct a reasonable inquiry. With respect to the collected but unsearched hard drives, Delta has not substantially justified its failure to ensure the drives were run through

Clearwell and searched back in 2009.  While its counsel did email CSIRT a list of custodians whose hard drives should have been loaded onto Clearwell, CSIRT did not respond with confirmation that each listed person's drive was on the system; CSIRT only stated that files were identified by "user employee id, not by name."  Delta has not shown that it ever confirmed with CSIRT that each hard drive that was supposed to be run through Clearwell actually had been.  This oversight is a huge hole in Delta's electronic discovery process, and Delta has not adequately explained why it did not ensure in 2009 that every collected hard drive was actually processed through Clearwell and searched.  *See Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1334 (S.D. Fla. 2007) (finding Rule 26(g) violated where attorney relied on client's assurances in drafting discovery responses without confirming assurances by reviewing financial records).

As for the back-up tapes, Delta has not tried to explain why counsel did not check CSIRT's evidence locker.  Again, Delta relied on email and phone communications, but given the extensive questioning of Delta about back-up tapes upon receipt of the bag-fee CID, counsel should have inspected the evidence locker in 2009, and certainly should have done so as

37

soon as issues with the back-up tapes arose.  *See id.* (attorney did not "make a reasonable investigation to assure that his clients had provided all available responsive information").  Delta tries to justify its failure by explaining that back-up tapes are not typically located in this locker; however, it also explicitly states that tapes are routinely stored in the CSIRT evidence locker once they are collected for litigation or internal or external investigations.  Consequently, Delta's counsel should have inspected the tapes in this locker, as it stores only the tapes that are collected for litigation and investigations, and Delta has not substantially justified its failure to do so.

Compounding the problem are Delta's repeated representations that it had produced everything.  The unequivocal nature of those representations is best illustrated by Delta's counsel's statement during the January 27, 2011 hearing on Plaintiffs' motion for spoliation sanctions: "There's nothing in those documents to suggest there's something missing somewhere else.  It gives—it gives a full and complete and, frankly, I think, hopefully to the Court comforting view that everything exactly as I just walked you through, everything is there, there is no collection of documents missing."

Also, Delta did not promptly correct its factual misrepresentations to the Court regarding its supposedly complete production of the requested documents.  To the contrary, on February 22, 2011 (five days after the DOJ informed Delta of its discovery of additional documents), Delta's counsel submitted another letter to the Court insisting that spoliation sanctions should not be imposed.  Delta waited until March 1—one week after the Court denied Plaintiffs' spoliation motion—to notify the Court of the issues raised by the DOJ.

Thus, sanctions under Rule 26(g) are appropriate for Delta's failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in the evidence locker and for its myriad inaccurate representations that it had done both.  *See Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) (finding Rule 26(g) violated where documents defendants failed to produce were in their possession and would have been located if defendants had conducted a reasonable search).

With respect to the type of sanctions, subsection (g)(3) provides that

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

39

Through this subsection, Rule 26(g) "curb[s] discovery abuse by explicitly encouraging the imposition of sanctions." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993) (quoting FED. R. CIV. P. 26(g) advisory committee's note).  However, while the Court "must impose" a sanction, the rule also clarifies that the sanction must be "an appropriate sanction." Thus, the Court evaluates the circumstances surrounding Delta's behavior both before and after the discovery of the documents.

Since becoming aware of its deficient document production, Delta has diligently worked to address the situation.  It collected the two terabytes of data produced in the DOJ slots investigation and searched it for documents relevant to this case; processed the newly discovered back-up tapes and produced relevant documents; employed electronic search terms to accommodate Plaintiffs' requests; added additional custodians to the search list; searched material collected in another unrelated DOJ investigation; and agreed to numerous additional discovery requests made by Plaintiffs.  Its initial delay in informing the Court aside, Delta has been forthcoming with the Court and Plaintiffs about its progress, agrees that discovery should be reopened, and acknowledges that it should be required to pay at least a portion of the expense of the additional discovery that will

now be necessary because of Delta's mistakes.  Delta also asserts that the

majority of the recently produced documents do not relate to bag fees, and

the ones that are so related do not show that Delta conspired with AirTran.

Finally, and significantly, Delta produced the documents prior to motions

for summary judgment and well before trial.

In light of these facts, the Court finds *SCADIF, S.A. v. First Union*

*Nat'l Bank*, 208 F. Supp. 2d 1352, 1378–79 (S.D. Fla. 2002), *aff'd*, 344 F.3d

1123 (11th Cir. 2003), instructive.  There, First Union, like Delta, admitted

that it had failed to make a complete production due to an unintentional

omission, and it accepted responsibility for its mistake.  The court rejected

First Union's excuses for failing to produce certain documents and found its

"failure to timely produce known, requested and discoverable documents . .

. a serious procedural and ethical violation . . . one that cannot be dismissed

lightly, even where the failure is the result of mere carelessness."

Nevertheless, the court determined that the prejudice from First

Union's untimely disclosure was minimized by the fact that "(1) the

documents were produced before trial (though barely); (2) SCADIF used

the documents to examine and cross-examine witnesses in the trial; and (3)

the documents are of minimal relevance."  *Id.* at 1379.  Particularly

persuasive to the court's finding that First Union's failure was a "good faith error" was the fact that "[t]here were no 'smoking guns'" in the belatedly produced documents. *Id.* As a result, the court limited its sanction to a written reprimand. *See also Guimaraes v. NORS*, 366 F. App'x 51, 54 (11th Cir. 2010) (affirming district court's denial of motion for sanctions in part because untimely produced documents were "of minimal relevance"); *cf. BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1051 (11th Cir. 1994) (finding sanctions appropriate where late documents were discovered on "eve of trial" and were relevant and material).

While this Court does not believe a written reprimand suffices,[13] Delta's response after it learned that it had relevant but unproduced documents, the timing of its production (pre-trial and pre-motions for summary judgment), and the lack of a "smoking gun" support lesser sanctions. Pursuant to Rule 26(g), the Court finds it appropriate to require Delta to pay reasonable expenses, including attorneys' fees, caused by its violation. Additional details about determining this amount are below.

---

[13] As made clear throughout this Order, issues with document production have hounded Delta from the beginning of this litigation and since it received the DOJ's bag-fee CID. Nevertheless, Delta repeatedly represented to the Court and Plaintiffs that it had produced "a full and complete record." Time has proved those representations to be woefully inaccurate.

B.     Rule 37

Plaintiffs also contend that Delta is subject to sanctions under Rule 37(b)(2) & (c)(1).

1.     Subsection (b)(2)

Plaintiffs assert that subsection (b)(2) applies because "Delta's failure to produce these documents prior to the deadline set by the Court amounts to a failure to comply with this Court's discovery Orders."  Delta disagrees, arguing that it has not willfully disobeyed a discovery order compelling production of specific materials or information.

Subsection (b)(2) provides,

(A)  *For Not Obeying a Discovery Order.*  If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—*fails to obey an order to provide or permit discovery*, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:

   (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

   (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

43

(iii)   striking pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)   dismissing the action or proceeding in whole or in part;

(vi)   rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

. . . .

(C)   *Payment of Expenses.*  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(Emphasis added.)  The key phrase in this subsection is "fails to obey an order to provide or permit discovery."  Plaintiffs contend that Defendants violated (1) the Court's May 13, 2010 order that required Defendants to complete their production in response to Plaintiffs' first document requests on or before June 30, 2010, and (2) the initial case management order that set forth a December 15, 2010 deadline for document production by all parties.

Delta responds that general discovery orders like the ones mentioned above are not sufficient to trigger application of subsection (b)(2), especially where a party, like it, has complied in part with the general directives.

The parties have provided neither persuasive nor binding authority as to whether an order setting a deadline for a party to respond to a discovery request or a scheduling order qualifies as an order providing for or permitting discovery under subsection (b)(2).[14]   Indeed, based on the Court's own research, the facts of this case are not similar to the facts in most cases addressing subsection (b)(2).  Here, Delta was producing documents in response to Plaintiffs' first document requests, and the parties' counsel were engaged in continuing discussions regarding the scope of the requests.  Thus, unlike the orders in most of the cases within the Eleventh Circuit interpreting subsection (b)(2), the May 13 order in this case was not issued as a result of a party's refusal to produce documents or

---

[14] Delta relies on *R.W. International Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 16 (1st Cir. 1991), for the proposition that a district court's scheduling order is not a discovery order for purposes of subsection (b)(2).  While the First Circuit did reject the defendants' argument that the general scheduling order qualified as an order providing for or permitting discovery, its decision was strongly influenced by the fact that the district court dismissed the case pursuant to subsection (b)(2).  The sanction of dismissal is considered an extremely harsh sanction, and it is not one that Plaintiffs seek in this case.  Consequently, the Court finds *R.W. International* inapposite.

respond to a discovery request.  *See Brooks v. United States*, 837 F.2d 958, 961 (11th Cir. 1988) (stating in dicta that Rule 37(b)(2) did not support sanctions where "there had been no failure to cooperate following an order to compel and failure to comply"); *BankAtlantic*, 12 F.3d 1045, 1052 (11th Cir. 1994) (imposing sanctions under Rule 37(b)(2) where court issued an order compelling defendant to produce documents and defendant failed to comply with that order); *SCQuARE Int'l, Ltd. v. BBDA Atlanta, Inc.*, Civil Action File No. 1:04-cv-641-JEC, 2008 WL 228032, at *1 (N.D. Ga. Jan. 25, 2008) (imposing sanctions under (b)(2) where defendant failed to obey court's order compelling defendant to produce certain documents).  In contrast to those three cases, the May 13 order in this case was issued to address Plaintiffs' concern that production would take too long and that they would not have sufficient time to analyze all of the documents before the discovery period closed.  Thus, the Court set the June 30 deadline to ensure that Defendants timely produced the documents in response to Plaintiffs' document requests.  Such an order more closely resembles a scheduling order than an order "to provide or permit discovery."[15]

---

[15] Review of Fed. R. Civ. P. 16(f) and supporting case law suggests that Rule 16(f) is a more appropriate vehicle for seeking sanctions where a party has violated a scheduling order.  *See Guimaraes*, 366 F. App'x at 54 ("Under Rule 16(f), a court may impose sanctions if a party or its attorney violates a scheduling order or other pretrial

46

Additionally, the initial case management order only sets a deadline for the discovery period, which is also more like a scheduling order than an order providing for or permitting discovery.  In light of the generic nature of these orders and the Court's conclusion that sanctions are appropriate under Rule 37(c)(1), which incorporates the Rule 37(b)(2) sanctions, it is unnecessary to resolve whether the initial case management order and May 13 order qualify as orders providing for or permitting discovery and whether subsection (b)(2) applies.

### 2.    Subsection (c)(1)

As with their Rule 26(g) arguments, Plaintiffs contend that Delta's conduct violated Rule 37(c)(1), which incorporates obligations imposed under Rule 26(e), because Delta failed to act reasonably under the circumstances, i.e., its failure to produce the documents was not substantially justified.  Specifically, Plaintiffs assert that under Rule

---

order, including a discovery order.").  However, the Court will not address Rule 16(f) sanctions, even though it could sua sponte, since that subsection permits sanctions substantially similar to those permitted by Rule 37(c), which the Court finds applicable below.  *See Brooks*, 837 F.2d at 961 (stating that Rule 16(f) authorizes district court on motion or sua sponte to impose sanctions for failure to comply with scheduling or pretrial order).

26(e)(1)(B), sanctions are appropriate because Delta failed to produce responsive documents as ordered by the Court.

Delta responds that Plaintiffs have failed to show that Rule 37(c)(1) sanctions are appropriate because they have neither (1) identified the information that it failed to provide in keeping with Rule 26(e), nor (2) shown that it did not act in accordance with the rule.  Specifically, Delta asserts that Rule 26(e)(1)(A) requires it to correct or supplement responses "in a timely manner," and that it did this when it immediately notified Plaintiffs and the Court of the recently discovered documents and immediately began producing those documents.

Turning to subsection (c)(1), it provides,

(1)    *Failure to Disclose or Supplement.*  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A)    may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B)    may inform the jury of the party's failure; and

(C)    may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

48

Rule 26(a) addresses Delta's obligations with respect to initial disclosures, and Rule 26(e) addresses Delta's obligations to supplement disclosures and discovery responses, including its responses to Plaintiffs' document requests.  Plaintiffs believe that Rule 37(c)(1) applies because Delta has violated its obligations under Rule 26(e), which states in pertinent part,

> (1)   *In General.*  A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> > (A)   in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> >
> > (B)   as ordered by the court.

Thus, Delta was required to supplement its discovery responses in a timely manner when it learned that its previous document production was incomplete or when ordered by the Court to supplement or correct its responses.  Failure to do either can result in sanctions under Rule 37(c)(1).

Plaintiffs argue that if Delta had conducted a reasonable investigation into the location of the hard drives and back-up tapes within its control, it would have discovered the existence of these new documents prior to the

DOJ's February 2011 letter.  Plaintiffs assert that a reasonable investigation would have involved Delta's ensuring prior to the close of discovery that it had (1) run all of the captured hard drives through Clearwell, and (2) searched the CSIRT evidence locker for additional back-up tapes.  Plaintiffs contend that by not doing these things, Delta's production of the recently discovered documents was not timely under Rule 26(e)(1)(A), and consequently sanctions under Rule 37(c)(1) are appropriate.

Plaintiffs also assert that the Court's May 13 order setting the June 30 production deadline qualifies as an order by the Court to supplement disclosure under Rule 26(e)(1)(B), and that Delta failed to comply with that order when it failed to produce the recently discovered documents, which have always been in its possession.  Thus, Plaintiffs contend that Delta violated subsection (B) and sanctions under Rule 37(c)(1) are appropriate. The Court finds that this argument distorts the nature of the May 2010 order that established a deadline, but did not order Delta to supplement its responses.  Thus, the Court will evaluate this argument and the above arguments under subsection (A).

Finally, Plaintiffs assert that Delta's discovery failures are particularly egregious in light of the "repeated inquiries from the DOJ and Plaintiffs

about the dearth of its production and the existence of backup tapes." The Court agrees. In response to these numerous inquiries, Delta unwaveringly but incorrectly maintained that "there is no collection of documents missing," and that reasonable inquiries would have prevented this entire quagmire.

Turning to whether Delta's conduct violated Rule 26(e)(1)(A), neither side has provided, and the Court cannot find, case law applying subsection (A) to facts similar to the facts of this case. However, several cases have addressed subsection (A) where a party belatedly supplemented an expert report, and the Court finds the reasoning in those cases, particularly *Cochran v. Brinkmann Corp.*, Civil Action File No. 1:08-cv-1790-WSD, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009), persuasive.

In *Cochran*, the defendant challenged the plaintiffs' disclosure of additional testing by their expert after the Court's deadline and asserted that it had been harmed by its inability to pursue discovery as a result of the plaintiffs' untimely disclosure. The plaintiffs contended that their expert had discovered shortcomings in his report, and thus they had recently learned that in some material respects his report was incomplete or

51

inaccurate.  Consequently, they argued that they were entitled to supplement his report under Rule 26(e)(1)(A).

The Court rejected the plaintiffs' argument, characterizing it as a "tortured and self-serving" interpretation of the rule in order to introduce evidence foreclosed by the Court's orders.  The Court reasoned that the purpose of the report requirement and the Court's deadlines was to "end discovery and fix for the parties the evidence and opinions with which they would have to contend at trial so a trial could be fairly and efficiently conducted."  2009 WL 4823858, at *5.  The Court found that allowing the plaintiffs' tortured interpretation of Rule 26(e) would "hopelessly and unfairly frustrate[]" the rule's purpose and the Court's efforts.  *Id.*  The Court determined that although the plaintiffs' expert had been retained months in advance of the deadline, the expert failed to conduct testing to formulate his report prior to the deadlines.  *Id.* at 6.  As a result, the Court found that Rule 26(e)(1)(A) precluded the plaintiffs' belated supplementation, as doing so would have allowed the plaintiffs to circumvent the Court's deadlines.  *Id.*

The *Cochran* Court also determined that the plaintiffs' failure to conduct the testing and to offer the opinions based thereon before the

deadline was not substantially justified, and the late testing and disclosures were not harmless.  Accordingly, the Court found sanctions appropriate under Rule 37(c)(1).  *Id.* at 7.

Like the *Cochran* plaintiffs, Delta tortures the meaning and purpose of Rule 26(e) by suggesting that it timely produced the recently discovered documents (always in its possession) after the Court's deadline.  Just like the discovery deadlines in *Cochran* and made clear to Delta by the Court, the June 30 deadline established by the May 13 order was important to moving the case forward.  Furthermore, there were extensive conversations between the parties and the Court about Delta's document production and the existence of back-up tapes.  And in response to every inquiry and challenge, Delta represented that it had produced every requested document in its possession.  Indeed, in its brief in opposition to Plaintiffs' motion for spoliation sanctions, Delta represented, "There is no evidence that *any* document regarding Delta's decision to adopt a first bag fee in 2008 has not been produced by Delta to Plaintiffs."

Now, Delta asks the Court and Plaintiffs to believe that it was unaware of the existence of the new documents in its possession the entire time.  Even if true, it is only because Delta was not diligent in ensuring that

the relevant hard drives were searched.  Delta's counsel did resend to CSIRT the list of custodians' hard drives that should have been run through Clearwell for CSIRT to confirm that those hard drives were uploaded. However, CSIRT's reply email does not actually confirm that each identified person's hard drive was run through Clearwell.  Delta has not identified other steps it took to ensure that all of the hard drives were in fact uploaded for processing through Clearwell, nor has it shown that it was impossible or unduly burdensome for it to determine which hard drives were and were not passed through Clearwell.  Thus, as with the expert in *Cochran* who was retained months in advance but not diligent about conducting testing before the deadline, Delta was always in possession of the recently produced documents on the hard drives and back-up tapes, but it was not diligent in locating them.

Delta was also dilatory in determining the existence of additional back-up tapes.  Given the extensive discussions about the back-up tapes, Delta's counsel should have inspected the evidence locker prior to March 2011 and ceased to rely solely on CSIRT's representations that there were no other back-up tapes.  *See Martinez v. Rycars Constr., LLC*, No. CV410-049, 2010 WL 6592942, at *2 (N.D. Fla. June 13, 2011) ("An incomplete

report cannot be cured by the use of supplementation . . . .

Supplementation of an expert report pursuant Rule 26(e) does not cover

failures of omission because the expert did an inadequate or incomplete

preparation.") (alteration in original).

Thus, as found in *Cochran*, Rule 26(e) does not forgive Delta's failure

to timely conduct an adequate and complete search for responsive

documents.  Even though subsection (A) required Delta to supplement

incorrect or incomplete information, it does not grant Delta a "right to

produce information in a belated fashion." *3M Innovative Props. Co. v.

Dupont Dow Elastomers, LLC*, Civil No. 03-3364 (MJD/JGL), 2005 WL

6007042, at *4 (D. Minn. Aug. 29, 2005).  In short, Rule 26(e) does not

provide Delta a "safe harbor for [its] lack of diligence." *Id.* (Internal

quotations omitted.)  Consequently, Delta's recent and belated document

production violated this Court's deadlines, was not timely, and runs afoul of

Rule 26(e).  Consequently, the Court must determine whether sanctions are

appropriate under Rule 37(c)(1).

As sanctions, Plaintiffs request an award of their fees and expenses

incurred in connection with (1) this motion, (2) the portion of the discovery

period that must now be extended, and (3) Plaintiffs' motion for spoliation

sanctions.  They also contend that Delta should be barred from using any of the recently produced documents as evidence during any proceeding.

The Court first addresses whether Delta can use the recently produced documents as evidence in connection with any motion or at trial. Under Rule 37(c)(1), a party who fails to provide information as required by Rule 26(e) is not allowed to use that information unless its failure was substantially justified or is harmless.  "[A]n individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'"  *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  "A discovery mistake is harmless if it is honest, and is coupled with the other party having sufficient knowledge that the material has not been produced."  *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003).

Exclusion, however, is not mandatory.  *See Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1348 (11th Cir. 2004) (Rule 37(c)(1) gives district courts "discretion to exclude untimely submissions."). Rule 37(c)(1) provides that in addition to or instead of excluding the late-

produced information, the Court may order a party to pay the reasonable expenses caused by its failure; inform the jury of the party's failure; or impose other appropriate sanctions, including those listed in Rule 37(b)(2)(A)(i)-(iv).

The facts of this case do not warrant a sanction precluding Delta's use of the recently produced documents. Even though Delta was dilatory in locating these documents, Delta immediately informed the Court and Plaintiffs about its discovery of the additional documents and asked the Court to suspend the case schedule, which the Court did. In addition, the prejudice to Plaintiffs is mitigated by the revised case schedule, which includes additional discovery time and adjusted summary judgment deadlines, established in this Order. *Cf. SCQuARE*, 2008 WL 228032, at *3 (finding preclusion appropriate in part because undisclosed documents would have changed court's decision with respect to motions for summary judgment). Furthermore, there is no evidence that Delta willfully withheld production of these documents, and there is no smoking gun of which the Court is aware at this point contained within the new documents. Consequently, a sanction preventing Delta from using these documents is not appropriate. *See BFI Waste Sys. of N. Am. v. DeKalb Cnty., Ga.*, 303 F.

Supp. 2d 1335, 1344–45 (N.D. Ga. 2004) (permitting plaintiff to use late-produced expert report where plaintiff produced report as soon as plaintiff received it and defendants had not shown they were prejudiced).

The Court finds that a more appropriate sanction would be to require Delta to pay Plaintiffs' reasonable expenses and attorneys' fees caused by Delta's failure, which includes Plaintiffs' request for fees and expenses related to this motion, the extended discovery period, and its motion for spoliation sanctions. Delta made myriad misrepresentations to the Court and Plaintiffs that its document production was complete, and it waited almost two weeks to inform the Court of the problems with its document production. Conveniently for Delta, the Court issued its order denying Plaintiffs' motion for spoliation sanctions on February 22, 2011, which was after Delta received the DOJ's letter but before Delta's March 1 letter to the Court. Moreover, Delta emailed the Court a letter on February 22, after it had received the DOJ's letter, in further support of its opposition to Plaintiffs' motion for spoliation sanctions, and this letter is silent as to the document-production problem. Indeed, the letter states that Delta "agrees with Plaintiffs that further discovery on [spoliation] issues is not

necessary." Thus, the Court finds the above sanction amply warranted by the facts.

As for determining the amount of fees and expenses[16] owed to Plaintiffs by Delta, the Court strongly expects Plaintiffs and Delta to confer and agree on a reasonable amount for Plaintiffs' expenses and fees incurred in connection with (1) the motion for spoliation sanctions, and (2) this motion. If Plaintiffs and Delta cannot agree on a reasonable amount for these expenses and fees, then on or before February 17 Plaintiffs shall file a brief in support of their claim for expenses and fees, accompanied by the affidavit of Plaintiffs' lead counsel attesting to the requested amount and reasonableness thereof; on or before March 3, Delta shall file a brief in opposition to Plaintiffs' request for expenses and fees; and on or before March 17 Plaintiffs may file a reply brief in support of their claim for expenses and fees. The parties are cautioned that any such submissions should be succinct, and not voluminous.

At the conclusion of the extended discovery period, the Court strongly expects Plaintiffs and Delta to confer and agree on a reasonable amount for

---

[16] To be clear, the Court is awarding expenses and fees for (1) this motion, (2) the portion of the discovery period that must now be extended, and (3) Plaintiffs' motion for spoliation sanctions.

Plaintiffs' expenses and fees incurred in connection with the extended discovery period.  If Plaintiffs and Delta cannot agree on a reasonable amount for these expenses and fees, then within fourteen days of the close of the extended discovery period Plaintiffs shall file a brief in support of their claim for expenses and fees, accompanied by the affidavit of Plaintiffs' lead counsel attesting to the requested amount and reasonableness thereof; fourteen days after Plaintiffs' filing, Delta shall file a brief in opposition to Plaintiffs' request for expenses and fees; and fourteen days after Delta's filing Plaintiffs may file a reply brief in support of their claim for expenses and fees.  Again, the parties are cautioned that any such submissions should be succinct, and not voluminous.

## VIII.  Plaintiffs' Issues with AirTran

As if the foregoing were not enough to wade through and resolve, Plaintiffs also have issues with AirTran's document production.  In its first letter to the Court, Plaintiffs do not mention AirTran.  Thus, by letter dated August 2, AirTran informed the Court that its review of Plaintiffs' letter indicated to it that the reopened discovery would only apply to Delta, and that to the extent Plaintiffs also sought its communications with the DOJ, it

would not produce future correspondence.  It also expressed its opinion that the newly produced documents failed to show that Delta and AirTran colluded on the first-bag fee.

However, by letter dated August 5, Plaintiffs informed the Court that AirTran had belatedly produced several of its communications with the DOJ related to the first-bag-fee investigation (125 pages of documents) and thus the following was necessary: (1) reopening discovery as to AirTran limited to the 125 pages; (2) ordering AirTran to search the files of two custodians, Fred Cannon and June Ritter, whose relevance to Plaintiffs' claims was revealed in the new documents; and (3) ordering AirTran to produce ongoing communications with the DOJ related to the first-bag-fee investigation.  Plaintiffs have not provided a separate case schedule for AirTran, and their proposed case schedule only mentions Delta.  Thus, the Court presumes Plaintiffs want the same schedule it proposed for Delta to apply to AirTran.

On August 23, AirTran responded to Plaintiffs' August 5 letter, and on August 30, Plaintiffs addressed AirTran's response.  Their respective arguments are discussed below.

## A.    AirTran's DOJ Documents

AirTran objects to discovery being reopened for Plaintiffs to pursue discovery related to the 125 pages of documents it produced in May 2011.  It contends that Plaintiffs had agreed with it that communications between its attorneys and the DOJ were not included in Plaintiffs' document requests, and that it was not until May 2011, after discovery closed, that Plaintiffs "pressed AirTran for all its prior communications with the DOJ."[17]  AirTran asserts that rather than object to Plaintiffs' request, it chose to produce the documents and avoid involving the Court in another discovery dispute. Thus, it contends that these documents were not "belatedly" produced.

AirTran's argument is meritless.  In their first document request, Plaintiffs asked for:

> Since January 1, 2009, documents relating to any investigation by a government agency (including the Department of Justice) that relates to any allegation in Plaintiffs' Consolidated Amended Complaint, *including documents provided to or received from the agency*, documents reflecting testimony, and communications with third parties (including, but not limited to, Delta).

---

[17] As for Plaintiffs' "pressing," on May 12, 2011 Plaintiffs asked, "Has AirTran produced to Plaintiffs all of its correspondence with the DOJ?"

(Emphasis added.)  On its face, this request includes communications between AirTran's counsel and the DOJ.  Moreover, as discussed below, any ambiguity was resolved by the parties' subsequent communications.

On March 11, 2010, AirTran's response/objection to the above request for production was:

> AirTran will produce the documents and privilege log it produced to the [DOJ] in connection with its checked baggage fee investigation and documents reflecting testimony of its employees in that investigation.  AirTran objects to the remainder of this request as overbroad and unduly burdensome to the extent it requires AirTran to speculate on what documents not produced to the [DOJ] in connection with its checked baggage fee investigation might be deemed to relate to that investigation.

Noticeably absent from this response/objection is any objection to the production of AirTran's correspondence with the DOJ.  Nonetheless, in its August 23 letter to the Court, AirTran incorrectly claims that it "produced the documents and transcripts it had produced to the DOJ and objected to producing other materials submitted to the DOJ."  AirTran also claims in its August 23 letter that "Plaintiffs did not challenge that objection and instead reached an agreement on the scope of the request that did not include counsel's correspondence to the DOJ."  Review of the parties' emails, though, shows this statement to be false.

On March 24, 2010, Plaintiffs' counsel emailed to AirTran's counsel a summary of their discussion about AirTran's responses to Plaintiffs' first document requests.  Plaintiffs' counsel wrote, "AirTran will produce responsive non-privileged communications to other entities and will [reflect] any privileged communications on a privilege log.  AirTran will also produce documents received from the DOJ Antitrust Division."  In its March 26 email response, AirTran added only the following to Plaintiffs' summary: "AirTran understands 'documents received from the DOJ Antitrust Division' to mean the CID and any other documents it received from the Division in connection with the bag fee investigation."  Nothing in these communications excludes from production correspondence between AirTran and the DOJ.

Yet in its August 23 letter to the Court, AirTran contends that this "modified scope . . . did not call for AirTran to produce its counsel's submissions to the DOJ, just the documents AirTran had received from the DOJ" because "the phrase 'other entities' refers to entities other than the DOJ."  The actual words of Plaintiffs' summary and AirTran's initial response/objection belie AirTran's new-found interpretation of the scope. As for the meaning of "other entities," AirTran's initial response/objection

only mentions the DOJ, so it hardly makes sense that a clarification of the scope of the request, only two weeks after AirTran's response, would exclude the DOJ.  As for Plaintiffs' summary, it explicitly mentions communications and does not exclude counsel's communications, and AirTran has not raised a privilege argument of which the Court is aware with respect to any of the communications.  Thus, AirTran's August 23 interpretation is flawed.

Regardless of how Plaintiffs' summary is interpreted, any remaining doubt as to the scope of Plaintiffs' first document request was eliminated a few months later.  On November 26, 2010, prior to the close of discovery, Plaintiffs' counsel emailed the following to AirTran: "Can you please confirm that AirTran has produced to Plaintiffs all of its communications with the DOJ regarding the DOJ's bag fee investigation, including but not limited to any communications between AirTran's attorneys[18] and the DOJ regarding document preservation[?]"  This email explicitly asks AirTran for all DOJ documents, including attorney communications.  Nothing in Plaintiffs' question suggests, as AirTran does in its August 23 letter, that the

---

[18] Nothing in Plaintiffs' document request or in this statement limits Plaintiffs' document request to correspondence with AirTran's in-house counsel.  Thus, AirTran's contention in its August 23 letter that it "had no obligation to produce to Plaintiffs its outside counsel's correspondence to the DOJ" is without merit.

parties "reached an agreement on the scope of the request that did not include [AirTran's] counsel's correspondence to the DOJ."

Consequently, AirTran's November 30, 2010 response to Plaintiffs' question—"AirTran has no communications with the DOJ in its files regarding the DOJ's bag fee investigation that have not already been produced to the Plaintiffs"—is incorrect.   Furthermore, AirTran's August 23 explanation that "[b]ecause the DOJ has never raised document preservation issues with AirTran, and because AirTran had produced all DOJ correspondence within the modified scope of Plaintiffs' Requests No. 1 and 2, AirTran told Plaintiffs that AirTran had already produced all responsive DOJ communications" is meritless.   AirTran's November 30 response unequivocally stated that it had *no communications* with the DOJ that had not already been produced; AirTran did not hedge, as it does in its August 23 letter, which states that AirTran produced all *responsive* DOJ communications.   Quite simply, AirTran should have produced these documents earlier, but did not.   Consequently, Plaintiffs have shown good cause for reopening discovery as to AirTran.

B.    Files of Cannon and Ritter

AirTran also objects to searching the files of Cannon and Ritter because it contends that these individuals' involvement was apparent in other discovery responses, and thus Plaintiffs should have requested their files sooner.  AirTran primarily relies on emails already produced to Plaintiffs showing that Cannon and Ritter were invited and accepted the invitation to the bag-fee-decision meeting.  AirTran also contends that even if Cannon's and Ritter's files are relevant, the estimated cost of searching those files (in excess of $50,000) outweighs the likely evidentiary value of any documents ultimately produced.

Plaintiffs disagree and contend that the recently produced documents "more strongly suggest the relevance of these two custodians than previously produced documents, and AirTran should be ordered to search their files."  They assert that not everyone invited to the meeting attended, and it was not until they received the new documents that they confirmed that Cannon and Ritter had attended.  Plaintiffs also assert that their request is not burdensome because they initially "agreed to the original limited custodian list based on AirTran's agreement to add additional relevant custodians upon Plaintiffs' request."  The Court is persuaded by

67

Plaintiffs' arguments and will order AirTran to search Cannon's and Ritter's files. *See Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1576 (11th Cir. 1985) ("district court has broad discretion in all discovery matters" (internal quotations omitted)); *Nat'l Indep. Theater Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir. 1984) ("A trial judge has broad discretion to control the course of discovery, especially in a complex antitrust case such as this one . . . .").

## C.   Additional Discovery

The Court will grant Plaintiffs' request to reopen discovery, limited to the documents produced by AirTran after the close of original discovery. This includes but is not limited to the 125 pages produced in May 2011.  The Court will also order AirTran to search the files of Cannon and Ritter. Neither Plaintiffs nor AirTran has addressed how long the new discovery period as to AirTran should last, but the Court finds that it should be less than four months.  Plaintiffs seek four months as to Delta, which produced 60,000 documents, whereas AirTran belatedly produced significantly fewer documents and is being ordered to search the files of only two additional custodians.  Therefore, a shorter discovery period is appropriate.

However, Plaintiffs' additional discovery requests should be narrowly targeted to avoid duplicating discovery that was or could have been conducted during the original discovery period.  Discovery will reopen immediately and end three months from the date of this Order.  Additional details are set forth below.

## IX.   Defendants' Correspondence with the DOJ

Plaintiffs also seek from Defendants all future correspondence with the DOJ related to the DOJ's first-bag-fee investigation.  Plaintiffs contend that Defendants should produce these documents because their request is narrowly tailored and seeks relevant evidence.  Specifically, Plaintiffs state that their request is limited to the DOJ's first-bag-fee investigation, and prior productions have already shown that the request is reasonably calculated to lead to the discovery of admissible evidence.

Both Delta and AirTran contend that the DOJ's bag-fee investigation is confidential pursuant to 15 U.S.C. § 1313(c).  AirTran argues that this confidentiality statute means that Plaintiffs must make a particularized showing of relevance and need before the statutory confidentiality is breached.  Relying on *In re Urethane Antitrust Litigation*, No. 04-md-

1616-JWL, 2010 WL 5287675, at *7 (D. Kan. Dec. 17, 2010), in which the
court denied the defendants' motion to compel because they did not show
that the federal government's investigation into a possible conspiracy by
plaintiffs was relevant, Delta argues that Plaintiffs seek its communications
with the DOJ solely to gain some tactical advantage, which is both unfair
and abusive.

Defendants also argue that they have already provided to Plaintiffs
the documents and testimony that they provided to the DOJ for its first-
bag-fee investigations, and thus Plaintiffs have complete access to the
factual evidence surrounding Delta's and AirTran's decisions to adopt a
first-bag fee.  So, they conclude that it would be unfair to permit Plaintiffs
to go beyond factual discovery and pry into communications between
Defendants' counsel and the DOJ.

In addition, Defendants assert that Plaintiffs are in regular contact
with the DOJ, and AirTran argues that Plaintiffs have "never treated
lawyer-to-lawyer communications with the DOJ to be responsive to
requests directed to the parties."  Thus, AirTran contends that it is
inconsistent to permit Plaintiffs to see Defendants' communications with

the DOJ when Plaintiffs have not produced their own communications with the DOJ.[19]

Plaintiffs respond that Defendants have not articulated any defense or privilege that justifies their withholding future correspondence with the DOJ.  Plaintiffs also argue, relying on *In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 556, 559–60 (N.D. Ga. 1992), that there is in fact no defense or privilege that supports Defendants' position.

In general, "'where the proof is largely in the hands of alleged conspirators,' antitrust plaintiffs must be given 'ample opportunity' for discovery."  *In re NASDAQ Market-Makers Antitrust Litig.*, 929 F. Supp. 723, 725 (S.D.N.Y. 1996) (quoting *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976)).  In *Domestic Air*, 141 F.R.D. at 559-60, the antitrust plaintiffs' document request sought

> All documents received from or produced by you to any governmental entity relating to civil investigative demands . . . . Included within this request are any civil investigative demands, . . . and document requests themselves, any correspondence or other documents concerning the scope of the production under such demands . . . and any indices of the

---

[19] The current letters before the Court do not indicate whether Delta or AirTran has specifically asked for Plaintiffs' communications with the DOJ, and only AirTran discusses the fact that Plaintiffs allegedly have not produced their own communications with the DOJ.  Thus, neither side has addressed whether the rules permit or require Plaintiffs to produce these communications.

documents requested, gathered, produced to the government in response to any such investigatory request.

The defendants in *Domestic Air* refused to produce copies of any government CIDs, CID interrogatories, and their answers to the interrogatories on the grounds that such information was confidential.  The court rejected their argument, finding that in the Antitrust Civil Process Act ("ACPA"), 15 U.S.C. § 1311 et seq., section 1313(c) was the only restriction on the production of documents obtained in response to a CID and that § 1313(c) restricted disclosure "only by the officer to whom the report is made," i.e., the DOJ.  Thus, the court determined that there was no provision of the ACPA that restricted production of the copies retained by the reporter, i.e., the defendants.  Consequently, the court granted the antitrust plaintiffs' motion to compel the defendants to produce the requested documents.

Similarly, in *NASDAQ*, 929 F. Supp. at 725–26, the court determined that the ACPA did not prevent the antitrust defendants (the producing parties) from producing CID materials or the CIDs themselves to the plaintiffs.  It also noted that the few cases that have addressed this issue have come down squarely in favor of compelling the production of CID materials in the hands of defendants.

Thus, it is clear from *NASDAQ* and *Domestic Air* that the ACPA and § 1313(c) do not protect Defendants' CID correspondence with the DOJ about the first-bag-fee investigation.

Disclosure of CID materials, though, has its limits.  The *NASDAQ* court held that the ACPA did not mandate the disclosure of all CID materials.  Rather, their discovery was permissible only where they would otherwise be discoverable under the Federal Rules of Civil Procedure.  929 F. Supp. at 726.  As in this case, the defendants in *NASDAQ* challenged the relevancy of the CID materials under Rule 26, and the court determined that the CID materials were relevant to "liability and damages and potential impeachment material and [could] lead to the discovery of other admissible evidence."  *Id.* at 725.  Consequently, the *NASDAQ* court held that the requested CID materials were discoverable because they were relevant and not privileged.

Here, Plaintiffs assert that the requested CID materials are relevant pursuant to Rule 26(b), as they have already led, and will likely again lead, to the discovery of admissible evidence.  AirTran summarily asserts in one sentence that Plaintiffs must make a "particularized showing of relevance and need"; however, other courts that have addressed this issue have

rejected arguments that a showing of "particularized need" is necessary to obtain CID materials. *See NASDAQ*, 929 F. Supp. at 726 (citing *In re Domestic Air Transp. Antitrust Litig.* (*Domestic Air II*), 142 F.R.D. 354, 356 (N.D. Ga. 1992), and *In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 116 F.R.D. 390, 393 (C.D. Cal. 1986)).

Delta contends that Plaintiffs want its communications with the DOJ solely to gain a tactical advantage, which is unfair and abusive. Presumably, its objection invokes the protection afforded by Rule 26(b)(2), which delineates the limits on the frequency and extent of discovery requests. In support of its contention, Delta relies on the antitrust case, *Urethane*, 2010 WL 5287675, at *7; however, *Urethane* is inapposite. There, the defendants (not plaintiffs) sought an order from the court compelling the plaintiffs to respond to their broad request for any documents that the plaintiffs had provided to any government agency related to any investigation into violations of antitrust law by the plaintiffs. In denying the defendants' motion, the court did not find their broad document request to be unfair and abusive, as Delta asserts. Rather, the court determined that the defendants failed to show how their request was relevant to a claim or defense. Here, Plaintiffs' request, which is limited to

the DOJ and its first-bag-fee investigations, is significantly narrower than the request in *Urethane*.  Moreover, Plaintiffs have shown that their request is relevant, and Delta makes no argument that the request is irrelevant.  Thus, *Urethane* is not on point.

Defendants have not shown that any other Federal Rule of Civil Procedure prevents disclosure of their CID correspondence with the DOJ about the first-bag-fee investigations.  Accordingly, the Court will grant Plaintiffs' request for all CID materials related to the first-bag fee investigation produced by Defendants to the DOJ, including correspondence, subject to the Federal Rules of Civil Procedure.


X.   Supplemental Class Certification Brief

Finally, in their proposed case schedule, Plaintiffs provide for themselves the opportunity to file a supplemental class certification brief.  Their letters to the Court do not address why this supplemental brief is necessary, nor do they address why their proposed schedule does not permit Defendants to file responses to the supplemental brief.

Delta and AirTran object to Plaintiffs' request for a supplemental class certification brief.  AirTran contends that if Plaintiffs determine at the

75

close of the new discovery period that supplementation is necessary, they should confer with Defendants to determine an appropriate course of action.

The Court does not take issue with Plaintiffs' request to file a supplemental brief. However, if Plaintiffs choose to file one, Defendants will be permitted to file a response to the brief as provided below in the new case schedule.

## XI.   Conclusion

The Court GRANTS Plaintiffs' requests (1) to reopen discovery on a limited basis and (2) that Defendants be required to continue to produce CID materials related to the DOJ's first-bag-fee investigation. The Court also GRANTS, as sanctions pursuant to Rules 26(g) & 37(c)(1), Plaintiffs' request for reasonable expenses and fees incurred in connection with this motion, their motion for spoliation sanctions, and the extended discovery period. The Court also ORDERS AirTran to search the files of custodians Cannon and Ritter if it has not already done so, and to promptly produce to Plaintiffs all documents encompassed within Plaintiffs' document requests.

The case schedule is changed as follows:

(1)    Discovery reopens as of the date of this Order;

(2)    Ten days from the date of this Order, Plaintiffs will provide to the Court their proposed discovery as to both Defendants for this period, unless the parties can agree among themselves on the scope of Plaintiffs' additional discovery;

(3)    Fourteen days from the date of this Order and as necessary thereafter, Delta and AirTran must supplement their discovery responses pursuant to Fed. R. Civ. P. 26(e);

(4)    On or before February 17, if Plaintiffs and Delta cannot agree on all or a portion of Plaintiffs' reasonable expenses and fees for this motion and their motion for spoliation sanctions, Plaintiffs shall file their brief and supporting documents as to the expenses and fees they and Delta cannot agree on;

(5)    On or before March 3, if necessary, Delta shall file its supporting documents and brief in opposition to Plaintiffs' expenses and fees for this motion and their motion for spoliation sanctions;

(6)    On or before March 17, if necessary, Plaintiffs shall file their reply brief in support of their expenses and fees for this motion and their motion for spoliation sanctions;

(7)    Three months from the date of this Order, discovery as to AirTran will close;

(8)    Four months from the date of this Order, discovery as to Delta will close;

(9)    Fourteen days after the close of discovery as to Delta, if Plaintiffs and Delta cannot agree on all or a portion of Plaintiffs' reasonable expenses and fees for the extended discovery period, Plaintiffs shall file their brief and supporting documents as to the expenses and fees they and Delta cannot agree on for the extended discovery period;

(10)    Fourteen days after Plaintiffs' filing, if necessary, Delta shall file its supporting documents and brief in opposition to Plaintiffs' requested expenses and fees for the extended discovery period;

(11)    Fourteen days after Delta's filing, if necessary, Plaintiffs shall file their reply brief and supporting documents in support of

their requested expenses and fees for the extended discovery
period;

(12)   Three weeks after close of discovery as to Delta, summary
judgment briefs and Plaintiffs' supplemental brief regarding
class certification will be due;

(13)   Four weeks after summary judgment briefs, opposition briefs
and Defendants' briefs in response to Plaintiffs' supplemental
class certification brief will be due; and

(14)   Three weeks after opposition briefs, reply briefs will be due.

IT IS SO ORDERED this 3rd day of February, 2012.

Timothy C. Batten, Sr.
United States District Judge