LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

1100 PEACHTREE STREET, NE

SUITE 800

ATLANTA, GEORGIA 30309-4516

---

(404) 681-3450

FACSIMILE: (404) 681-1046

David H. Flint                                               E-Mail: dflint@swfllp.com

Direct Dial: (404) 954-9843

September 12, 2012

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

RE:   *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

Pursuant to the Court's Instructions to Parties and Counsel (Dkt. #49), and in connection with information Plaintiffs learned in Delta's most recent document production and during an August 30 Rule 30(b)(6) deposition of Delta, I request that the Court address Delta's failure to produce responsive documents that Delta has previously been ordered to produce.   We stand ready to have a conference, hearing, or further briefing as the Court desires and directs.

While Plaintiffs are anxious to resolve this case on the merits and regret having to bring another discovery matter before the Court, Delta's misconduct continues to prevent Plaintiffs from obtaining a complete factual record, and needs to be addressed again.  In fact, Plaintiffs have concerns that Delta is continuing to withhold documents about its collection and preservation efforts in hopes that the Court and Plaintiffs will be so exhausted by these discovery issues that the Court and Plaintiffs will give up trying to compel the production of relevant information.   Plaintiffs have conferred with Delta in a good faith attempt to achieve a full document production, but Delta refuses to produce a variety of documents, listed in Appendix 1, that Delta should have produced long ago under the Court's prior orders. *See* Dkts. # 96, #317, and #339.[ENDNOTE 1]

This discovery issue needs to be addressed for at least three reasons.  First, Plaintiffs have learned that Delta has not conducted a diligent search for responsive documents.  For example,

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 2
September 12, 2012

Delta has not determined which backup tapes in its possession contain responsive documents, as described below. Delta has also failed to conduct searches for documents that Delta had represented to Plaintiffs that it was conducting.[2] Delta's lack of diligence is further reflected by the fact that, just a few weeks ago, Delta located responsive documents in Delta CSIRT's offices that had been collected years ago.[3]

Second, Delta has made numerous misrepresentations to the Court and to Plaintiffs regarding Delta's document preservation, collection, and production efforts. Misrepresentations were made in sworn testimony, affidavits, letters to the Court, and in connection with the Court-ordered verified responses. A sampling of these false representations is attached as Appendix 2. Because Delta's representations have proven unreliable, Plaintiffs must obtain documents to determine the truth.

Third, Plaintiffs have learned that Delta concealed from Plaintiffs and the Court (during the spoliation briefing and hearing) additional instances in which it spoliated relevant documents. Delta failed to preserve monthly backup tapes of shared servers, backups of network attached storage, certain e-mail Exchange server backup tapes, and backups of .pst files with executives' personal folder e-mails.[4] Delta was aware of this destruction, as information about these backups was provided to Delta in 2008,[5] May 12, 2009,[6] and June 8, 2009.[7] Delta has also admitted that these backups contained potentially responsive documents.[8] Delta decided not to preserve these backups, even after Plaintiffs' filed this lawsuit and after the DOJ raised concerns about Delta's preservation efforts, because "it became clear that Delta had failed to take timely steps to preserve relevant documents."[9]

While Plaintiffs can provide the Court even greater detail at a hearing or in further briefing on these issues, three examples embody the serious concerns Plaintiffs have with Delta's conduct:

- Delta previously informed the Court and Plaintiffs that, "*based on the labels*," Delta had chosen to electronically scan only 94 of the 340 tapes that Delta had located, and that the remaining 246 tapes were "clearly not relevant to these proceedings."[10] But Delta admitted at the August 30 Rule 30(b)(6) deposition that "the labels didn't really tell us much about what was in the tape" because the labels were unreliable, and that an electronic scan revealed that "[t]here was quite a few tapes that had older dates than" the labels indicated.[11] A diligent search would require that the tapes be scanned electronically rather than relying on admittedly unreliable labels. After scanning 94 of the tapes, Delta produced approximately 20,000 pages of responsive documents, including a number of documents that directly contradicted Delta witnesses' prior testimony. Scanning the remaining 246 tapes would almost certainly lead to the production of additional relevant documents.

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 3
September 12, 2012

- IBM maintained three months' worth of monthly backup tapes of Delta's File & Print servers, which were shared servers containing some custodians' e-mail .pst files (*i.e.*, personal folder e-mails), along with other electronic files. At the recent August 30 deposition, Delta admitted that potentially responsive documents in the Bag Fee matters resided on File & Print server backup tapes.[12] Although Delta was sent information about Delta's File & Print backup tapes by IBM on June 8, 2009,[13] Delta never requested – and never received – backup tapes for the File & Print servers from IBM.[14]

- Also on June 8, 2009, IBM informed Delta that (a) IBM had daily backups of e-mails from Delta executives' personal folders dating back one year and (b) each backup would contain changes from the prior day's backup.[15] In July 2009, Delta decided that it would save only a single day's backup: a backup from November 5, 2008.[16] All other backups were destroyed, and Delta produced no documents to Plaintiffs from this November 5 backup.[17] Delta never informed the DOJ, Plaintiffs, or the Court of these backups or the preservation of the November 5 backup, even in a sworn response to an interrogatory regarding Delta's preservation of documents and in representations to the Court regarding the extent of its document preservation.

Plaintiffs believe the recently discovered documents and testimony demonstrate that Delta's spoliation and concealment of documents was committed in bad faith and in violation of this Court's prior discovery orders.

Defendants' summary judgment motions should be denied on the merits, and Plaintiffs are currently preparing a response to Defendants' motions. Depending on how quickly Delta completes any production of responsive documents, and depending on the volume of documents, Plaintiffs are hopeful that any additional responsive documents can be addressed in a surreply brief without causing a significant delay to the summary judgment briefing schedule.

Thank you for your consideration of this request.

Sincerely,

David H. Flint

cc:   All Counsel of Record

## ENDNOTES TO LETTER

[1] *See, e.g.*, E-mail from D. Low to R. Allen (Aug. 28, 2012), Ex. 1 (making futile request that Delta produce, prior to the August 30, 2012 Rule 30(b)(6) deposition, the discovery requested in Plaintiffs' e-mails dated July 30, Aug. 10, 15, 16, 17, 18, 19, 21, 23, 25, 26, and 27).

[2] *See, e.g.*, E-mail from S. McClain to M. Mitchell (Apr. 18, 2009), DLBFDOC 8486-89, Ex. 2 (reflecting that Delta's in-house counsel narrowed Delta's searches to exclude certain categories of responsive documents, and did not conduct electronic searches of certain relevant custodians); Delta 30(b)(6) S. McClain Depo. Tr. 193:18-194:25 (Aug. 30, 2012), Ex. 3 (admitting that Delta did not conduct an electronic search of certain custodians' e-mail files and that, when those custodians were asked to identify which of their documents and e-mails were responsive, there was "very little material" identified).

[3] E-mail from R. Allen to D. Low (Aug. 27, 2012), Ex. 4 ("last week, we located .pst files stored on a server at CSIRT for 6 custodians in this case").

[4] Delta 30(b)(6) S. McClain Depo. Tr. 27:12-16 (Aug. 30, 2012), Ex. 3 ("we did not collect the 30-day backups of [shared departmental data snapshots or home directory data snapshots]"), 66:7-23 (admitting that e-mail Exchange server backup tapes were not preserved for any custodians outside of Atlanta), 85:19-86:8 (admitting that Delta did not preserve storage supporting network shares or file and print servers); E-mail from S. McClain to J. Sokol (July 9, 2009), DLBFDOC 275, Ex. 5 (issuing instructions to preserve only one of 365 available executive server daily .pst e-mail backup files and to "just capture and preserve the *.pst files"); E-mail from K. Rhodes (June 17, 2009), DLBFDOC 15631, Ex. 6 (listing backup tapes collected in June 2009, including two January 2009 tapes from which Delta produced documents in 2011, and listing servers for which Delta did not preserve any backup tapes); E-mail from M. Mitchell to G. Mauldin (Apr. 20, 2011), DLBFDOC 11097, Ex. 7 (relaying information from IBM that "lit[igation] hold server backup tapes are never overwritten").

[5] E-mail from G. Haywood to E. Lee (June 11, 2008), DLBFDOC 16486, Ex. 8 (email exchange discussing backup to exchange servers and to file & print servers); E-mail from S. McClain to M. Fisher and J. Denvir (May 19, 2009), DLBFDOC 10180, Ex. 9 (attaching Delta's 2008 response to DOJ's "Questions about Electronic Systems and Back-up/Archiving Policies").

[6] E-mail from S. McClain to M. Fisher and J. Denvir (May 19, 2009), DLBFDOC 10180, Ex. 9 (attaching May 12, 2009 DOJ fax to Delta in connection with the Bag Fee CID regarding Delta's electronic systems and back-up policies).

[7] E-mail from M. Fisher to S. McClain et al. (June 8, 2009), DLBFDOC 10161, Ex. 10 (attaching IBM's "explanations of the backup systems for [Delta's] Exchange, NAS, and File & Print environments").

[8] Delta 30(b)(6) S. McClain Depo. Tr. 49:3-21 (Aug. 30, 2012), Ex. 3.

[9] Letter from DOJ to Delta at 1 (Mar. 29, 2011), DLBF 105591, Ex. 11 ("In May and June 2009, when it became clear that Delta had failed to take timely steps to preserve relevant documents,

[DOJ] inquired into Delta's backup policy and practices."); *see also* Letter from DOJ to Delta at 1 (Feb. 17, 2011), Ex. 12 ("As you are aware, we first raised questions about the adequacy of Delta's CID production in late March of 2009, shortly after Delta's initial response."); Delta Rule 30(b)(6) S. McClain Tr. 220:3-7 (Aug. 30, 2012), Ex. 3 ("[DOJ] had many questions about the nature of our search.  And we now know that Kathleen O'Neil and others perhaps at the DOJ interpreted those questions to be an expression of concern . . . ."), *id.* 221:3-5 ("they viewed the collection that we had done in February as not sufficient").

[10] Letter from Delta to J. Batten at 2 (Apr. 15, 2011), Ex. 44 ("Many of the tapes are clearly not relevant to these proceedings.  For example, some tapes are *labeled* before or after the relevant time period (e.g., 2011), while others relate to data servers located at various airports around the country and therefore cannot reasonably be expected to contain emails from bag fee custodians. However, Delta identified 94 tapes (*based on the labels*) that appeared to contain backups of servers that may include emails from some of the bag fee custodians.") (emphasis added).

[11] Delta Rule 30(b)(6) S. McClain Depo. Tr. 105:10-13 (Aug. 30, 2012), Ex. 3 ("Some of those dates turned out to be wrong.  You know, the labels didn't really tell us much about what was in the tape."); Delta Rule 30(b)(6) B. Wilkinson Depo. Tr. 22:16-23:3 (Aug. 30, 2012), Ex. 13 ("There was quite a few tapes that had older dates than" the labels indicated); E. mail from E. Lee to G. Mauldin at 2 (Apr. 1, 2011), DLBFDOC 8114, Ex. 14 (explaining that the contents of the tapes can be determined by electronically cataloging the tapes at a cost of just $65 per tape). Plaintiffs have also learned that many labels on the tapes are ambiguous, stating, e.g., "Jan/Apr/Jul/Oct" or "Mar/Jun/Sep/Dec."  *See* Tape Labels, DLBFDOC 16453-58, at 16457, Ex. 15.

[12] Delta 30(b)(6) S. McClain Depo. Tr. 49:3-12 (Aug. 30, 2012), Ex. 3.

[13] E-mail from M. Fisher to S. McClain et al. (June 8, 2009), DLBFDOC 10161, Ex. 10.

[14] Delta 30(b)(6) S. McClain Depo. Tr. 40:13-20, 41:3-42:19 (Aug. 30, 2012), Ex. 3.  As discussed below, Delta preserved one of the backups of eight custodians' .pst files that may have been located on one of the NAS servers.

[15] E-mail from M. Fisher to S. McClain et al. (June 8, 2009), DLBFDOC 10161, Ex. 10.  Delta recently testified that, in contrast to the information IBM provided Delta in June 2009, each day's backup contained a snapshot of the executives' personal folder as it existed on the day of the backup.  Delta 30(b)(6) S. McClain Depo. Tr. 29:3-17 (Aug. 30, 2012), Ex. 3.

[16] E-mail from S. McClain to J. Sokol (July 9, 2009), DLBFDOC 273-74, Ex. 16.

[17] Scott McClain testified that responsive documents from the November 5 backup -- if any -- would have been produced at the same time as other documents from the May 2009 sweep. Delta 30(b)(6) S. McClain Depo. Tr. 36:9-23 (Aug. 30, 2012), Ex. 3.  But the documents from the May 2009 sweep were produced on June 11, 2009, before the executive psts were collected in July.  Delta Responses to Pls.' Fifth Interrogatories, No. 1, at 3, Ex. 17.  Delta produced documents to DOJ on July 31 and September 25, 2009 (*id.*), but those productions did not

include documents from any of the eight relevant executives whose files were included in the November 5 backup.   *Id.*

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Randall L. Allen                    Direct Dial: 404-881-7196              E-mail: randall.allen@alston.com

September 24, 2012

*VIA E-MAIL to:*
*julee_smilley@gand.uscourts.gov;*
*alice_snedeker@gand.uscourts.gov*

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley & Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

Re:    *In re Delta/AirTran Baggage Fee Antitrust Litigation*,
No. 1:09-md-2089

Dear Judge Batten:

When Plaintiffs sought to reopen discovery, they told the Court that "Plaintiffs have not had an opportunity to question witnesses about these newly produced documents…" and "[d]iscovery should … be reopened on a limited basis to allow Plaintiffs to explore the issues raised by these documents."[1]  Among those documents were several emails demonstrating that Delta's three most senior executives – Delta CEO Richard Anderson, Delta President Ed Bastian, and Delta COO Steve Gorman – decided that Delta should adopt a first bag fee as part of the merger with Northwest *before* the AirTran earnings call statement.[2]  However, despite having described these documents as "ambiguous" and Delta's interpretation of them "strained,"[3] Plaintiffs chose not to show *any* of those documents to any of the executives they re-deposed.  Instead of focusing on the merits, Plaintiffs have continued to propound a barrage of "discovery on discovery" requests and questions to which Delta has spent countless hours over the better part of the last year and a half responding.[4]

Plaintiffs attempt to justify even more discovery on grounds that Delta has failed to "produce responsive documents that Delta has previously been ordered to produce."  Plaintiffs' are wrong.  Plaintiffs make this claim, like many others in their filings, without explaining what document request Delta failed to respond to or what order it failed to comply with.  Notably, some of the demands that are the subject of Plaintiffs' motion to compel are items that they have never previously raised, even informally, with Delta.

The bulk of what Plaintiff's now seek relates to additional searches of backup tapes or accusations regarding what should have been done in 2009 with respect to other backup materials.  Of course, backups are only germane if there is some reason to believe

Judge Timothy C. Batten, Sr.
September 24, 2012
Page 2

documents otherwise produced are insufficient.  In their original spoliation motion, Plaintiffs focused on the auto-delete policy for Delta's email exchange servers and argued that Delta had failed to preserve sufficient backup tapes that would contain emails dating back to July-November 2008, the time period Plaintiffs contended was "most important" and "most critical" to Plaintiffs' allegations.[5]  However, Delta discovered in March 2011 that it had actually preserved backup tapes (including certain daily back-up tapes) covering the precise time Plaintiffs expressed concern about.  In particular, Delta located and voluntarily searched backup tapes containing email records from 2008 of virtually every significant custodian in this case.  The backup tapes covered a variety of days, but of particular note Delta restored email backups for Richard Anderson, Ed Bastian, Steve Gorman and Glen Hauenstein (among many others) that were created during the overnight hours (i) after Mr. Fornaro's October 23, 2008 earnings call statement, (ii) before and after Delta's October 27, 2008 CLT meeting, (iii) before and after Delta's November 3, 2008 CLT meeting, and (iv) before and after Delta's November 5, 2008 press release announcing the first bag fee.  Delta also restored tapes from July, August, late November, early and mid-December, and, for some custodians, even early January 2009.  The data on these tapes blanket Plaintiffs' own articulated "key period." Moreover, because many of the tapes were for a litigation hold server, and therefore not subject to the auto-delete policy, they contained emails dating back more than 120 days (e.g., from the tapes, Delta produced emails from February 2008).  As the records in those tapes and the depositions that followed make clear, Delta's leadership made the decision to adopt a first bag fee unilaterally before AirTran even held its October 23, 2008 earnings call.  Indeed, the records from *all* the 2008 backup tapes, *all* the imaged hard drives and *all* the email files captured make it abundantly clear that Delta made its decision to adopt the first bag fee unilaterally.

Early last year, Delta acknowledged that it had made mistakes in its document collection and production by failing to properly search the information it had collected in connection with the DOJ CID and by failing to previously locate all of the backup tapes in its possession.  As a result of those mistakes, resolution of this case has been delayed, discovery was re-opened, Delta was sanctioned, and Delta has paid Plaintiffs' counsel approximately $1.285 million in fees and costs.

In addition to the actual discovery conducted in this case, Delta has engaged in substantial dialogue with Plaintiffs over the last year and half related to document issues. In recent months, the informal inquiries and demands from Plaintiffs' counsel increased in frequency and volume.  In many respects, Plaintiffs' inquiries became untethered from the discovery requests propounded on Delta or the Orders of this Court.  While Plaintiffs' motion acknowledges that their "discovery on discovery" efforts were specifically limited by this Court's June 20, 2012 Order to "PWC's investigation and Delta and its counsel's efforts to preserve, collect and produce (1) first bag fee discovery on (2) certain custodian's hard drives and (3) backup tapes" (Order at 7), Plaintiffs actions following that Order can only reasonably be viewed as an effort to expand, not limit, the scope of their requests.  Now Plaintiffs' seek an order requiring Delta to respond to various

document demands well beyond what the Court previously authorized. Although Plaintiffs claim to have conferred in good faith with Delta, a number of their requests are being raised for the first time by Plaintiffs' motion.[6] Moreover, while Plaintiffs' letter is coy about the scope of what they ask the Court to compel, the demands listed in their "Appendix 1" are remarkable for their breadth. Delta addresses each request in Appendix 1 to this letter, but some examples are: Plaintiffs demand that Delta (i) search backup tapes from late 2009, 2010 and 2011 (significantly after the material events of this case); (ii) collect and produce all documents related to the "preservation, collection, storage, transfer, and destruction" of documents from numerous unrelated matters, including an investigation that occurred in late 2009, and (iii) essentially re-do all document searches and productions in this case using different search terms and different custodians. The new discovery Plaintiffs now seek is not rationally related to assisting this Court in determining whether Delta and AirTran reached an agreement under the Sherman Act, bringing into question the actual purpose of Plaintiffs' motion.

Plaintiffs also produce a chart highlighting what they describe as misrepresentations to the Court. There can be no question at this stage of this case that Delta learned after the fact it had made serious mistakes in discovery and therefore made inaccurate statements about the steps it took to collect and preserve documents in this case. Delta regrets the burden its mistakes have placed on the parties and the Court, but the correction of its errors resulted in the location and production of additional documents and not the loss of relevant evidence in this case. While Delta regrets its incorrect statements, Plaintiffs' counsel contorts and twists the evidence in an effort to both avoid the merits and inflame the Court. Delta responds to each of Plaintiffs' allegations in the attached response to Plaintiffs' Appendix 2. Additionally, Delta welcomes the opportunity to discuss Plaintiffs' accusations, as well as Delta's preservation, collection, and production of documents in a hearing or conference.

Delta will briefly addresses each of the three examples offered in Plaintiffs' letter to support their claim for more discovery:

**PWC's work regarding backup tapes**: Plaintiffs' argue that Delta has not properly determined which of the backup tapes contain 2008 data. When Delta determined that it had additional backup tapes from the 2008 time period, it asked PricewaterhouseCoopers ("PWC") to expand the scope of its work to include the discovered tapes and any additional backup tapes with potentially relevant data from 2008.[7] PWC attempted to locate all backup tapes then in Delta's possession or in the possession of any Delta vendor that could potentially contain relevant data. PWC inventoried a total of 340 tapes. Based on PWC's review of the labels of the tapes and other information it gathered, PWC determined that the vast majority of those tapes could not reasonably contain potentially relevant data from the 2008 time period. Plaintiffs argue in their letter that all 340 tapes should be scanned because the labels on the tapes were unreliable. Plaintiffs tell only half the truth, and distort the testimony of Brian Wilkinson of PWC to do so. PWC determined that a number of the tapes that bore a 2008 date on their label

Judge Timothy C. Batten, Sr.
September 24, 2012
Page 4

actually contained only data for 2009 or later. Thus, when Plaintiffs' counsel asked Mr. Wilkinson "Were the labels of the tapes generally accurate?" he responded, "No. There was quite a few tapes that had older dates than what data was actually on there."[8] Plaintiffs' letter crops Mr. Wilkinson's testimony to suggest the reverse, but that simply is not true.[9] Thus, if a tape had a label date of 2009, 2010 or 2011, it would contain data from that period or *after* – not from an earlier 2008 time period. In fact, of the tapes PwC had catalogued, none of them contained backup dates from a time period *prior* to the date on the tape label.[10] Additionally, PWC was over-inclusive in the tapes that it had cataloged.[11] If PWC did not have a reasonable basis to eliminate any particular tape, that tape was electronically searched to determine its contents. Thus, over 90 tapes were cataloged (which provides only the server name and backup dates) and only 25 tapes contained potentially relevant data from the 2008 time period. Plaintiffs' suggestion that all 340 additional tapes should be searched is without reasonable basis.

**Backup tapes for file and print servers**: Plaintiffs' accusation regarding backup tapes for Delta's file and print servers is confounding because it is completely new. Plaintiffs have never before requested or suggested that Delta preserve backup tapes for file and print servers. Plaintiffs have never even inquired what custodians had email folders on file and print servers, much less which were on servers for which back-up tapes are created in the ordinary course. The attempt to make an issue of these servers now is another red herring. Unlike the exchange email servers that were the subject of Plaintiffs' spoliation motion, file and print servers are not subject to an auto-delete policy. Therefore, an email that existed in a custodian's folder on that server in 2008 or early 2009 would continue to exist in May 2009 unless active steps were taken to delete it. Additionally, in the present case, there is only one May 2009 custodian whose home directory (where a custodian has the option of storing email folders) was located on a "file and print server" – Mike Becker, who was pre-merger Northwest (and therefore did not join Delta until late 2008).[12] He did not have any email folders stored on the server, and in any event, he was the subject of a full email sweep and his hard-drive (where hundreds of emails were stored) was imaged in May 2009. For all of the other May 2009 custodians, their home directories were collected from Network Attached Storage (or "NAS") servers rather than file and print servers.[13] Backup tapes are not utilized for those servers, so there were no backup tapes to have been preserved. The NAS servers' only historical backup feature is that mailboxes can be regenerated as it existed on a given night going back 30 days (with the exception of the executive NAS server discussed below). Those servers are also not subject to an auto-delete policy, so the 30 day prior version of the relevant folders would not be materially different – in fact the relevant custodians had received a preservation notice prior to that time. Backup tapes to file and print servers are simply not relevant to this case and thus, no additional discovery about them is likely to lead to any relevant evidence.

**Executive Server**: The executive server is also a NAS server for the home directories of certain executives (on which they may opt to set up email folders). It contains a single current version of the home directory/personal email folders that through the application

Judge Timothy C. Batten, Sr.
September 24, 2012
Page 5

of special program files can be regenerated as they existed at certain points in time. Unlike Delta's other NAS servers (which can regenerate what existed on a given night going back thirty days), the executive server has the additional capability of being able to regenerate for certain weekly versions going back approximately one year. The email folders from this server were not collected in May 2009. In July of 2009, Delta's legal department requested files for eight individuals on that server as they existed as close to but after November 4, 2008.[14] The files were copied for those individuals from the executive server at that time, but only the then-current version was obtained without application of the data that would regenerate the earlier version.[15] While the version of these files collected was the July 2009 rather than November 2008 version, the data on this server is not subject to any auto delete policy and each of the involved custodians had received instruction from counsel to retain any relevant documents in February 2009, immediately after receipt of the DOJ CID. Plaintiffs' suggestion that this information was not searched is incorrect. In March of 2010, Delta searched the executive server data collected in July 2009 for the custodians agreed to with Plaintiffs, including, Richard Anderson, Ed Bastian, Glenn Hauenstein, Steve Gorman and Ben Hirst.[16] Delta has since searched the files of the only remaining individuals who were custodians in connection with the DOJ CID but were not custodians in connection with the Consolidated Amended Complaint. Using the search terms that would have been applied had they been searched in connection with the DOJ CID in 2009, the files of those individuals – Teresa Wise, Ned Walker and Mike Campbell – yielded only three responsive documents, which are being provided to Plaintiffs. Thus, all of the custodians on the executive server have now been searched. To resolve any questions as to whether the files are a potential source of additional responsive documents, Delta is processing the data using the agreed upon terms from 2011 and will produce such documents (if any) to Plaintiffs promptly.

Delta did not contest the need for additional discovery ordered by the Court or its responsibility for creating the need for such discovery. Delta has sought to cooperate with Plaintiffs to remedy the admitted errors that were made in responding to discovery requests. Delta has also paid a very significant sanctions award. Plaintiffs' efforts to restart discovery or pursue new discovery, however, should now be denied and this matter should proceed to resolution on the merits. As stated above, Delta welcomes the opportunity to discuss these matters further in a hearing if the Court wishes.

Sincerely,

Randall L. Allen

RLA:rla

## ENDNOTES TO DELTA'S SEPTEMBER 24, 2012 LETTER

[1] July 25, 2011 Letter from D. Flint to Judge Batten, p. 9 (attached as Ex. 1).

[2] *See, e.g.,* DLTAPE-00003069 (attached as Ex. 2); DLTAPE-00002907 (attached as Ex. 3).

[3] August 26, 2011 letter from Flint to J. Batten, pp. 19-20 (attached as Ex. 4).

[4] *See* attached Appendix 3 discussing Delta's efforts to response to Plaintiffs' discovery demands; *see also* Delta Air Lines, Inc.'s Second Supplemental Objections and Responses to Plaintiffs' Seventh Set of Interrogatories (attached as Ex. 5). Plaintiffs' demands have continued after the filing of their motion to compel. (*See* September 22, 2012 Email from D. Low to R. Allen, et al. (demanding restoration of additional backup tapes) (attached as Ex. 6)). The impropriety of Plaintiffs' approach is highlighted by this most recent demand, which relates to a backup tape (Tape 187) for which Delta provided Plaintiffs with a list of the custodians on that tape more than 16 months ago. (*See* May 1, 2011 Email from G. Mauldin to D. Kotchen ("Per your request, attached is a list itemizing the custodians on each of the respective 25 backup tapes," including the custodians on Tape 187)(attached as Ex. 7)). None of the custodians on that backup tape have ever been custodians in this case. Moreover, Plaintiffs never asked Delta to restore any of those custodians' mailboxes, and Plaintiffs did not include the restoration of mailboxes from that tape in the agreements it reached with Delta regarding the search of the backup tapes in 2011.

[5] Memorandum in Support of Plaintiffs' Motion for Spoliation Sanctions Against Defendant Delta Air Lines, Inc., pp. 1, 21 (Dkt. 196).

[6] See, e.g., Sept. 12, 2012 Letter from D. Flint, p. 2 (requesting that over two hundred back-up tapes be electronically cataloged); Plaintiffs' Appendix 1 at endnote 6 (requesting all documents "related to the preservation, collection, storage, transfer, and destruction of documents" from the fall 2009 slot swap investigation); Plaintiffs' Appendix 1 at endnote 7 and accompanying text (seeking all documents used to refresh the recollection of any witness deposed in the case: "Consistent with Fed. R. Evid. 612, Delta should be required to produce documents used to refresh deposition witnesses' recollections."); id. at endnote 17 and accompanying text (requesting Delta produce documents collected in connection with the Sky Team investigation); id. at endnote 17 and accompanying text (seeking documents related to Delta's communications with IBM about IBM's searching for documents in response to Plaintiffs' requests for documents related to Delta's efforts to preserve, collect and produce documents: "documents related to Delta's communications with IBM regarding searching for documents responsive to Plaintiffs' Requests 6 and 7").

[7] Declaration of B. Wilkinson, ¶ 5, 6 (attached as Ex. 8).

[8] Deposition B. Wilkinson, 22:16-19.

[9]  Plaintiffs recently acknowledged that their citation of Mr. Wilkinson's testimony was inaccurate, but only corrected the citation as it appeared in the endnotes to their letter. *See* September 21 email from J. Heald to A. Snedeker (attached as Ex. 9) ("Plaintiffs noticed that one of the citations in their September 12 letter was inaccurate."). Plaintiffs, however, elected not to correct the partial quotation of that same testimony that appears in the letter or the argument for additional discovery that is premised on their incorrect citation.

[10]  Declaration of B. Wilkinson, ¶ 14.

[11]  Declaration of B. Wilkinson, ¶ 11.

[12]  Mr. Becker was a pre-merger Northwest employee and became a member of the Delta CLT at the merger close on October 29, 2008.  He did not participate in the October 27, 2008 CLT meeting as he was not yet a Delta employee or a member of the CLT at that time.  Mr. Becker attended the November 3, 2008 CLT meeting (the first meeting of the post-merger CLT), but did not recall whether he expressed his views about Delta's adoption of a first bag fee at that meeting.  *See* Delta's Supplemental Responses to Plaintiffs' Sixth Set of Interrogatories, at 5 (attached as Ex. 10).

[13]  *See* DLBFDOC-016929 (attached as Ex. 11) (identifying home folder locations of custodians for May 2009 sweep, including "natl" server locations for all but M. Becker).

[14]  Declaration of S. McClain, ¶ 5  (attached as Ex. 12).

[15]  Declaration of S. McClain, ¶ 8.

[16]  March 5, 2010 Letter from M. Mitchell to D. Kotchen and D. Low, p.1, App'x. A (attached as Ex. 13) (identifying and discussing agreed-upon custodians).

LAW OFFICES

# SCHREEDER, WHEELER & FLINT, LLP
1100 PEACHTREE STREET, NE
SUITE 800
ATLANTA, GEORGIA 30309-4516

(404) 681-3450
FACSIMILE: (404) 681-1046

David H. Flint

E-Mail: dflint@swfllp.com
Direct Dial: (404) 954-9843

October 1, 2012

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

RE:   *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

At the outset of the extended discovery period, Delta represented that its discovery mistakes "ha[d] been fully acknowledged, and fully addressed."[1]  Delta further represented that "[no] further discovery is necessary to uncover missing or destroyed documents," and that "there is no legitimate purpose to be served by further discovery into Delta's 'document preservation, collection and production.'"[2]  Over the last several months, however, it has become clear that Delta did not conduct a diligent search, that additional sources of responsive discovery have not been preserved or searched, and that further inquiry into Delta's discovery efforts should yield additional responsive documents.

That Delta has not cooperated in the Court's attempt to discover the truth is exemplified by its responses to the chart of examples of Delta's misrepresentations to the Court and Plaintiffs. *See* Appendix B.  Delta largely does not deny that its statements are misleading, attempting instead to demonstrate that the statements are not *completely* false.   Delta apparently believes there is nothing inappropriate with providing incomplete and misleading information to Plaintiffs and the Court.  In light of the now-lengthy history of Delta's discovery abuse, Plaintiffs and the Court simply cannot rely upon Delta to provide complete, truthful information.  As such, Plaintiffs need Delta to produce the underlying documents to learn the full truth.

<u>Delta's Inaccurate Testimony and "Correcting" Affidavit Related to Its Failure to Preserve Backups of the Executive Server Underscores the Need for Delta to Fully Respond to Plaintiffs' Discovery Requests</u>

The importance of the discovery Plaintiffs seek is underscored by the fact that Delta has again revised its explanation of documents it preserved, searched for, and produced.  Delta's revised explanation concerns executive server documents, which are backed-up for a full year.[3]  Plaintiffs requested that documents related to the executive server backups be produced prior to the recent Rule 30(b)(6) deposition, but Delta refused.[4]  At the deposition, Delta testified that in July 2009 it had collected a November 5, 2008 backup of the executive server from which it had produced responsive documents in 2009.[5]  After the deposition, Plaintiffs analyzed Delta's

Page 2

production and determined that no documents had been produced from the executive server backups in 2009, and pointed out this discrepancy in their Motion to Compel.[6]  Delta now admits that its recent deposition testimony was incorrect, and that it failed to preserve any 2008 executive server backup.[7]  Delta also concedes that it failed to search for responsive e-mails from the non-backup e-mail files from the executive server for some relevant custodians.[8]

Delta blames its IT staff for Delta's failure to preserve any 2008 executive server backup.[9]  Specifically, Delta represents that its IT staff member – John Sokol – "was unaware that the executive server had the capability to regenerate older versions of the executives' personal folders."[10]  But Mr. Sokol was explicitly informed by Mr. McClain and Martin Fisher "there were back-ups going back 12 months."[11]  He then took steps to collect the backups.[12]  Delta counsel decided in July 2009 not to review and produce documents from the executive server, even after the DOJ raised document production and preservation concerns and Plaintiffs filed suit: "No need to do anything with these files yet – just capture and preserve the *.pst files, and I will follow up with you if we need to load them into Clearwell for further analysis."[13]  Further, Delta chose not to disclose the existence of the executive server backups to the DOJ or to Plaintiffs in sworn interrogatory responses regarding its document preservation efforts.

Delta's explanation for failing to preserve any 2008 executive server backups in July 2009 is strikingly similar to its explanation for why the fifth and final e-mail Exchange Server backup tape covering the most relevant time period in this case was destroyed on June 6, 2009.  Delta initially claimed that IBM mistakenly failed to follow Delta's May 13, 2009 instruction to preserve the final backup tape.  It then admitted the inaccuracy of that representation, but represented in a sworn verified response that it instructed IBM sometime between May 19 and June 5, 2009.[14]  When Plaintiffs pointed out that contemporaneous documents contradicted Delta's response, Delta represented that its verified response was based on interviews of the "percipient witnesses" and not on "its interpretation[] of documents:"

> Plaintiffs also argue that Delta's position is based on its interpretations of the documents.  That is wrong.  Delta's Verified Response is based on interviews of the percipient witnesses[.][15]

Delta recently testified that these witnesses did not know when the instruction was made.[16]  Now, in attempting to rebut Plaintiffs' chart of Delta misrepresentations, Delta has revised the basis of its verified response, and claims that the response was based on the percipient witnesses' interpretations of the documents.  *See* Delta's Response to Pls.' App. 2 at 3 ("[B]oth of these IBM employees could and did provide information to Delta about what occurred *based on the documents* that they were able to find in their files, and that was what formed the basis for Delta's statements about these individuals in its February 22 letter.") (emphasis added).  In its February 22, 2011 Spoliation Order, and based on Delta's representations, the Court appropriately concluded that Delta's interviews with percipient witnesses yielded information distinct from the documents to support Delta's verified response.[17]  We now know that this is not true, and Delta has never sought to correct the record.

Native PST Files

Delta discloses in its response the existence of "the original PST files collected in July 2009" from which Delta learned executive server backups were not preserved.[18]  In light of the

Page 3

fact that Delta now admits that all 2008 executive server backups were destroyed, and in light of the broader spoliation issues, Delta should be ordered to produce all relevant native .pst files from relevant custodians in response to Plaintiffs' requests 6 and 7. *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *9 (M.D. Fla. Nov. 7, 2006) (finding that analysis of native .pst files demonstrated deletion of relevant e-mails).[19]

Inadequate Search of Backup Tapes

    Delta originally represented that the 246 exchange server e-mail backup tapes that it did not catalog were all "clearly not relevant" based on the tapes' labels because, for example, "some tapes are labeled *before* or after the relevant time period."[20] But Delta has admitted that "quite a few tapes had older dates than what data was actually on there."[21] Moreover, many of the labels are highly ambiguous and do not provide any basis for excluding the tapes, including labels that did not include a date or indicated only that that tape was created during one of four months, e.g., "Jan/Apr/Jul/Oct" or "Mar/Jun/Sep/Dec."[22]

    Delta suggests that the documents that it has already produced "are [not] insufficient" because it already produced documents from certain custodians' backup tape files.[23] But Delta failed to preserve or locate backup tapes with files from over 60 of the custodians whose files Delta has previously searched for responsive documents, including four members of Delta's "Fee Team" that was involved in first bag fee analysis, and four members of the CLT.[24] Moreover, Delta now admits it failed to preserve executive server psts, which would include e-mails not captured on backup tapes. Backup tapes that Delta has not searched may very well contain relevant e-mails sent to or received from executives that were not preserved by the executives.

Backup Tapes for File and Print Servers

    In March 2010, Delta falsely represented to Plaintiffs that, "[w]ith respect to [certain relevant] custodians . . . , Delta collected all paper and electronic files relating to the checked baggage fee changes of Delta and other airlines . . . from January 2008 through May 2009[.]"[25] In February 2011, Delta falsely represented to the Court that on June 5, 2009 it had requested backups from IBM for the file and print environment.[26] Delta recently testified, however, that it never requested or preserved file and print server backup tapes, even though they likely had responsive documents.[27] All relevant file and print server backup tapes were spoliated.[28]

    Plaintiffs' request that Delta produce documents about these file and print server backup tapes is reasonable in light of Delta's spoliation. Delta objects because "Plaintiffs have never before requested or suggested that Delta preserve backup tapes for file and print servers."[29] Delta's objection is frivolous. Until Delta's recent revelation, Plaintiffs had no reason to make such a request because Plaintiffs did not know that file and print server backup tapes and relevant documents had been spoliated. Further, Plaintiffs still do not know what files were on these backup tapes.[30] Accordingly, discovery concerning the files stored on the file and print servers and Delta's failure to preserve file and print server backup tapes is necessary.

Responses to Miscellaneous Issues

    Four miscellaneous issues merit a brief response. First, contrary to its representation to the Court, Delta has not "sought to cooperate with Plaintiffs to remedy the admitted errors that were made in responding to discovery requests."[31] In responding to Plaintiffs' requests, Delta has provided numerous responses that are demonstrably false,[32] has refused to respond to numerous of

Page 4

Plaintiffs' inquires,[33] or has affirmatively chosen not to disclose material information responsive to Plaintiffs' interrogatories or correspondence. Delta did not, for example, disclose the existence of the executive server backups or psts or the file and print server backup tapes.[34] Delta has provided information *only* when it has been forced to do so.

Second, Delta misrepresents the scope of Plaintiffs' discovery requests, which are not nearly as broad as Delta represents.[35] Plaintiffs provide specific responses in Appendix A.

Third, Delta's rebuttal to Plaintiffs' chart of Delta's misrepresentation borders on the absurd. Most of Delta's rebuttals consist of long, complicated, and misleading explanations about contextual facts of its representations similar to its explanation of the basis for its verified response, discussed above. Plaintiffs have provided short responses in Appendix B. To the extent the Court has any question as to the credibility of Delta's representations, Plaintiffs believe that a review of the underlying documents would be revealing to the Court.[36]

Fourth, Delta represents that it "has paid a very significant sanctions award," and suggests that its discovery misconduct has therefore been fully addressed.[37] This is not true. For the last two years Plaintiffs and the Court have had to work continuously to try to learn the scope of Delta's litigation misconduct and spoliation. And the work continues. The amount of time, effort, and energy Delta's misconduct has consumed – and continues to consume – merit sanctions. Delta is not an aggrieved party – it is the ongoing cause of these problems and they still require Court oversight and remedy.

Delta's Revised Merits Argument Is Not Credible

Delta begins its letter by advancing its current merits argument, which is inconsistent with the argument that it advanced previously. In the initial discovery period, Delta argued the following facts: Delta's Airport Customer Service ("ACS") division supported a first bag fee by June 2008 and Revenue Management never supported the fee.[38] Revenue Management thus created an advocacy piece called the "Value Proposition," which was neither credible nor relied upon by the Corporate Leadership Team ("CLT").[39] ACS and Revenue Management presented their competing views of a first bag fee at the October 27 CLT meeting and the CLT sided with ACS in making Delta's first bag fee decision.[40]

Late-produced documents contradict Delta's initial story. In September 2008, the head of ACS, Gil West, proposed that Delta maintain its policy of not charging a first bag fee.[41] On the morning of October 23, hours before AirTran's earnings call, West reiterated ACS's view that Delta should not charge a first bag fee.[42] Moreover, the Value Proposition reflected a risk analysis top executives explicitly sought,[43] and that CEO Anderson described as a "very good" analysis.[44] At the October 27, 2008 CLT meeting where the Value Proposition was presented, Delta executives discussed AirTran's October 23 invitation to collude, the corresponding likelihood that AirTran would follow Delta's lead in implementing a first bag fee, and the Value Proposition, which projected profits only because of AirTran's invitation.[45] The CLT voted to adopt a first bag fee on the basis of its projected profitability.[46]

Because late-produced documents undermined Delta's initial factual defense, Delta has been forced to fundamentally alter its story, *i.e.*, that Delta's first bag fee decision was made by three executives – Messrs. Anderson, Bastian, and Gorman – who decided to implement a first bag

Page 5

fee by September 28, 2008, before AirTran's invitation. But Delta's new story is not credible. Mr. Anderson and Mr. Bastian previously testified that they did not make a decision until after the Delta-Northwest merger closed on October 29:

> Q: So, Mr. Anderson, when ultimately did you decide to impose a first bag fee?
>
> A: It was after the – I believe it was after we closed the merger with Northwest.[47]

Similarly, numerous witnesses and documents indicate that the decision was made by the CLT on either October 27 or November 3, 2008.[48]

Contemporaneous documents reflect that a decision had not been made by September 28, 2008. At a meeting on September 29 attended by Mr. Anderson, Mr. Bastian, Mr. Gorman, ACS, Revenue Management, and others,[49] attendees were told that the first bag fee was "under review," that Delta needed to "quantify the risk," and that one key risk was "when we are up against AirTran" or other low-cost carriers.[50] Delta subsequently analyzed the risk of imposing the first bag fee in the Value Proposition analysis.[51] After Delta effectively decided to impose the fee at the October 27 CLT meeting, Mr. Bastian expressed urgency in implementing the fee because "in this space time is money."[52] But a first bag fee was a stark change in plans for which Delta was unprepared. Delta's IT vendor was "very surprised" Delta wanted to quickly implement the fee because it was "the first [they've] heard about implementing 1st bag fee."[53]

Delta cites two documents that it argues demonstrate that the decision had been made by September 28, 2008.[54] But these documents do not show that a decision was made in September.[55] One document consists of an e-mail exchange the day before Mr. Anderson, Mr. Bastian, Glen Hauenstein, and others met on September 29, 2008 and discussed the key risks of a first bag fee, including AirTran, and sought an analysis to "quantify the risk."[56] The second document arose only when a fee review was overdue, and Mr. Anderson was commanding that the review be promptly scheduled.[57] Delta's interpretation of these documents and its assertion that a decision was made prior to October 23 is contradicted by the evidence.

While Delta's new defense lacks credibility, Delta seeks to shield from discovery additional documents that would likely further undermine its story and expose additional discovery lapses.

Sincerely,

David H. Flint

cc:   All Counsel of Record

## Endnotes to Plaintiffs' Reply Letter

[1] Letter from R. Allen to J. Batten at 2 (Feb. 22, 2012), Ex. 49.

[2] *Id.*

[3] The executive server backups are separate and distinct from the monthly exchange server backups that were spoliated (and the subject of Plaintiffs' 2010 spoliation motion).

[4] E-mail from D. Low to R. Allen (Aug. 28, 2012), Ex. 1 (requesting production of Executive server documents prior to the deposition); E-mail from D. Low to R. Allen (Aug. 23, 2012), Ex. 20 (requesting documents related to the Executive server); E-mail from D. Low to R. Allen (Aug. 21, 2012), Ex. 21 (same).   Plaintiffs first learned of these backups upon reviewing documents produced by Delta in May 2012.   Delta had not disclosed these backup tapes in responding to Plaintiffs' interrogatories, had not referenced them in any prior correspondence, and appears to have not disclosed their existence to the Department of Justice.

[5] Delta 30(b)(6) S. McClain Depo. Tr. 24:15-19, 36:9-23, 54:22-55:10 (Aug. 30, 2012), Ex. 50.

[6] Letter from D. Flint to J. Batten at ii-iii n.17 (Sept. 12, 2012).

[7] Letter from R. Allen to J. Batten at 5 (Sept. 24, 2012) ("Delta Letter"); S. McClain Decl. ¶ 8 (Sept. 24, 2012), Delta Ex. 12.

[8] Delta Letter at 5.

[9] S. McClain Decl. ¶¶ 8-9 (Sept. 24, 2012), Delta Ex. 12.

[10] *Id.* ¶ 9.

[11] E-mail from M. Fisher to J. Sokol (July 9, 2009), DLBFDOC 273, Ex. 16.

[12] *Id.*; E-mail from J. Sokol to M. Fisher (July 9, 2009), DLBFDOC 16758, Ex. 51.

[13] E-mail from S. McClain to J. Sokol (July 9, 2009), Ex. 16 at DLBFDOC 274.

[14] Letter from R. Allen to J. Batten at 1 (Feb. 16, 2011), Ex. 52.

[15] Letter from R. Allen to J. Batten (Feb. 22, 2011), Ex. 53.   Delta's interpretation of the documents is undermined by Delta's deposition testimony. Delta claims that a June 7, 2009 e-mail reflects an instruction for IBM to provide backups to Delta, where the e-mail stated that: "[W]e spoke on Friday about a request made by Delta to IBM *for some information*.   My understanding is that the Delta person making the request is Martin Fisher and *he is requesting backups for the Exchange, File & Print and NAS environment*."   E-mail from K. Hill to A. Arnold (June 7, 2009), DLBFDOC 10170, Ex. 54 (emphasis added).   Delta now admits, however, that Delta *never requested* File & Print server backup tapes or NAS backups from

1

IBM.  Delta 30(b)(6) S. McClain Depo. Tr. 41:3-21, 42:3-19 (Aug. 30, 2012), Ex. 3.  The e-mail therefore cannot be a request for backups of those environments, but only a request "for some information."

[16] Delta 30(b)(6) S. McClain Depo. Tr. 166:3-11, 166:15-25, 173:14-22, 174:4-6 (Aug. 30, 2012), Ex. 3.

[17] Order at 7 n.5 (Feb. 22, 2011) (Dkt. #271) ("Delta also represents that it has conducted a thorough investigation regarding the events in question, including interviewing all of the relevant individuals . . . In light of the ambiguity of the documents and the fact that Delta has conducted a thorough investigation regarding this matter, the Court will not reject Delta's verified representation that the instruction was issued sometime between May 19 and June 5, 2009."); E-mail from D. Smith to M. Fisher (June 8, 2009), DLBFDOC 10161, Ex. 10 ("Per your request, attached is the document with the explanations of the backup systems for Exchange, NAS, and File & Print environments.").

[18] S. McClain Decl. ¶ 8 (Sept. 24, 2012), Delta Ex. 12.

[19] *See also Treppel v. Biovail Corp.*, 249 F.R.D. 111, 123-24 (S.D.N.Y. 2008) (finding that appropriate remedy for deficient preservation was to allow plaintiff to undertake forensic examination of executive's laptop at defendant's expense); *Nacco Materials Holding Group, Inc. v. Lilly Co.*, 278 F.R.D. 395, 406 (W.D. Tenn. 2011) (finding that forensic examination of electronic data was appropriate where party's preservation and collection efforts were inadequate); E-mail from D. Low to R. Allen (Sept. 30, 2012), Ex. 55 (discussing meet and confer).

[20] Letter from R. Allen to J. Batten at 2 (Apr. 15, 2011), Ex. 44.

[21] Delta 30(b)(6) B. Wilkinson Depo. Tr. 22:16-19 (Aug. 30, 2012), Ex. 13.

[22] *Id.* 22:20-23:3; Tape Labels, DLBFDOC 16453-58, at 16457, Ex. 15.

[23] Delta Letter at 1-2.

[24] List of Delta Custodians Whose Backup Tape Files Were Not Located or Searched, Ex. 56.

[25] Delta Letter App. 2 at 14-15; Ex. 45 at 1.

[26] Delta Verified Response at 4 & Ex. 4 (Feb. 16, 2011), Ex. 57 (citing E-mail from K. Hill to A. Arnold (June 7, 2009), Ex. 54.

[27] Delta 30(b)(6) S. McClain Depo. Tr. 40:13-41:21, 49:3-12 (Aug. 30, 2012), Ex. 3.

[28] The file and print server backup tapes are separate and distinct from the monthly exchange server backups that were spoliated (and the subject of Plaintiffs' 2010 spoliation motion).

2

[29] Delta Letter at 4.

[30] Delta 30(b)(6) S. McClain Depo. Tr. 37:5-8 (Aug. 30, 2012), Ex. 50 ("Q. What is the file and print server? A. . . . I believe it's the server that hosts the home directories. Maybe I'm confused about that. Let me see."); 38:4-9 ("I believe that that refers to the server systems that support the e-mail system and the home directories and the shared common drives that are accessible by P.C. workstations, but I can't be positive about that.").

[31] Delta Letter at 5.

[32] Appendix B.

[33] *See, e.g.*, E-mail from D. Low to R. Allen (Aug. 28, 2012), Ex. 1 (making futile request that Delta produce, prior to the August 30, 2012 Rule 30(b)(6) deposition, the discovery requested in Plaintiffs' e-mails dated July 30, Aug. 10, 15, 16, 17, 18, 19, 21, 23, 25, 26, and 27).

[34] Delta's 2d Supp. Responses to Pls.' Seventh Interrogs. at 2, Ex. 58 (requesting, e.g., "the steps taken by Delta to collect, preserve, and produce documents;" "the dates of preservation for each document source;" and "the dates of collection for each document source").

[35] For example, Delta represents to the Court that Plaintiffs are demanding that Delta search backup tapes from late 2009, 2010, and 2011. Letter from R. Allen to J. Batten at 3 (Sept. 24, 2012). This is untrue, and Delta's failure to provide any citation in support of this representation is telling. Plaintiffs have requested that Delta search only those tapes that an electronic scan demonstrates are "pre-April 2009 backup tapes in Delta's possession with relevant custodians' files." Letter from D. Flint to J. Batten, App. 1 at 1 (Sept. 12, 2012).

[36] Delta admits that it made false representations in an October 2010 e-mail to Plaintiffs, and in a January 2011 hearing about whether the DOJ issued to Delta a CID reflecting a Sherman Act § 1 investigation. Appx. B at 16. Further, Delta never addresses its false representation in March 2010 that it had preserved all electronic files relating to first bag fees from January 2008 through May 2009. *Id.* at 17.

[37] Delta Letter at 5; *see also id.* at 2.

[38] Hr'g Tr. 29:9-30:2 (Nov. 8, 2010) (Dkt. #200); R. Anderson Depo. Tr. 47:16-48:7 (Oct. 6, 2010), Ex. 59 ("Gil was clearly an advocate toward imposing the bag fee way back at the beginning").

[39] Hr'g Tr. 31:9-13, 32:8-33:5 (Nov. 8, 2010) (Dkt. #200).

[40] *Id.* 33:1-5, 35:16-36:2.

[41] E-mail from G. West to G. Grimmett (Sept. 5, 2008), DLTAPE 4040, Ex. 60.

3

[42] E-mail from G. West to M. Zessin (Oct. 23, 2008), DLBAG 11053, Ex. 61, at DLBAG 11053 ("Gail [Grimmett of Revenue Management] has analyzed the book away sensitivity. . . . Sounds like its about a was[h] in terms of net revenue which would mean we would not implement 1st bag fee.").

[43] E-mail from P. Elledge to C. Phillips (Sept. 29, 2008), DLTAPE 6392 Ex. 62.

[44] E. Phillips DOJ Depo. Tr. 289:7-13 (Aug. 15, 2009), Ex. 63 ("[Richard Anderson] told us [at the October 27, 2008 CLT meeting that the Value Proposition analysis] was a very good deck").

[45] E. Bastian DOJ Depo. Tr. 55:3-11, 58:15-60:25, 76:13-19, 77:6-11 (Oct. 27, 2009), Ex. 64; E. Bastian Depo. Tr. 103:6-14, 104:24-105:4 (Sept. 17, 2010), Ex. 65; G. Hauenstein Depo. Tr. 125:7-11 (Sept. 30, 2010), Ex. 66; S. Springer DOJ Depo. Tr. 225:8-18, 226:9-13 (June 16, 2009), Ex. 67; E. Phillips DOJ Depo. Tr. 292:2-12 (Aug. 15, 2009), Ex. 63.

[46] E. Bastian Depo. Tr. 46:8-49:6 (Sept. 17, 2010), Ex. 65 (testifying that he spoke in favor of first bag fees at the October 27, 2008 CLT meeting because he expected the fee to be profitable); R. Anderson Depo. Tr. 61:18-62:3, 87:9-16 (Oct. 6, 2010), Ex. 59; S. Gorman Tr. 66:17-69:15, (May 10, 2012), Ex. 68; G. West Depo. Tr. 67:23-25 (May 11, 2012), Ex. 69.

[47] R. Anderson Depo. Tr. 60:25-61:5 (Oct. 6, 2010), Ex.59; *accord* E. Bastian Depo. Tr. 45:3-16 (Sept. 17, 2010), Ex. 65 ("we couldn't conclude, we didn't want to conclude, until we had [Northwest's] point of view [after the merger closed]), 42:11-44:8; E. Bastian DOJ Depo Tr. 44:13-20 (Oct. 27, 2009), Ex. 64 ("Q. . . . late October of last year, just before the merger of Northwest was consummated, where was Delta on its consideration of a first bag fee? A. Well, we knew we needed to make a decision . . . ."). Gorman has testified that he was not given "the full green light to implement" first bag fees until October 27, 2008. S. Gorman Depo. Tr. 78:22-79:11 (May 10, 2012), Ex. 68 ("Q. Would it be accurate to say that the decision on first bag fee was made on October 27, 2008? A. I don't know if that's when the decision was actually made at the Richard and Ed level. . . . [A]t the Monday, October 27th CLT . . . we were given the full green light to implement.").

[48] Delta's Response to Civil Investigative Demand No. 25324, at 4 (Mar. 3, 2009), DLBF 35284, at 35287, Ex. 70; G. West DOJ Depo. Tr. 22:1-5 (Aug. 16, 2009), Ex. 71; G. Hauenstein Depo. Tr. 10:25-11:2 (Sept. 30, 2010), Ex. 66; E. Bastian DOJ Depo. Tr. 11:6-17, 11:24-12:7, 12:17-19, 20:4-13 (Oct. 27, 2009), Ex. 64; G. Grimmett Depo. Tr. 294:14-16, 322:23-323:3 (May 4, 2012), Ex. 72; M. Zessin Depo. Tr. 31:17-24 (May 4, 2012), Ex. 73; S. Springer DOJ Depo. Tr. 39:1-4 (June 16, 2009), Ex. 67.

[49] Meeting Invitation (Sept. 29, 2008), DLBF 92280, Ex. 74.

[50] E-mail from P. Elledge to C. Phillips (Sept. 29, 2008), DLTAPE 6392, Ex. 62.