[51] Value Proposition v1 (Oct. 14, 2008), DLCID25324E-03819, Ex. 75; Value Proposition v6 (Oct. 24, 2008), DLCID25324E-03901, Ex. 76.

[52] E-mail from E. Bastian to E. Phillips (Oct. 31, 2008), DLBF 35579, Ex. 77.

[53] E-mail from P. Keller to S. Henderson (Nov. 4, 2008), DLBF 3595, Ex. 78 ("Susan, this is the first we've heard about implementing 1st bag fee – so very surprised by the comment about doing it tomorrow.  Can ACS-Baggage provide details?").

[54] Delta's suggestion that Plaintiffs failed to question Delta witnesses on these documents is inaccurate.  *See, e.g.*, R. Anderson Tr. 206:9-212:7, 232:5-239:7 (May 3, 2012), Ex. 79; E. Phillips Tr. 11:7-13:13 (May 17, 2012), Ex. 80; *see also* S. Gorman Depo. Tr. 78:22-79:11 (May 10, 2012), Ex. 68.

[55] Delta Letter at 1 & n.2 (citing Delta Exs. 2-3).  In Delta's Exhibit 2, Anderson states that "We need to *think about* implementing the fee post merger," and Bastian responds stating that he is leaning in favor of the fee, but that "Glen [Hauenstein] has different thoughts so should have disc at right time."  Delta Ex. 2.  In Delta's Exhibit 3, Anderson asks, "Can we have a review?," West responds, "We'll set up a review with you," Anderson responds, "We need to do it," and Gorman responds, "It is on Monday CLT agenda."  Delta Ex. 3.

[56] E-mail from P. Elledge to C. Phillips (Sept. 29, 2008), DLTAPE 6392, Ex. 62.

[57] E-mail from E. Phillips to S. Scheper (Sept. 9, 2009), DLBAG 2900, Ex. 81 ("Last week, Gail met with Richard and she was informed that he wants to meet sometime the week of September 22 to discuss the fee structure for the combined entity."); S. Springer DOJ Depo. Tr. 135:2-10 (Jun. 16, 2009), Ex. 67; R. Anderson Depo. Tr. 197:12-198:18, 202:20-204:7, 205:13-206:6 (May 3, 2012), Ex. 79.

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Randall L. Allen                     Direct Dial: 404-881-7196          Email: randall.allen@alston.com

October 5, 2012

***Via Email to:***
*julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov*

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30309-3309

Re:   *In re Delta/AirTran Baggage Fee Antitrust Litigation*
      No: 1:09-md-2089

Dear Judge Batten:

Plaintiffs' October 1, 2012 letter included a new request for Delta to produce "native .pst files" for the eight individuals whose files were collected from the executive server in July 2009. *See* October 1, 2012 Letter, pp. 2-3 and Appx. A, pp. 4-5.[1] Plaintiffs make this request despite the fact that Delta has already searched these same files and produced any responsive, non-privileged documents, and re-searched the files using the search terms agreed to by the parties in 2011.

The breadth and impropriety of Plaintiffs' request would be difficult to overstate. To give just one example – embedded in Plaintiffs' request is the requirement that Delta produce all emails that its General Counsel was storing in folders on the executive server regardless of whether they (1) are privileged attorney-client communications, (2) are protected by the work product doctrine, (3) involve wholly personal matters or (4) are otherwise completely unrelated to this case.

For all of the charged rhetoric in their letter, Plaintiffs are not forthcoming about the scope of the new, and unprecedented, discovery they are seeking. Native .pst files are not typical individual files but instead are storage files of documents (by way of analogy, a .pst file is akin to a filing cabinet). In this instance, the .pst files from the executive server are the collection of emails that the individuals had stored in folders on that server. Those .pst files were searched and the responsive non-privileged documents were

---

[1] Delta's counsel attempted to confer with Plaintiffs' counsel on the issue raised in this letter on Monday, but was told to make Delta's objections to the Court.

Judge Timothy C. Batten, Sr.
October 5, 2012
Page 2

produced.  What Plaintiffs are asking for now is the entire collection of documents Delta preserved – regardless of whether the documents have any bearing on this case, are responsive to any of Plaintiffs' requests, are protected by the attorney-client privilege or work-product doctrine, or implicate trade secret, HIPAA, or other privacy and confidentiality concerns.

Plaintiffs do not appear to contend that Delta's search of the .pst files was inadequate.  However, now having the responsive non-privileged documents already in hand, they apparently seek to go through the entire "virtual filing cabinet" to see what else can be learned from the privileged and non-responsive documents.  Federal courts, including the Eleventh Circuit have repeatedly recognized the serious concerns that arise from a request for direct access to an adversary's computer files regardless of relevance, privilege, or confidentiality.  *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) ("the district court must 'protect respondent with respect to preservation of this records, confidentiality of non-discoverable matters, and costs'"); *CP Solutions PTE, Ltd. v. GE Co.*, No. 3:04cv2150(JBA)(WIG), 2006 WL 1272615, *4 (D. Conn. Feb. 6, 2006) (rejecting request for production of native pst files, and would reconsider if "Plaintiff's counsel can show the need for a specific pst file *and a means to secure this without the production of privileged or irrelevant documents*." (emphasis added)); *Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 520-521 (S.D. Fla. 2009) (appointing independent computer expert and establishing protocol for producing party to review for responsiveness and privilege prior to production to requesting party; "While this procedure does not provide Plaintiff access to the M&P documents as Plaintiff requested, the M&P Defendants' failure to adequately respond to Plaintiff's request for documents is not sufficient grounds to give Plaintiff unfettered access to Defendants' computer system.").  Indeed, even the cases cited by Plaintiffs recognized this concern and refused to provide unfettered access to the raw electronic data.  *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) ("Any evidence recovered from the computer shall be reviewed first by the defendants so that they may assert any applicable claims of privilege…"); *Nacco Materials Handling Grp. v. Lilly Co.*, 278 F.R.D. 395, 406 (W.D. Tenn. 2011) ("Any documents or evidence recovered shall be provided to Lilly's attorneys first for privilege and confidentiality review.").  Plaintiffs' only other cited authority can hardly justify Plaintiffs' broad request here, as it involved the production of a .pst file for a single custodian, on an agreed-upon basis, and did not address any privilege, relevance, or confidentiality concerns.  *See Optowave Co., Ltd. v. Nitkin*, 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, *9 (M.D. Fla. Nov. 7, 2006) ("Nikitin agreed to produce, and the Court ordered production of, the full copy of Tudor's Outlook file and a CD-ROM containing the original PST file.").  Plaintiffs' demand for "all relevant native .pst files" (the scope of which remains unclear) should be rejected.

Plaintiffs' most recent letter is packed with hyperbolic language that is plainly designed to inflame but not to illuminate the truth about anything, including the merits of the case or the facts surrounding discovery.  Delta welcomes the opportuntiy to address

Judge Timothy C. Batten, Sr.
October 5, 2012
Page 3

all of Plaintiffs' accusations and any questions that the Court has about Delta's discovery efforts in in this case.

Sincerely,

Randall L. Allen

RLA:af

LAW OFFICES
## SCHREEDER, WHEELER & FLINT, LLP
1100 PEACHTREE STREET, NE
SUITE 800
ATLANTA, GEORGIA 30309-4516

(404) 681-3450
FACSIMILE: (404) 681-1046

David H. Flint

E-Mail: dflint@swfllp.com
Direct Dial: (404) 954-9843

October 10, 2012

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

     RE:   *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

     I write in response to Delta's October 5, 2012 letter.  As Plaintiffs explained to Delta on October 1, Plaintiffs seek native .pst files so that a computer expert can review the files in an attempt to discern whether relevant documents have been destroyed.[1]  Plaintiffs also wish to assess whether any destroyed (or otherwise unproduced) documents can be recovered.[2]

     Plaintiffs seek "all relevant .pst files from all relevant custodians."[3]  Native .pst files contain personal folder e-mails that do not reside on Exchange Server backup tapes, and Delta presumably has native files for all relevant custodians.

     Case law supports production of native files when there has been discovery misconduct.[4]  Here, production of the native files is necessitated by Delta's: spoliation; misrepresentations to the Court, Plaintiffs, and the DOJ regarding its preservation and production efforts; failure to search diligently for responsive documents; and failure to suspend the automatic deletions of backup tapes and e-mails.[5]

     Delta raises concerns about potential personal, confidential, trade secret, or privileged documents that may be contained in the .pst files.  But "concerns about personal, confidential, and proprietary information that may be contained [in the native files] . . . are addressed in and alleviated by the protective order already in place."[6]  Similarly, any privilege concerns are alleviated by the fact that "a judicially compelled disclosure of otherwise privileged information is not a waiver of any privilege that could be claimed."[7]  Further, Plaintiffs will agree that their initial analysis of the .pst files will be limited to e-mail headers, metadata, and e-mail fragments, and not the message body.  Before reviewing the body of any unproduced e-mails or attachments that are recoverable and that may be responsive, Plaintiffs will identify those documents to Delta for a privilege and confidentiality review.[8]

Page 2

Considering Delta's discovery misconduct and Plaintiffs' commitment not to review the body of any files without first giving Delta an opportunity to object, even the cases that Delta cites recognize that producing the native files is appropriate under these circumstances.[9]

Sincerely,

David H. Flint

cc:    All Counsel of Record

## Endnotes to Plaintiffs' Sur-Reply Letter

[1] E-mail from D. Kotchen to R. Allen (Oct. 1, 2012), Ex. 90; Letter from D. Flint to J. Batten at 3 (Oct. 1, 2012).

[2] Deleted e-mails and other deleted files are likely recoverable not only from .pst files, but also from Delta custodians' hard drives, Delta's servers, and/or from partially overwritten backup tapes, and Delta had an obligation to search for such deleted e-mails and files. *See Wells v. Xpedx*, 8:05-CV-2193TEAJ, 2007 WL 1200955, at *1 (M.D. Fla. Apr. 23, 2007) ("Deleted e-mails are, in most cases, not irretrievably lost. Deleted emails may remain on a computer hard drive, servers or retained on back-up tapes. The producing party has the obligation to search available electronic systems for deleted emails and files.") (citations omitted); *Williams v. Armstrong, No. 1:06-CV-168,* 2007 WL 1424552, at *2 (W.D. Mich. May 14, 2007) ("Typically speaking, such [email] computer data, even when deleted, is maintained in a computer system as replicant data, archival data or residual data, which is subject to production and discovery."). Plaintiffs are currently attempting to address with Delta whether recoverable deleted items are available from sources other than native .pst files and whether Delta has searched such sources. E-mail from D. Low to R. Allen (Oct. 8, 2012), Ex. 91.

[3] Plaintiffs request is not limited to the .pst files for the eight executives on the executive server as Delta suggests. Letter from D. Flint to J. Batten at 3 (requesting "all relevant native .pst files from relevant custodians"); E-mail from D. Kotchen to R. Allen (Oct. 1, 2012), Ex. 90 (explaining that Plaintiffs were seeking "the native .pst files referenced in Mr. McClain's affidavit, and (as I stated on the call) any other native .pst files that Delta has in its possession, custody or control for the relevant custodians.").

[4] *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687 (S.D. Fla. 2012) ("'When a requesting party demonstrates . . . the responding party's failure to produce requested information, the scales tip in favor of compelling forensic imaging.'") (citations omitted); *Nacco Materials Handling Group, Inc. v. Lilly Co.,* 278 F.R.D. 395, 406 (W.D. Tenn. 2011) ("[B]ecause Lilly's deficient preservation and collection efforts necessitates a forensic analysis of the data, the court finds that analyses of the data on the hard drives of some of the computers is warranted at this time and that Lilly should bear these costs."); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) ("The defendants failed to take adequate measures to prevent the destruction of discoverable materials. . . . The plaintiff is entitled to a forensic search of Mr. Melnyk's laptop computer at the defendants' expense."); *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc*., No. 07-2319,  2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009) ("[C]ourts have also compelled production based upon discrepancies or inconsistencies in a response to a discovery request or the responding party's unwillingness or failure to produce relevant information.").

[5] *See* Letter from D. Flint to J. Batten at 1-4 (Oct. 1, 2012); Letter from D. Flint to J. Batten at 1-3 & App. B (Sept. 12, 2012); Letter from DOJ to Delta (Oct. 2, 2012).

[6] *Nacco Materials*, 278 F.R.D. at 406.

[7] *Equity Analytics, LLC v. Lundin*, 248 F.R.D. 331, 334 (D.D.C. 2008) (citing *Hopson v. Mayor*, 232 F.R.D. 228, 232 (D. Md. 2005)).

[8] *Nacco Materials*, 278 F.R.D. at 406.

[9] *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) ("While some kind of *direct access might be permissible in certain cases*, this case has not been shown to be one of those cases. Russell is unentitled to this kind of discovery without – at the outset – *a factual finding of some non-compliance with discovery rules by Ford.*") (emphasis added); *Bank of Mongolia v. M & P Global Fin. Services, Inc.*, 258 F.R.D. 514, 520 (S.D. Fla. 2009) ("[B]ased on the discrepancies between Defendants' Response to Plaintiff's Requests for Production and their concession at the hearing that not all documents have yet been produced, and particularly in light of the recovery of apparently responsive documents by the Plaintiffs from third-party sources, the Court determined that an independent expert should be appointed to retrieve any deleted responsive files from Defendants' computers."); *CP Solutions PTE, Ltd. v. General Elec. Co.*, No. 3:04-cv-2150, 2006 WL 1272615 (D. Conn. Feb. 6, 2006) (no finding of discovery misconduct).

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax: 404-253-8473
www.alston.com

Randall L. Allen                    Direct Dial: 404-881-7196               Email: randall.allen@alston.com

October 24, 2012

*VIA E-MAIL to:*
*julee_smilley@gand.uscourts.gov;*
*alice_snedeker@gand.uscourts.gov*

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley & Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

Re:     *In re Delta/AirTran Baggage Fee Antitrust Litigation,*
        No. 1:09-md-2089

Dear Judge Batten:

I am writing to report on recent developments in discovery and to request the Court appoint an independent expert to assist the Court and the parties in resolving any remaining discovery disputes and bringing discovery in this matter to a close.

Back-Up Tapes

On Wednesday of last week, we learned that Delta possessed approximately 29 back-up tapes that existed at the time of PWC's collection and review of back-up tapes in early 2011, but that were not accounted for in PWC's review. At Delta's instruction, PWC collected from Delta's Corporate Security and Incident Response Team (CSIRT) approximately 340 tapes during March and April of 2011. The tapes collected at that time consisted of tapes that had been maintained by CSIRT as well as tapes that IBM (Delta's vendor) had been instructed by Delta to collect from locations that might house such tapes. We learned last Wednesday that after that collection by PWC from CSIRT in March and April, another delivery of 29 tapes to CSIRT from IBM was made on June 3, 2011. PWC was not advised of that delivery by CSIRT and therefore did not include those 29 tapes in its review and analysis.

We notified Plaintiffs of this discovery last week by letter dated October 19, 2012 (Exhibit A) and answered questions concerning the discovery during a lengthy phone call this past Monday. As explained in that letter, these additional tapes were discovered following a transfer of back-up tapes from CSIRT to PWC the previous Friday, as part of

Atlanta • Brussels • Charlotte • Dallas • Los Angeles • New York • Research Triangle • Silicon Valley • Ventura County • Washington, D.C.

October 24, 2012
Page 2

PWC's assistance to Delta in responding to the DOJ's recent letter.   PWC checked the tapes received from CSIRT against its prior inventory and discovered that they included tapes with labels dated prior to 2011 that had not previously been inventoried.  PWC has delivered the 29 tapes to eMag, the vendor previously used to restore backup tapes in this case.  eMag has cataloged each of the tapes and is in the process of restoring any tape containing 2008 back-ups.  Following the restore process, Delta will produce responsive non-duplicative documents, if any, from the agreed custodians in this case based on what we believed were previously agreed 2011 search terms.[1]

The failure to deliver these tapes to PWC during the review process last year is embarrassing and Delta apologizes to the Court and the other parties for any resulting additional inconvenience that has been caused.  Since it appears that many of these additional back-up tapes cover email servers and time periods also covered by back-up tapes which have already been restored, we are optimistic that these tapes will not generate any significant quantity of new responsive documents.  We will, of course, not know for certain until the relevant tapes have been processed and searched.

Appointment of the Independent Expert

In their recent Reply Brief in support of their motion to compel, Plaintiffs requested that the Court order Delta to produce all of the .pst files collected in connection with this case without any filtering for privilege, confidentiality or responsiveness.  This would mean production directly to Plaintiffs of all email folders and mailboxes, including all such files of in-house or outside counsel.  More recently, Plaintiffs have also demanded that Delta produce all of the hard drives collected in connection with this case and to allow its "IT vendor" access to Delta's servers.[2]

Eleventh Circuit precedent does not support Plaintiffs' request for unfettered access to Delta's electronically stored information ("ESI").  *See* Delta's Oct. 5, 2010 Letter to the Court, p. 2.  Nonetheless, Delta is anxious to find a way to efficiently resolve remaining questions concerning its preservation, collection and production of responsive documents and to move forward to address the merits of this case as expeditiously as possible.  Delta believes that appointment by the Court of an independent technical expert (individual or firm) to address these questions could serve

---

[1]   Plaintiffs have recently suggested that the 2011 search terms were in fact not agreed upon. While we disagree with Plaintiffs' claim, we have invited Plaintiffs to suggest terms they contend should be included.  We have also agreed to provide Plaintiffs with a listing of all individuals whose email files are on each of the backup tapes as we have previously done.

[2]   Additionally, Plaintiffs have stated in their recent motion and in their discussions with Delta that they will not accept or rely on representations made by Delta or its counsel concerning discovery.  Regardless of who is to blame for this, it renders even the most minimal cooperation between the parties unworkable.

October 24, 2012
Page 3

this purpose and avoid the problems created by permitting direct access by Plaintiffs to privileged documents and work product communications as Plaintiffs' motion proposes.[3]

Thus, Delta requests that the Court appoint an independent technical expert, at Delta's expense, to review Delta's discovery collection and to perform such forensic review as he or she deems appropriate, and provide at the conclusion of the review an independent analysis and report to the Court and the parties. Such an independent review is much more likely to efficiently and effectively resolve any remaining questions concerning discovery than the current practice of virtually daily email exchanges, followed by telephone conferences, followed by further emails, which are then often followed by motions to compel or threats of motions. Additionally, the appointment of an independent expert would assist the Court in resolving technical disputes and motions practice growing out of those technical disputes.

We have informed Plaintiffs' and AirTran's counsel that Delta would request the appointment of an independent expert. Since Plaintiffs learned of this proposal only yesterday, they have not yet had the opportunity to respond, but indicated that they would consider the proposal after seeing our submission to the Court. Delta suggests that the process include the following components:

- The expert be charged with the following:

   - Prepare a complete inventory of sources from which Delta has collected and preserved documents, including the location of such documents and the efforts undertaken by Delta to preserve such documents.

   - Investigate whether there are sources of documents relevant to Delta's first bag fee decision that have not been collected or preserved by Delta.

   - Investigate whether ESI that is likely to contain documents that are material to the merits of Plaintiffs' claims has been lost or destroyed. In the expert's discretion, this may include the technical review of the .pst files (as suggested by Plaintiffs in their sur-reply brief to their motion to compel). The expert may also inspect the hard drives collected by Delta to determine whether Delta collected and preserved so-called "recoverable deleted files" (as recently requested by Plaintiffs).

---

[3] In their briefs and their requests to Delta, Plaintiffs have frequently cited cases in which independent forensic experts were appointed to assist with electronic discovery issues. *See, e.g., Wynmoor Comm. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687-688 (S.D. Fla. 2012) (setting forth protocol for independent computer expert to perform forensic examination); *Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 520-521 (S.D. Fla. 2009) (same).

October 24, 2012
Page 4

- Both Delta and Plaintiffs would submit names of three potential experts for the Court's consideration. The parties would endeavor to suggest experts with whom they do not have any prior relationships, but would disclose any relationships to the extent they do exist. While the suggestion of names would be designed to assist the Court, the Court would, of course, not be limited in its power to appoint an expert of the Court's own choosing that has not been nominated or suggested by the parties.

- If necessary, the Court could hold a hearing to resolve questions concerning the selection of the expert and the scope of the expert's work.

Following appointment, the expert would be free to meet or otherwise communicate with Delta and Plaintiffs, separately or together, to inform him or herself. The expert would be granted reasonable access to Delta employees for purposes of conducting interviews relevant to the subject matter (described above) of the investigation. To facilitate the process, Delta requests that the Court enter an Order similar in form to the Court's May 10, 2012 Order providing that disclosure of any privileged or work product information to the expert does not constitute a waiver. Further, to provide a safeguard against the disclosure of privileged, work product, or otherwise protected information in the expert's report, the report would first be disclosed to Delta and the Court for *in camera* review before being disclosed to Plaintiffs or AirTran. Finally, Delta requests that any disclosure to the independent expert be governed by the existing Protective Order in this case. To the extent that modifications of the Order are necessary, the parties will meet and confer and submit any necessary modifications to the Court.

Delta recognizes its own responsibility for the significant mistakes made in discovery. These mistakes have prolonged this case and imposed unnecessary burdens on the Court and other parties, as well as substantial additional expense and burden upon Delta itself. However, notwithstanding the embarrassing errors, it remains the case that Delta has collected and produced tens of thousands of documents, including many retrieved from multiple overlapping sources of archival back-up material. We believe that the proposal we make here offers a path to resolving any reasonable remaining questions about discovery, allowing the Court to finally proceed to resolution of the merits, while also addressing legitimate concerns of privacy, privilege and work product. Delta requests that Court request submissions from the other parties and hold a conference to resolve any questions or issues in our proposal.

Thank you in advance for your consideration.

Sincerely,

Randall L. Allen

LAW OFFICES

# SCHREEDER, WHEELER & FLINT, LLP

1100 PEACHTREE STREET, NE

SUITE 800

ATLANTA, GEORGIA 30309-4516

———

(404) 681-3450

FACSIMILE: (404) 681-1046

David H. Flint                                                    E-Mail: dflint@swfllp.com

Direct Dial: (404) 954-9843

November 1, 2012

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

      RE:    *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

      Delta's October 24, 2012 letter to the Court states that Delta has discovered 29 additional back-up tapes that were not among the back-up tapes Delta found in its Evidence Locker in March 2011. Notably, Delta has represented to Plaintiffs that these "new" tapes were found and identified not as part of any ongoing effort by Delta to comply with its obligation to conduct a diligent search or to comply with this Court's various orders compelling Delta to produce documents, as they should have been, but instead came to light only as the result of PwC's efforts to assist Delta in responding to the October 2, 2012 Department of Justice ("DOJ") letter that was previously provided to the Court. But for that DOJ inquiry and PwC's involvement, Plaintiffs believe it is highly likely – despite this Court's prior, clear orders – that these 29 tapes would have remained "undiscovered." Now, in an effort to deflect attention from yet another glaring discovery violation, Delta asks the Court to appoint an expert to assist the Court "in resolving any remaining discovery disputes." Delta's request for a "discovery expert" should be denied.

      First, appointing a discovery expert would be inefficient and prolong resolution of this case. The Court and Plaintiffs have spent almost two years addressing Delta's discovery misconduct. No discovery expert will be similarly steeped in the relevant discovery issues unless substantial time and effort to educate the expert is undertaken. Moreover, choosing a

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 2
November 1, 2012

discovery expert and determining the precise scope of the expert's responsibilities and assignments are likely to be heavily contested and lead to needless litigation over collateral issues. While Delta points out that discovery in this case has been inefficient (Delta Letter at 3), the inefficiencies have been caused solely by Delta and Delta should not be rewarded by further delay.

Second, the discovery issues before the Court are not so complex as to require the extraordinary assistance of a court-appointed expert.[1] As the Court has repeatedly done before, it can effectively and efficiently address the remaining discovery issues between the parties. Outsourcing these discovery issues to an expert for a report makes little sense, particularly considering that such an expert will not have the experience (or expertise) in resolving discovery disputes of this Court.

Third, a report from an expert concerning Delta's discovery efforts will not assist the Court in addressing Delta's misconduct. The Court is well aware of the history of Delta's discovery failures and there simply is no need for a discovery expert to render a report.[2] To the extent that Delta is suggesting the expert's report be issued in lieu of providing Plaintiffs with the opportunity to take relevant discovery, Delta's proposal represents an extreme and inappropriate departure from the adversarial system.[3]

Fourth, to address any privilege or confidentiality concerns Delta may have concerning the Plaintiffs' request for the production of native files, Plaintiffs agree that their IT vendor will provide recovered e-mails or files to Delta for a privilege and confidentiality review before Plaintiffs review the documents, and that Delta providing the documents to Plaintiffs' vendor

---

[1] "[C]ourt-appointed experts are rarely used, being limited to unusual cases involving the convergence of several special circumstances." J. Cecil & T. Willging, Fed. Judicial Ctr., *Court-Appointed Experts* 67 (1993), *available at* https://www.ncjrs.gov/pdffiles1/Digitization/145624NCJRS.pdf. The most common reason experts are not appointed is the "[i]nfrequency of cases requiring extraordinary assistance." *Id.* at 18.

[2] *Carranza v. Fraas*, 471 F. Supp. 2d 8, 9 (D.D.C. 2007) (observing that court appointment of an expert "typically occurs in 'exceptional cases in which the ordinary adversary process does not suffice,' or when a case presents 'compelling circumstances' warranting the appointment of an expert") (citations omitted).

[3] *Ameriwood Indus., Inc. v. Liberman*, 4:06CV524-DJS, 2006 WL 3825291 at *6 (E.D. Mo. Dec. 27, 2006), *amended by* 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) ("Thereafter, once plaintiff propounds any further discovery requests, defendants will search through the information provided by the Expert to locate all responsive documents and data, and shall then produce to plaintiff all properly discoverable documents and data, as well as a privilege log, as described above.")

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 3

November 1, 2012

will not constitute a privilege waiver.  Other courts have adopted this process,[4] and Delta has no principled basis to object to it.

In addition, Delta's request for a discovery expert is a stark departure from its recent effort to move expeditiously to summary judgment.  On September 25, 2012, Delta opposed suspending the summary judgment schedule while the Court considered Plaintiffs' Motion to Compel.[5]  Delta then received a letter from the DOJ on October 2, 2012, which made clear that Delta had misrepresented to the DOJ (as with Plaintiffs and the Court) the scope of its document spoliation.[6]  In response to that letter, and presumably out of concern for potential criminal obstruction of justice charges, Delta has only now revealed the existence of additional relevant documents.  Delta knew – or should have known – about the existence of these documents but chose not to produce them, even though the Court has repeatedly ordered production of all relevant documents.[7]

Delta's repeated refusal to comply with Court orders and related litigation misconduct merit stiff sanctions.  *See Bates v. Michelin North America, Inc.*, No. 1:09-CV-3280-AT, 2012 WL 453233 (N.D. Ga. Jan. 13, 2012).  Accordingly, Plaintiffs intend to file a motion for further discovery sanctions within three weeks. As sanctions, Plaintiffs will request that Delta be precluded from seeking summary judgment and that Delta be precluded from contesting certain

---

[4] *See, e.g.*, *Ameriwood*, 2006 WL 3825291, at *5-6 (Court ordered a "three-step imaging, recovery, and disclosure process" wherein a third-party computer forensic expert chosen by the Plaintiff conducted a search for recoverable data.  The forensic expert was subject to the protective order in place, as well as a confidentiality agreement.); *Cenveo Corp. v. Slater*, CIV.A.06-CV-2632, 2007 WL 442387, at *2-3 (E.D. Pa. Jan. 31, 2007) (adopting *Ameriwood*'s three-step process).

[5] *See* E-mail from R. Allen to A. Snedeker (Sept. 25, 2012).

[6] *See* E-mail from R. Allen to A. Snedeker (Oct. 3, 2012) (attaching letter).

[7] *See* E-mail from D. Sims to K. Turner-Brown (June 8, 2011), DLBFDOC 913-14, Ex. 1 (attaching spreadsheet of tapes delivered to Delta on June 3, 2011); Delta 30(b)(6) McClain Tr. 78:19-22, 130:16-17, 258:4-19 (Aug. 30, 2012), Ex. 2 (testimony of Delta in-house counsel that Delta had received additional litigation hold server backup tapes from IBM in 2011 and 2012 and that in-house counsel had inspected the location where the tapes were stored in preparation for the deposition).  The Delta CSIRT staff member who received the documents – Kelly Turner-Brown – had made clear in internal communications reviewed by Delta counsel that she sought to avoid disclosing documents for fear they would be discoverable.  E-mail from K. Turner-Brown to P. Redemske (Aug. 6, 2011), DLBFDOC 467-68, Ex. 3.  Delta's counsel has been aware of Ms. Turner-Brown's perspective, *id.*, and her failure to proactively disclose to counsel the existence of other back-up tapes in the evidence locker, but Delta nonetheless failed to ensure that all relevant documents were located and produced.

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 4
   November 1, 2012


issues at trial.  Given that Delta has shown that monetary sanctions alone are not enough to force it to be forthcoming in discovery, such substantive sanctions are the only type "appropriately tailored" to address the level of repeated obfuscation and delay that has occurred.  If the Court grants Plaintiffs' motion for sanctions, Plaintiffs propose that they would then file an opposition to AirTran's motion for summary judgment, so that the Court can address that motion.  In the meantime, the parties and the Court can sort through the remaining discovery issues caused by Delta's actions.  This proposed course of action will enable the Court and the parties to progress this case in an expeditious manner and avoid yet another indefinite delay as a result of Delta's litigation misconduct.

   Finally, one additional discovery issue remains between Delta and Plaintiffs:  whether Delta will be ordered to provide to Plaintiffs' IT vendor relevant images, hard drives, backup tapes, or other electronic systems that may contain recoverable deleted items.  Contemporaneous with this response, Plaintiffs are filing a targeted letter motion directed at this issue.

   For the foregoing reasons, Plaintiffs request that Delta's motion to appoint an independent expert be denied.

Sincerely,

David H. Flint


cc:    All Counsel of Record

LAW OFFICES

# SCHREEDER, WHEELER & FLINT, LLP

1100 PEACHTREE STREET, NE

SUITE 800

ATLANTA, GEORGIA 30309-4516

———

(404) 681-3450

FACSIMILE: (404) 681-1046

David H. Flint

E-Mail: dflint@swfllp.com

Direct Dial: (404) 954-9843

November 1, 2012

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

RE:    *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

Plaintiffs write in regards to another Delta discovery shortcoming, which Plaintiffs have unsuccessfully attempted to resolve without the Court's assistance.[1]   Specifically, Plaintiffs request that Delta be ordered to make available to Plaintiffs' IT vendor relevant images, hard drives, backup tapes, or other electronic systems that may contain recoverable deleted items.

Litigants have an obligation to try to recover deleted e-mails and files. *Wells v. Xpedx*, 8:05-CV-2193TEAJ, 2007 WL 1200955, at *1 (M.D. Fla. Apr. 23, 2007) ("The producing party has the obligation to search available electronic systems for deleted emails and files."); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) ("[I]t is a well-accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable.").  This obligation is heightened where, as here, a party fails to preserve backup tapes and other sources of discoverable material. *Nacco Materials Handling Group, Inc. v. Lilly Co.*, 278 F.R.D. 395, 405 (W.D. Tenn. 2011) ("[B]ecause [defendant]'s deficient preservation

---

[1] E-mails from D. Low to R. Allen (Oct. 8-22, 2012), Ex. 1; E-mail from R. Allen to D. Low (Oct. 25, 2012), Ex. 2; Letter from D. Flint to J. Batten at n.2 (Oct. 10, 2012).  The parties conferred about the issue by phone on October 22, 2012.

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 2

November 1, 2012

and collection efforts necessitates a forensic analysis of the data, the court finds that analyses of the data on the hard drives of some of the computers is warranted at this time[.]").

In May 2009, Delta imaged custodians' hard drives and some shared servers.[2]  In June 2009 (and at various other times),[3] Delta collected a number of backup tapes, many of which likely contained data from earlier backups that were only partially overwritten.  These images and any partially overwritten backups almost certainly contain many recoverable deleted e-mails and files – such deleted e-mails residing in temporary or residual files or located in portions of hard drives, servers, or backup tapes marked as "unused." *Wells*, 2007 WL 1200955, at \*1 ("Deleted emails are, in most cases, not irretrievably lost.  Deleted emails may remain on a computer hard drive, servers or retained on back-up tapes."); *Williams v. Armstrong, No. 1:06-cv-168,* 2007 WL 1424552, at \*2 (W.D. Mich. May 14, 2007) ("Typically speaking, [email], even when deleted is maintained in a computer system as replicant data, archival data or residual data which is subject to production and discovery.").

Plaintiffs have learned that Delta did not conduct a search for recoverable deleted items from servers or unallocated portions of backup tapes, and that Delta does not know whether it searched for recoverable deleted items on hard drives or what methodology it used to conduct any such search.[4]  This is inconsistent with Delta's repeated representations "that it had produced every document responsive to Plaintiffs' discovery requests that it had in its possession."[5]

---

[2] Delta Rule 30(b)(6) S. McClain Depo. Tr. 45:5-12 (Oct. 7, 2010), Ex. 3; Delta Rule 30(b)(6) S. McClain Depo. Tr. 230:25-231:7, 233:24-25 (Aug. 30, 2012), Ex. 4.

[3] For example, Delta recently revealed that it collected a box of 29 backup tapes from IBM on June 3, 2011, but concealed the existence of those tapes until October 19, 2012, even though fourteen of those tapes are dated in 2008. Letter from R. Allen to D. Low (Oct. 19, 2012), Ex. 5.

[4] Delta did not search for recoverable deleted items on servers or the unallocated space on backup tapes.  E-mail from D. Low to R. Allen (Oct. 23, 2012), Ex. 2 at 6.  Delta claims that it does not know whether it conducted a forensic search for recoverable deleted items on hard drives, and refuses to disclose what search methodology, if any, it used.  Letter from R. Allen to J. Batten at 3 (Oct. 24, 2012) (suggesting that an independent expert be appointed to, *inter alia*, "inspect the hard drives collected by Delta to determine whether Delta collected and preserved so-called 'recoverable deleted files'").  Delta's evasive responses to Plaintiffs' inquiries indicate that a good faith search has not been conducted.  *See also* Delta's Resp. to Pls.' Seventh Interrogs., Ex. 6 (describing Delta's collection efforts and omitting any reference to searching for recoverable deleted items).

[5] Order at 31 (Feb. 3, 2012) (Dkt. #302); *see also* Letter from R. Allen to J. Batten at 2 (Feb. 22, 2012) (representing that "[no] further discovery is necessary to uncover missing or destroyed documents").

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 3

November 1, 2012

When there is evidence of discovery misconduct, courts have routinely permitted a discovering party to conduct a forensic search for recoverable deleted items rather than relying on the producing party to conduct the search.[6]  *See, e.g., Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) ("Plaintiff has shown in its motion papers some troubling discrepancies with respect to defendant's document production."); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) ("The defendants failed to take adequate measures to prevent the destruction of discoverable materials. Accordingly, the plaintiff is entitled to a remedy…The plaintiff is entitled to a forensic search of Mr. Melnyk's laptop computer at the defendants' expense."); *Ameriwood Indus., Inc. v. Liberman*, 4:06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), *amended by* 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) ("However, discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive.").

The Court has already sanctioned Delta for discovery misconduct.[7]  After the sanctions order was issued on February 3, 2012, Plaintiffs learned of a variety of additional misconduct, including spoliation and false representations made to the Court and Plaintiffs, as described in Plaintiffs' September 12 and October 1, 2012 letters to the Court.  In an October 2, 2012 letter, DOJ described Delta's discovery misconduct as "troubling," expressed concerns about "the integrity of the investigative process," and raised several questions about Delta's search of backup tapes.  As a result of DOJ's questions, and despite Delta's representations in 2011 about the thoroughness of its search for relevant back-up tapes,[8] Delta admitted to the Court on October 24, 2012 that it had received in June 2011 a box of 29 backup tapes from IBM that it had not previously disclosed, including 14 tapes labeled as 2008 tapes.[9] In light of Delta's long and growing history of discovery misconduct, the Court should order Delta to make its data available to Plaintiffs' IT vendor to conduct an independent search for recoverable deleted files.

---

[6] Plaintiffs previously requested a forensic examination of .pst files, primarily to examine when and what e-mails Delta deleted.  Letter from D. Flint to J. Batten at 3 (Oct. 1, 2012).  By contrast, Plaintiffs current request is aimed at locating and recovering relevant deleted files. Letter from D. Flint to J. Batten at n.2 (Oct. 10, 2012).

[7] Order at 39, 42 n.13 (Feb. 3, 2012) (Dkt. #302) (discussing Delta's "myriad inaccurate representations" and "woefully inaccurate" representations about the completeness of its document production); Order at 3 (July 18, 2012) (Dkt. #345) ("Delta engaged in a less-than-good-faith effort to resolve this dispute").

[8] *See, e.g.*, Letter from R. Allen to J. Batten at 2 (Apr. 15, 2011) ("Delta asked PwC to collect and secure all similar tapes in Delta's possession, custody or control . . . . PwC has completed its search . . . ."); Letter from R. Allen to J. Batten at 5 (Aug. 11, 2011) (Dkt. #298) ("Delta has worked diligently to ensure a complete production of any additional responsive documents…").

[9] Letter from D. Flint to J. Batten (Oct. 24, 2012).

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 4

November 1, 2012


To address any privilege or confidentiality concerns that Delta may have concerning the production of native files, Plaintiffs agree that their IT vendor will provide recovered e-mails or files to Delta for a privilege and confidentiality review before Plaintiffs review the documents, and agree that disclosures to Plaintiffs' vendor will not constitute a privilege waiver.  Other courts have adopted this process,[10] and Delta has no principled basis to object to it.[11]

For the foregoing reasons, Plaintiffs request that Delta be ordered to make available to Plaintiffs' IT vendor images, hard drives, backup tapes, or other electronic systems that may contain recoverable deleted items.

Sincerely,

*David H. Flint*

David H. Flint


cc:     All Counsel of Record

---

[10] *See Ameriwood*, 2006 WL 3825291, at *5-7 (Court ordered a "three-step imaging, recovery, and disclosure process" wherein a third-party computer forensic expert chosen by the Plaintiff conducted a search for recoverable data.  The forensic expert was subject to the protective order in place, as well as a confidentiality agreement.); *Cenveo Corp. v. Slater*, CIV.A.06-CV-2632, 2007 WL 442387, at *2-3 (E.D. Pa. Jan. 31, 2007) (adopting *Ameriwood*'s three-step process).
[11] "[C]oncerns about attorney-client privilege, confidentiality, relevance, and cost . . . are all readily dismissible if counsel cooperate and employ effective procedural methods to protect their client's private, irrelevant, or protected information."   Franz J. Vancura, *Using Computer Forensics to Enhance the Discovery of Electronically Stored Information*, 7 U. St. Thomas L.J. 727, 729 (2010) (citations omitted).

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Randall L. Allen                    Direct Dial: 404-881-7196              Email: randall.allen@alston.com

November 9, 2012

**Via Email to:**
*julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov*

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30309-3309

Re:     *In re Delta/AirTran Baggage Fee Antitrust Litigation*
        No: 1:09-md-2089

Dear Judge Batten:

The discovery problems that currently exist in this case are a combination of two forces. First, Delta has admittedly made mistakes during the course of discovery. Second, Plaintiffs have engaged in tactical and disingenuous efforts to exploit Delta's mistakes to pursue virtually never-ending discovery that long ago ceased to have any but the most tenuous connection to the merits of this case. Plaintiffs' November 1, 2012 motion to compel "recoverable deleted items"[1] is but the latest example. It does not arise from any of Delta's discovery mistakes. It alleges discovery obligations where there are none and raises a dispute that was fabricated out of whole cloth in the last month, and for which Plaintiffs seek unprecedented relief. Plaintiffs' motion to compel should be denied.

### A. Background

Plaintiffs' newly requested discovery related to "recoverable deleted items" arose for the first time approximately one month ago. Until then, Plaintiffs had not uttered that term at any time during the three years this case has been pending, including during the original discovery period, the 2010 meet and confer process ordered by the Court, the

---

[1] The "deleted items" that are the subject of Plaintiffs' motion are not the typical "deleted" files such as emails in a user's "deleted items" email folder in Microsoft Outlook or the "deleted" files in the users Windows' "Recycle Bin." Rather, Plaintiffs' motion refers to "deleted items" that are not apparent or accessible to a user, but may be recoverable through forensic technology.

Judge Timothy C. Batten, Sr.
November 9, 2012
Page 2

extensive meet and confer discussions in 2011, or during the re-opened discovery period this year. In August, Plaintiffs deposed an individual from PWC who testified that the scope of PWC's work in 2011 included extracting data from the imaged hard drives.[2] Yet Plaintiffs did not ask a single question about that process or about "recoverable deleted items."

Rather, it appears Plaintiffs first decided to pursue this new avenue of discovery into "recoverable deleted items" in the process of researching case law for Plaintiffs' October 10, 2012 Sur-Reply Letter support of their prior motion to compel. Two days before they filed their Sur-Reply, Plaintiffs began asking questions about "recoverable deleted items" for the very first time. Specifically, on October 8, Plaintiffs' counsel[3] emailed Delta's counsel asking whether Delta had searched for "responsive deleted items that may be recoverable." Oct. 8, 2012 Email from D. Low (Plaintiffs' Ex. 1, p. 8).[4] Within two weeks, and despite Delta confirming that it was actively seeking to obtain a technologically informed answer to their question, Plaintiffs' counsel informed Delta that Plaintiffs intended to file the current motion to compel regardless of Delta's responses to Plaintiffs' questions and despite the fact that Delta had informed Plaintiffs that it believed (and was in the process of confirming) that the hard drives had in fact been imaged and searched in a way that captured recoverable deleted items.

Plaintiffs' counsel refused to describe what they proposed to do with the hard drives or how personal and privileged data would be protected. Oct. 25, 2012 Email from R. Allen (Plaintiffs' Ex. 2, p. 3). Moreover, Plaintiffs rejected Delta's suggestion that they confer with their forensic expert on the methodology they would propose for searching for recoverable deleted files, to determine whether Delta's approach to capturing recoverable deleted files from the hard drives was the same as that which Plaintiffs wanted their IT person to perform (thus potentially eliminating duplication and expense). Oct. 25, 2012 Email from R. Allen (Plaintiffs' Ex. 2, pp. 2-3). In sum, Plaintiffs' refusal to provide this information made it clear that Plaintiffs were not interested in the truth about what Delta had done, but in manufacturing issues and prolonging the discovery period through an unending series of emails, conferences and motions to compel.[5]

---

[2] Wilkinson Depo., 6:14-17 (attached as Exhibit 1).

[3] Notably, the email was sent by the same attorney who had conducted the deposition of Mr. Wilkinson of PWC (five weeks earlier) and had not asked a single question of the about the processing of the hard drives or "recoverable deleted files."

[4] Delta was understandably surprised by Plaintiffs raising this new issue and sought an explanation. Plaintiffs' response was primarily to levy further accusations at Delta and claim that Plaintiffs were being "forced" to file a motion to compel.

[5] In three different of their emails regarding "deleted items," Plaintiffs repeatedly cited to cases in which independent experts were appointed to address the issue. *See* Oct. 8, 2012 Email from D. Low (Plaintiffs' Ex. 1, p. 8), Oct. 17, 2012 Email from D. Low