Judge Timothy C. Batten, Sr.
November 9, 2012
Page 3

Finally, while Plaintiffs have claimed that Delta had an obligation to produce "recoverable deleted items" (which in fact Delta has done from the hard drives in this case), Plaintiffs apparently do not believe discovery obligations run both ways. Plaintiffs' counsel informed Delta that they did not know whether any of Plaintiffs' electronic media were subject to such a search, but promised to find out. Oct. 25, 2012 Email from R. Allen (Plaintiffs' Ex. 2, p. 3). After checking, Plaintiffs' counsel now simply refuse to answer whether Plaintiffs themselves even attempted to collect, much less produce, "recoverable deleted items."

### B. Plaintiffs' Motion Seeks Unprecedented Relief Based Wholly on Speculation.

#### 1. Plaintiffs' requested relief is improper and entirely open-ended.

Plaintiffs' motion seeks extraordinary relief, yet offers no facts and little more than rank speculation as its basis. Plaintiffs demand that an unidentified "IT vendor" (affiliated with Plaintiffs) be provided direct access to any of Delta's "electronic systems" that Plaintiffs believe "may" contain "recoverable deleted items."[6] Nov. 1, 2012 Letter in support of Motion to Compel ("Motion to Compel"), pp. 1, 4. Although Plaintiffs' motion expressly includes hard drives and back-up tapes[7], the scope of the media covered by the request is not subject to any apparent limitation. Nor is the scope of the IT vendor's work described or confined (other than to "search for recoverable deleted files"). Indeed, Plaintiffs' motion:

- Is not limited to the recovery of relevant or responsive documents, much less non-duplicative relevant or responsive documents.

---

(Plaintiffs' Ex. 1, p. 6), Oct. 19, 2012 Email from D. Low (Plaintiffs' Ex. 1, p. 4) (all three emails citing *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681 (S.D. Fla. 2012) and *Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 258 F.R.D. 514 (S.D. Fla. 2009)). The day after the conference call in which Plaintiffs said they would not accept Delta's answer on the issue, Delta suggested the appointment of such an independent expert. Although Plaintiffs' counsel initially indicated they would not object, they reserved judgment until seeing Delta's proposal. Delta did not learn that Plaintiffs opposed an independent expert until they filed their opposition, and simultaneously filed their present motion seeking an alleged "independent search" by an "IT vendor" they control.

[6] Plaintiffs did not, during either discovery period, issue any discovery request seeking direct access to any of Delta's computer systems or data.

[7] Plaintiffs make no attempt to identify the backup tapes to which they want access.

Judge Timothy C. Batten, Sr.
November 9, 2012
Page 4

- Does not limit the electronic systems to which they seek access to those likely to or even reasonably believed to have "recoverable deleted items," but instead includes anything that "may" have such files (apparently as Plaintiffs may determine at their discretion). Plaintiffs' motion seeks access to every Delta computer system of any nature, for any purpose, wherever located.

- Does not identify the "IT vendor" to whom they propose to provide such access, their qualifications, or their affiliation with Plaintiffs (or any party/counsel in the case).

- Does not specify the methodology or technology that Plaintiffs propose to apply to Delta's "electronic systems" to search for, recover, identify, or copy "recoverable deleted files."

- Does not offer any explanation or assurance as to how this open-ended forensic examination by an unidentified outside party would be conducted without unjustifiable disruption of Delta's business operations, or unauthorized disclosure of Sensitive Security Information protected by 49 C.F.R. Part 15, and/or other confidential, privileged, or proprietary Delta business data.

Such an order would be without precedent. As discussed in Delta's October 5, 2012 letter to the Court, courts are understandably hesitant to grant even limited direct access to an adversary's computer systems or data. *See* Oct. 5, 2012 Letter from R. Allen, p. 2; *see also John B. v. Goetz*, 531 F.3d 448, 459-460 (6th Cir. 2008) (In considering request to image adversary's computers, courts "have been cautious… where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature.").[8] In *Goetz*, the Sixth Circuit granted mandamus to overturn, as an "abuse of discretion," orders that "require[d] forensic imaging of all computers containing responsive ESI." 531 F.3d at 459.[9] The *Goetz* court noted that allowing a party to forensically copy the data of an adversary must

---

[8] Although portions of the discussion in *Goetz* relate to issues of federalism (the case involved state defendants), those issues do not undermine the broader privacy and confidentiality intrusions at the heart of the issue. *See, e.g.*, 531 F.3d at 458 ("the imaging of these computers and devices will result in the duplication of confidential and private information unrelated to the … litigation. This duplication implicates significant privacy and confidentiality interests…").

[9] Even for portions of the challenged orders that provide access for inspection computer systems (without copying of any data), the Sixth Circuit required that such provisions be consistent with its rulings regarding forensic imaging and "without undue intrusion." 531 F.3d at 461.

be premised on a "significant" interest, and found such significant interest lacking despite repeated discovery problems including violations of court orders and a failure to issue a litigation hold notice for six years. 531 F.3d at 460.[10] Thus, even in the face of violations of discovery orders and document preservation failings, the court held it was an abuse of discretion to grant a party broad access (albeit less broad than Plaintiffs seek in this case) to an adversary's computers. Plaintiffs' request is likewise improper. *See also In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003) (granting mandamus to vacate order that "granted [plaintiff] unlimited, direct access to [defendant's] databases").

### 2. Plaintiffs' motion is based on speculation.

As a basis for their extraordinary request, Plaintiffs merely offer the speculative and unsupported assertion that: "These images and any partially overwritten backups almost certainly contain many recoverable deleted emails and files – such deleted emails residing in temporary or residual files or located in portions of hard drives, servers, or backup tapes marked as unused." Motion to Compel, p. 2. Plaintiffs do not even argue that there is any basis to believe that this extraordinary exercise will produce relevant or responsive non-duplicative documents. Plaintiffs' assertion, though unsupported by any facts, is also meaningless.[11] Instead, they point to two unpublished opinions in *other* cases, involving *other* litigants, which in turn cite a law review article and a law student comment for the point at issue. Motion to Compel, p. 2 (citing *Wells v. Xpedx*, 8:05-CV-2193TEAJ, 2007 WL 1200955, at *1 (M.D. Fla. Apr. 23, 2007) and *Williams v. Armstrong*, No. 1:06-cv-168, 2007 WL 1424552, at *2 (W.D. Mich. May 14, 2007). Before Plaintiffs filed their motion, Delta specifically requested that Plaintiffs identify the basis for their assertion that any relevant deleted files or documents exist that might be recovered from the various media to which Plaintiffs seek unrestricted access. They refused to do so and do not even attempt to provide any such information now.

---

[10] The Sixth Circuit said, "the district court explained that it issued the contested orders because it believed that defendants had failed to comply with various discovery orders and had not properly preserved relevant ESI throughout the course of this litigation. The record is not sufficient for this court to question those conclusions. Even so, the record lacks evidence that defendants have intentionally destroyed relevant ESI in the past, and nothing in the record indicates that defendants are unwilling, or will refuse, to preserve and produce all relevant ESI in the future." 531 F.3d at 460.

[11] Plaintiffs are limited to relying on speculation because they did not seek any information during the discovery periods, did not ask the witness from PWC a single question on this topic, refused to answer Delta's question regarding methodology, and opposed having an independent expert investigate.

### 3. Plaintiffs' case law does not support their unprecedented request.

Plaintiffs' extraordinary request is not only factually unsupported, it is also not supported by the cases they cite. Most of the cases cited in Plaintiffs' motion involved computer fraud (where the computer equipment was used in commission of the alleged offense) or intellectual property disputes. *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395 (W.D. Tenn. 2011) (computer fraud), *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006) (computer fraud), *Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387 (E.D. Pa. Jan. 31, 2007) (improper computer use/theft of trade secrets), *Antioch v. Scrapbook Borders, Inc.*, 210 F.R.D. 645 (D. Minn. 2002) (copyright), *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000) (trademark).[12]

Only two of the cited cases involved discovery failures – but in those cases, the forensic imaging ordered was narrowly tailored to the discovery deficiency. In *Treppel*, the court ordered forensic imaging and searching of a single computer of an individual defendant (who also served as CEO and chairman of a corporate defendant) whose computer data had not been saved for over two years after the complaint was filed. 249 F.R.D. at 119, 124. In *Nacco*, forensic imaging and searching of seventeen specific hard drives was ordered after the court found the defendant "took no steps, of which the court is aware, to collect evidence from the key players or to search key players' computers to see if ESI existed or had been deleted." 278 F.R.D. at 404, 405 ("Lilly failed to proceed to collect potentially relevant documents and ESI from key players.").

Thus the circumstances in those cases, and the limited forensic relief granted, stand in stark contrast to the actual facts in this case and to the limitless breadth of Plaintiffs' motion. Delta was preserving relevant data in the case from the key custodians even before the Plaintiffs filed their first lawsuit – including forensic images of those custodians' hard drives. Over the last three years, Delta has collected data from the files of dozens of Delta employees, including every one of the decision-makers at Delta who had any material role in Delta's bag fee decision. Delta has collected documents from multiple data sources for almost every custodian, including multiple sets of back-up tapes, and data collections from other matters. Delta has produced more than forty thousand documents in response to Plaintiffs' discovery requests, creating a clear and extensive factual record explaining the basis for Delta's decision. There is simply no comparison between Delta's extensive document production here and the factual context in the cited cases where much more limited relief was granted than what Plaintiffs now request.

---

[12] Plaintiffs' cited cases are also interrelated – *Simon* is relied upon by *Antioch* (210 F.R.D. at 652-653), both *Simon* and *Antioch* are relied upon by *Ameriwood* (2006 WL 3825291, at *3-5), and *Ameriwood* is relied upon by *Cenveo* (2007 WL 442387, at *2). *Nacco* cites another of Plaintiffs' cases, *Treppel v. Biovail Corp.*, 249 F.R.D. 111 (S.D.N.Y. 2008). See *Nacco*, 278 F.R.D. at 404-406.

### C. Plaintiffs' Motion Is Premised On Unreasonable and Unsupported Alleged Discovery Obligations.

Plaintiffs' motion is a *post hoc* attempt to manufacture a new discovery dispute. Plaintiffs contend they are entitled to search any Delta systems for any potential recoverable deleted items, suggesting that Delta should have done so in the ordinary course of discovery. The allegation that Delta had an obligation to apply a forensic examination to all of its computer systems in a search for documents that may not even exist, regardless of relevance, is not a burden created by the Federal Rules of Civil Procedure and it clearly runs afoul of the reasonableness principles that govern document preservation and collection. "Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail." *John B. v. Goetz*, 531 F.3d at 460 (quoting *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 34 (2d ed. June 2007).[13] If Plaintiffs actually believed that parties have the sweeping discovery obligations alleged in their motion, then they would have raised it previously (they never did) and they would not have a problem telling Delta that they complied with it themselves (they refuse to do so).

Although, Plaintiffs generally assert that "[l]itigants have an obligation to try to recover deleted e-mails and files," any such obligation would clearly only apply to potentially relevant files that a litigant has a reason to believe exist and only to files and file systems that a litigant has an obligation to preserve.[14] Although forensic imaging of computers and related techniques may sometimes be appropriate, such measures are neither routine nor an automatic requirement. *See, e.g., John B. v. Goetz*, 531 F.3d at 459-460. Nevertheless, as has been discussed at length in prior briefing to the Court, Delta imaged twenty six hard drives from the computers of custodians in May 2009.[15]

---

[13] The quoted section from the Sedona Conference further states: "Theoretically, a party could preserve the contents of waste baskets and trash bins for evidence of statements or conduct. Yet, the burdens and costs of those acts are apparent and no one would typically argue that is required. There should be a similar application of reasonableness to preservation of electronic documents and data." *Sedona Principles* at 34.

[14] The *Wells v. Xpedx* case cited by Plaintiffs for this proposition does not address forensic searching, but instead involved a defendant with a "permanent back-up computer system" and the ability to "restore" deleted files upon "consent of a member of the company's legal or tax departments." 2007 WL 1200955, at *1.

[15] As the Court will recall, Delta learned in March of last year that although it had imaged the relevant hard drives, the data from the hard drives was not properly loaded for searching. *See* March 17, 2011 Letter from Randall Allen to Judge Batten. There has never been any suggestion that Delta failed to properly image and preserve the hard drives or that PWC failed to properly process their contents.

*See* March 17, 2011 Letter from Randall Allen to Judge Batten, pp. 1-2. Those hard drives were processed by PWC – not Delta internally – last year and were searched for responsive documents. B. Wilkinson Decl., ¶ 5 (attached as Exhibit 2). PWC confirmed that the hard drive images were full forensic images that included the "unallocated space" on the hard drives where recoverable deleted items would be located. B. Wilkinson Decl., ¶ 6. In the course of their work in 2011, PWC utilized forensic software and restored the recoverable deleted items from each of the hard drives. B. Wilkinson Decl., ¶ 7. Those recovered deleted files were included in the documents for processing, review, and (if responsive) production. B. Wilkinson Decl., ¶¶ 5, 7, 8.

It is unclear what Plaintiffs are suggesting with respect to "other" computer systems and media. Their motion makes a few passing references to servers (although they do not mention servers in their requests for relief). Servers are very different than individual computers and hard drives. Delta's email servers typically contain files for thousands of users. Delta's NAS[16] servers likewise have home directories and files for thousands of users, and a total capacity of over 250 terabytes of data (which equates to billions of pages of documents). Delta did collect and preserve the data from these systems that it believed were reasonably calculated to contain documents that might be relevant to this case.[17] Plaintiffs cannot plausibly argue that Delta was under some heretofore unheard of obligation to forensically image (or otherwise preserve) the entirety of those devices, particularly when doing so could disrupt the normal business operations of the company for days, on the off chance that the devices might contain recoverable deleted items for a handful of the thousands of employees on those devices. The fact that Delta did not do so cannot possibly be a basis for Plaintiffs to now be provided direct access to such systems to conduct a needle in a haystack search for documents potentially deleted in the ordinary course by a small subset of users more than three years ago.[18]

---

[16] NAS refers to Network Attached Storage and is a type of server utilized by Delta. *See* Sept. 24, 2012 Letter from R. Allen to Judge Batten, pp. 4-5.

[17] From the mailbox and NAS servers, Delta pulled the live emails and home directories for the relevant custodians as discussed in its prior submissions. *See, e.g.*, March 17, 2011 Letter from R. Allen to Judge Batten, pp. 1-2; Sept. 24, 2012 Letter from R. Allen to Judge Batten, pp. 4-5.

[18] The nature of Plaintiffs' request is such that it is difficult not to conclude that it is a just another tactical maneuver toward their next spoliation motion. Plaintiffs have not offered any information as to why they believe their "IT vendor" will be able to recover deleted items from 2008 on Delta's present day systems. This is either because (i) they have not actually consulted with an IT expert about what searches can be run, and are making a wholly uninformed request to the Court, (ii) they have consulted with an IT expert but are concealing the basis for their request and what they believe they can do, or (iii) they have consulted with an IT expert, concluded that it is unlikely 2008 "deleted" data is not recoverable, and are using the current motion as staging for a claim that such files may have once existed but have been "spoliated." None of these courses of action

Judge Timothy C. Batten, Sr.
November 9, 2012
Page 9

Plaintiffs' motion also mentions backup tapes. Plaintiffs have previously acknowledged that a party's obligation to preserve backup tapes is limited. *See* Plaintiffs' Memorandum in Support of Motion for Spoliation Sanctions (Dkt. 196), pp. 19-20. Delta's preservation and restoration of backup tapes has been the subject of extensive briefing to the Court, and Delta will not repeat those discussions at length here. Delta has restored backup tapes with backup sessions from 2008 through February 2009, many of which had data for hundreds of individuals who bear no relationship to this case. While some of Plaintiffs' cited authorities mention backup tapes in the context of "deleted files," they do so in the context of restoring tapes to recover emails that were available at the time of the backup. *See, e.g., Treppel*, 249 F.R.D. at 117-118 (rejected motion to compel restoration and search of "all existing backup tapes," and limiting restoration and search to tapes from specific locations for relevant periods of time).[19] This is what Delta has done in this case. Plaintiffs' motion suggests there is more they believe should be done with backup tapes, but they do not articulate what (or provide any citation in support). Simply put, Plaintiffs do not (i) describe what it is they want access to, (ii) what factual or technical basis supports such a request or (iii) what productive task they think can be accomplished were the Court to grant their request.

**D. Plaintiffs'** *ad hoc* **Protocol Provides No Meaningful Guidance as to the Scope of the Process, the Methodology Employed or the Protection of Personal or Privileged Information.**

Although Plaintiffs' motion should be denied in its entirety, their cursory proposed protocol is also inadequate as a matter of law. *See, e.g., In re Ford Motor Co.*, 345 F.3d at 1317 ("the district court must 'protect respondent with respect to preservation of this records, confidentiality of non-discoverable matters, and costs'"); *John B. v. Goetz*, 531 F.3d at 457 ("the mere imaging of the media, in and of itself, raises privacy and confidentiality concerns."). Plaintiffs' proposal references the protocols adopted in their cited case law, but fails to incorporate some of their central features or address the following:

---

are appropriate. If it is the third, and Plaintiffs contend that Delta had an obligation to image and preserve a full set of the entire company's servers at the outset of the litigation (a position wholly inconsistent with the law and Plaintiffs' prior positions in the case, including their 2010 spoliation motion), then they should not continue to conceal that position from the Court and Delta while pursuing the present motion.

[19] Of backup tapes, the law review comment relied upon in *Wells*, 2007 WL 1200955, cited by Plaintiffs (Motion to Compel, p. 1, 2) states: "A backup tape takes a snapshot of all data that exists on a server at the time the backup is made. A file which is subsequently deleted from the computer hard drive will be preserved on the backup tape." Phillips, A., *Discoverability of Electronic Data Under the Proposed Amendments to the Federal Rules of Civil Procedure: How Effective Are Proposed Protections for "Not Reasonably Accessible" Data?*, 83 N.C. L. Rev. 984, 989 (2005).

- Business Disruption – Plaintiffs make no attempt to explain how Plaintiffs' IT vendor will eliminate or minimize the business disruption to Delta if granted access to Delta's systems and data. *See Simon*, 194 F.R.D. at 642 (forensic inspection must "minimize disruption of and interference with defendant's business"); *see also Ameriwood*, 2006 WL 3825291, at *5; *Cenveo*, 2007 WL 442387, at *2; *Antioch*, 210 F.R.D. at 653. While Plaintiffs' refusal to articulate what their IT vendor would do makes it impossible for Delta (or the Court) to evaluate the practical consequences occasioned by the unfettered access requested, the forensic searching or imaging of an exchange server could require thousands of Delta employees to be without email for some unknown period of time, or to be relocated to a new server (which would need to be purchased and activated) to have continuity of email. Moreover, if Plaintiffs' IT vendor disassembles Delta's systems in the course of his or her work, it could result in a loss of data or require the acquisition of replacement systems to insure against such a loss.

- Access to and Custody of Copies of Data – Plaintiffs offer no protocol limiting the access to or providing for the custody of any copies of Delta's computer systems or data created by Plaintiffs' IT vendor. *See, e.g., Ameriwood*, 2006 WL 3825291, at *5-6 ("No employee of plaintiff, or its counsel, will inspect or otherwise handle the equipment produced."; extracted data provided to producing party only); *Simon*, 194 F.R.D. at 642 (extracted data provided to producing party only); *Antioch*, 210 F.R.D. at 653 ("No employee of Antioch, or its counsel, will inspect or otherwise handle the equipment produced."; copies of data provided only to producing party and the court).

- Responsiveness – Plaintiffs are only entitled to responsive discoverable documents. *In re Ford Motor Co.*, 345 F.3d at 1317. Plaintiffs' proposal does not allow Delta to review any recovered files for relevance or responsiveness before production, which Plaintiffs' own cases uniformly recognize Delta is entitled to do. *Ameriwood*, 2006 WL 3825291, at *6 (responsiveness review by producing party); *Cenveo*, 2007 WL 442387, at *3 (same); *Antioch*, 210 F.R.D. at 654 (same); *Simon*, 194 F.R.D. at 641-642 (same); *Nacco*, 278 F.R.D. at 406-407 (searches limited to relevant information); *Treppel*, 249 F.R.D. at 124 (examination limited to relevant emails).

- Confidentiality and Privilege Orders – Plaintiffs' proposal does not specify whether Plaintiffs' IT vendor would be subject to the Court's protective order governing confidentiality, or provide complete protection for ensuring that the IT vendor's access to Delta's privileged materials will not constitute a waiver (the non-waiver would only be vis-a-vis Plaintiffs). *See, e.g., Simon*, 194 F.R.D. at 642 ("Because the expert will serve as an officer of the court, disclosure of a communication to the expert shall not be deemed a waiver of the attorney-client privilege or any other privilege"); *Ameriwood*, 2006 WL 3825291, at *5 ("The

expert will then execute a confidentiality agreement agreed to be the parties and sign a copy of and abide by the protective order in place in the instant action."). Nor does the proposal address the serious concern that Delta is an airline, whose systems contain highly confidential data relating to air transportation security procedures that have been designated as Sensitive Security Information (SSI) by the Transportation Security Agency. Such information is subject to strict disclosure restrictions imposed by TSA and unauthorized disclosure is prohibited by TSA's regulations codified at 49 C.F.R. Part 15.

- Communications with Plaintiffs – Plaintiffs' proposal does not specify that Plaintiffs' IT vendor's communications with Plaintiffs and their counsel will be limited to specified reports regarding the systems accessed and the types or quantity of any recovered files, and does not prohibit discussions between the vendor and Plaintiffs or their counsel about the contents of any documents or files. *See Simon*, 194 F.R.D. at 642 ("The expert shall not disclose the contents of any files or documents to plaintiff or its counsel or other persons."; "all communications between the expert and plaintiff's counsel shall take place either in the presence of defendant's counsel or through written or electronic communication with a copy to defendant's counsel."); *Ameriwood*, 2006 WL 3825291, at *6 (expert to provide specific reports and notices to the non-producing party); *Cenveo*, 2007 WL 442387, at *2-3 (same); *Antioch*, 210 F.R.D. at 653 ("The expert will also maintain all information in the strictest confidence.").

Plaintiffs' failure to address any of these issues, all of which are revealed in their own cited cases, further highlights the impropriety their over-reaching motion.

### E. Conclusion

Plaintiffs' motion to compel is unprecedented and outrageous. Delta readily admits that it has made mistakes in discovery, but that should not open the door to the gamesmanship being pursued by Plaintiffs. Such tactics are not facilitating bringing this case to a resolution on the merits. They are not an effort to address a good faith discovery dispute. And, they certainly are not an effort to discover the truth. Plaintiffs' motion should be denied.

Sincerely,

Randall L. Allen

cc: Counsel of Record

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

1100 PEACHTREE STREET, NE

SUITE 800

ATLANTA, GEORGIA 30309-4516

(404) 681-3450

FACSIMILE: (404) 681-1046

David H. Flint                                                  E-Mail: dflint@swfllp.com

Direct Dial: (404) 954-9843

November 16, 2012

Via E-mail to julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303-3309

      RE:    *In re Delta/AirTran Baggage Fee Antitrust Litigation*, No. 1:09-md-2089

Dear Judge Batten:

      Plaintiffs' motion to compel should be granted. Delta has not conducted a diligent search of recoverable deleted items, which are a source of non-duplicative responsive documents. Plaintiffs' proposed search for recoverable deleted items (as opposed to Delta's mischaracterization of Plaintiffs' proposal) is reasonably calculated to lead to the discovery of admissible evidence and includes proper safeguards for protecting confidential or privileged information.

      In its November 9, 2012 letter to the Court ("Delta Letter"), Delta disclosed for the first time that its vendor searched 26 hard drives for recoverable deleted items.[1] Delta does

---

[1] Plaintiffs were surprised by Delta's disclosure, as Plaintiffs had previously asked Delta eight times whether it had searched for recoverable deleted items. *See* E-mail from D. Low to R. Allen (Oct. 8, 2012), Ex. 1 at 8; E-mail from D. Low to R. Allen (Oct. 12, 2012), Ex. 1 at 7; E-mail from D. Low to R. Allen (Oct. 17, 2012), Ex. 1 at 6; E-mail from D. Low to R. Allen (Oct. 19, 2012), Ex. 1 at 4; E-mail from D. Low to R. Allen (Oct. 21, 2012), Ex. 1 at 2; E-mail from D. Low to R. Allen (Oct. 22, 2012), Ex. 1 at 1; E-mail from D. Low to R. Allen (Oct. 23, 2012), Ex. 2 at 8-9; E-mail from D. Low to R. Allen (Nov. 4, 2012), Ex. 2 at 2.

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 2
November 16, 2012

not explain why other sources of recoverable deleted items were not searched (*e.g.*, backup tapes), or why other hard drives were not searched. Nor does Delta address whether and which deleted items on searched hard drives were recovered. Delta has also not responded to Plaintiffs' questions concerning the methodology used for the search, whose files were searched, and whether (and how many) documents were found.[2]

Rather than directly addressing the inadequacy of its discovery efforts, including its limited search of hard drives and other media, Delta attempts to shift the blame to Plaintiffs, asserting that Plaintiffs are acting in bad faith by pursuing irrelevant discovery. Delta's assertions are baseless. For the past two years, Delta has repeatedly assured Plaintiffs and the Court that no additional discovery is needed because it has produced all responsive documents. But with each passing round of discovery, Plaintiffs, the Court, and DOJ have learned of additional instances of spoliation and new sources of documents that Delta has failed to disclose and search. Considering the scope of Delta's discovery misconduct and spoliation, Delta has no basis to blame Plaintiffs, nor to complain that searching for recoverable deleted items is unwarranted.

Delta also asserts that Plaintiffs "fabricated out of whole cloth" this discovery dispute – *i.e.*, Delta accuses Plaintiffs of lying. (Delta Letter at 1). I assure the Court that Plaintiffs are being completely truthful in the presentation of this request for discovery. Rather, it appears that Delta is attempting to cast Plaintiffs in a negative light to obscure Delta's own shifting representations. In its September 24 opposition to Plaintiffs' September 12, 2012 motion to compel, Delta revealed for the first time that – in addition to the destruction of documents on backup tapes, hard drives, and other backups – Delta spoliated all executive server backups. This admission differed from Delta's deposition testimony. (The admission was also troubling to DOJ, as set forth in the October 2 DOJ letter that was provided to the Court on October 3, 2012). Upon learning of this additional instance of spoliation and in an attempt to mitigate the harm from Delta's spoliation, Plaintiffs raised the issue of recoverable deleted items. Such a response is not "fabricat[ing]" a dispute, but is simply seeking reasonable follow-up discovery related to Delta's discovery misconduct. Given the history here, and the expanding list of spoliated documents, discovery of recoverable deleted items is necessary and appropriate.

---

After initially refusing to respond at all, Delta represented only that it "may have" searched relevant hard drives for recoverable deleted items. E-mail from D. Low to R. Allen (Oct. 23, 2012), Ex. 2 at 8.

[2] *See* E-mail from D. Low to R. Allen (Nov. 12, 2012), Ex. 2 at 1.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 3
November 16, 2012

Finally, in a striking tone, Delta makes inaccurate and perplexing accusations that Plaintiffs' "never-ending discovery" has contributed to "[t]he discovery problems that currently exist in this case." (Delta Letter at 1). Again, Delta's "blame the Plaintiffs" tactic is misplaced. While Plaintiffs' discovery efforts have revealed repeated discovery problems, the cause of those problems rests with Delta. Delta itself spoliated documents. Delta itself knowingly made false representations to the Court, Plaintiffs, and DOJ. And Delta itself has not been forthcoming about the existence of additional sources of responsive documents. Because Delta's accusations and misrepresentations are largely irrelevant to the question at hand, Plaintiffs respond to those accusations and misrepresentations in Appendix A rather than in the body of this letter.

**Recoverable Deleted Items Are Discoverable**

Delta disputes that it had a duty to search for recoverable deleted items and has refused Plaintiffs' request that it conduct a diligent search for those items.[3] However, Delta is unable to cite any cases to rebut those cited by Plaintiffs finding that such a duty exists.[4] Further, Delta represents that it previously conducted a forensic search of a limited number of hard drives for recoverable deleted items, implicitly acknowledging its duty to conduct such a search.

### *I. Plaintiffs' Interest in Direct Access to Unique Sources of Responsive Documents Outweighs the Burden on Delta, Especially in Light of Delta's Discovery Misconduct*

Rule 26(b)(2)(B) provides that "[o]n motion to compel discovery [of electronically stored information], the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Thus, a request for direct access to electronic systems for purposes of recovering deleted items "requires a weighing of defendants' burden in producing the information sought against plaintiff's interest in access

---

[3] E-mail from R. Allen to D. Low (Oct. 19, 2012), Ex. 1 at 3 (arguing that Plaintiffs misinterpreted case law on the issue); E-mail from D. Low to R. Allen (Oct. 23, 2012), Ex. 2 at 8-9 (discussing Delta's refusal to agree to conduct a diligent search for recoverable deleted items).

[4] Letter from D. Flint to J. Batten at 1 (Nov. 1, 2012) (citing *Wells v. Xpedx*, 8:05-CV-2193TEAJ, 2007 WL 1200955, at *1 (M.D. Fla. Apr. 23, 2007); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002)).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 4
November 16, 2012

to that information." *Cenveo Corp. v. Slater*, CIV.A.06-CV-2632, 2007 WL 442387, at *2 (E.D. Pa. Jan. 31, 2007) (citing Fed. R. Civ. P. 26(b)(2)(B)).

Courts have frequently granted motions to compel access to sources of recoverable deleted items when there has been discovery misconduct. (Letter from D. Flint to J. Batten at 3 (Nov. 1, 2012) (citing cases)). Delta attempts to distinguish the cases cited by Plaintiffs on two grounds. First, Delta argues that "[m]ost" of the cases cited by Plaintiffs involved computer fraud or IP disputes. (Delta Letter at 6). But this is irrelevant. Searches for recoverable deleted items are often ordered in the context of computer fraud or intellectual property disputes because the balancing test weighs more heavily in favor of access in such cases (because there is a strong nexus between the data to be searched and the claims at issue).[5] However, this does not mean that forensic searches are exclusive to these types of cases. Rather, courts have ordered searches for recoverable deleted items in other types of cases if the balancing test weighs in favor of access.[6]

Second, Delta argues that "[o]nly two of the cited cases involved discovery failures," and that the discovery ordered in these two cases was "narrowly tailored to the discovery deficiency." (Delta Letter at 6 (citing *Treppel* and *Nacco*)). But at least four of the cases cited in Plaintiffs' November 1 letter involve discovery failures,[7] and discovery failures often

---

[5] *Antioch Co.*, 210 F.R.D. at 652 (granting motion to compel where "the Defendants may have relevant information, on their computer equipment, . . . which might be relevant to the Plaintiff's claims"); *Cenveo Corp.*, 2007 WL 442387, at *2 (granting motion to compel and citing "close relationship between plaintiff's claims and defendants' computer equipment").

[6] *See, e.g., Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 686-88 (S.D. Fla. 2012) (breach of contract); *Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 258 F.R.D. 514 (S.D. Fla. 2009) (RICO claim); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 08-20424-CIV-UNGARO, 2009 WL 982460 (S.D. Fla. Apr. 9, 2009) (breach of contract and tortious interference).

[7] *See Nacco Materials Handling Group, Inc. v. Lilly Co.*, 278 F.R.D. 395, 406 (W.D. Tenn. 2011); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008); *Ameriwood Indus., Inc. v. Liberman*, 4:06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), amended by 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) ("[D]iscrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive."); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) ("Plaintiff has shown in its motion papers some troubling discrepancies with respect to defendant's document production.").

Page 5
November 16, 2012

weigh heavily in decisions to order forensic searches.[8] Courts have recognized that discovery is sufficiently narrow if it is limited – as is Plaintiffs' request – to sources of documents that are reasonably likely to contain responsive documents.[9] In *Nacco*, for example, the plaintiff requested imaging of all of the defendant's hard drives at defendant's expense. The court granted the request with respect to the computers of custodians in two departments of the defendant company, but denied the request with respect to other departments, finding that "[a]s to the other departments, [plaintiff] has not established a sufficient connection to its claims."[10]

Consistent with the holding in *Nacco*, Plaintiffs are not requesting access to all of Delta's computer equipment, but have narrowly tailored their request to computer equipment that is reasonably likely to contain responsive recoverable deleted items from those custodians who have already been determined to be relevant to this case.[11]

Here, the balance of interests weighs in favor of Plaintiffs, as: (a) little burden will be imposed on Delta; (b) Plaintiffs have a strong interest in obtaining responsive recoverable deleted items; and (c) Plaintiffs will take adequate precautions to protect Delta's data.

Granting Direct Access to Plaintiffs Will Impose Little Burden on Delta

---

[8] *See, e.g., Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 448 (D. Conn. 2010) ("[I]t is the Defendants' apparent deceit, obstreperousness and destruction of relevant information, that the Defendants were required to maintain and preserve, that necessitates the retention of a neutral forensic computer expert"); *Preferred Care Partners*, 2009 WL 982460, at *15 ("[T]he undersigned cannot ignore Humana's documented discovery failings."); *Peskoff v. Faber*, 244 F.R.D. 54, 58-59 (D.D.C. 2007) ("The production, however, raises many questions as to its completion and the sufficiency of the searches performed.").

[9] *See Nacco*, 278 F.R.D. at 406; *Antioch*, 210 F.R.D. at 652 ("[W]e conclude that deleted information on Defendants' computer equipment, may well be both relevant and discoverable. As a consequence, we conclude that Antioch should be able to attempt to resurrect data which has been deleted from the Defendants' computer equipment, and therefore, we grant its Motion to Compel.").

[10] *Nacco*, 278 F.R.D. at 406-07.

[11] Delta argues that any search of backup tapes for recoverable deleted items should be limited to certain tapes. (Delta Letter at 9 (citing *Treppel* for the proposition that search should be limited to "tapes from specific locations for relevant periods of time")). Plaintiffs do not seek access to irrelevant data, but only access to those tapes, hard drives, or other data sources that are reasonably likely to contain responsive recoverable deleted items.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 6
November 16, 2012

  Granting Plaintiffs' motion will impose little burden on Delta. Plaintiffs are not asking Delta to conduct a forensic search itself, but only to make data available to Plaintiffs' vendor to conduct the search. Most or all relevant hard drives have already been imaged, and relevant backup tapes have been collected. Because images and backup tapes are not in active use, Plaintiffs' analysis will not interfere with any business operations, contrary to Delta's arguments. To the extent any active data sources are later determined to likely contain responsive recoverable deleted items, the parties will confer about how to minimize any disruption, and Delta will have the opportunity to seek a protective order before any alleged disruption occurs.

  In an attempt to overstate the burden, Delta inaccurately represents that Plaintiffs seek an open-ended search of all of Delta's electronic systems. (Delta Letter at 7). In reality, Plaintiffs request only that their vendor be provided access to data sources that are reasonably likely to contain responsive recoverable deleted items, such as hard drives or backup tapes containing relevant custodians' documents.[12] Besides hard drives and backup tapes,[13] Delta has failed to disclose what other data sources, if any, are likely to contain responsive recoverable deleted items. These may include, for example, the executive server backups or NAS backups, but Plaintiffs will not know whether these or any additional data sources contain recoverable deleted items until Delta provides additional information, and until Plaintiffs' IT vendor inspects potentially relevant electronic systems.[14]

---

[12] In addition to the hard drives that Delta did not search for recoverable deleted items, Plaintiffs request access to the 26 hard drives Delta purportedly searched to ensure that a proper search for responsive documents was conducted. To date, Delta has been unwilling to identify whether and how many documents were collected from these hard drives' recoverable deleted items.

[13] Delta has refused to answer questions Plaintiffs have asked that would help ascertain the likelihood that backup tapes contain recoverable deleted items in unallocated sectors. E-mail from D. Low to R. Allen (Nov. 4, 2012), Ex. 2 at 2. Plaintiffs' IT vendor believes that files from unallocated sectors of backup tapes are likely recoverable, but will need to inspect the tapes before making a more informed determination.

[14] For example, Delta has represented that some Atlanta e-mail servers may have been taken out of use in early 2009. Delta Response to Pls.' App. 2 at 1 (Sept. 24, 2012) ("Delta's servers have changed over time, and the servers without tapes [in June 2009] may not have been in use, [or] may have been backed-up onto another server"). If an Atlanta server with relevant 2008 documents was taken out of use in 2009, Delta presumably preserved the server or a backup of the server, and there may be recoverable deleted items on that server or backup.

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 7
November 16, 2012

      II. Plaintiffs Have a Strong Interest in Responsive Deleted E-mails and Documents

      Plaintiffs have a strong interest in the recoverable deleted e-mails and other files, as the search may uncover e-mails and other documents relevant to Delta's collusion with AirTran, and Delta's computers and backups have already been demonstrated to contain such evidence. *See Antioch Co.,* 210 F.R.D. at 651 (granting motion to compel access for purposes of searching for deleted items where "Antioch has offered some evidence that the Defendants use e-mail as a form of communication for their business" and defendants were not adequately preserving e-mails).

      Delta argues that there is no reason to believe that recoverable deleted items will include any unique responsive documents. (Delta Letter at 5). Delta previously made "myriad emphatic and unqualified assurances that it had produced absolutely every document in its possession, custody or control that Plaintiffs had requested."[15] This Court has already concluded that Delta's representations about the completeness of its document production were "woefully inaccurate."[16] In early 2012, Delta made additional representations about the completeness of its production,[17] but those representations were again contradicted by the subsequent discovery of numerous additional sources of responsive Delta documents, including backup tapes, executive server files, and documents collected in connection with the merger investigation. Every time Delta has represented that it has produced all responsive documents, additional sources of documents have been found, and unique responsive documents have been produced from those sources, totaling tens of thousands of pages.[18] Searching additional sources of potentially responsive data – *e.g.*, recoverable deleted items – will also likely result in the production of unique responsive documents.

      Delta has gone to great lengths to destroy or conceal responsive documents related to its conspiracy with AirTran. The list of Delta's discovery misconduct is long and growing. Delta destroyed numerous sources of responsive documents that should have been preserved, including e-mail backup tapes, executive server backups, file and print server backup tapes, and NAS backups. Delta's destruction has spanned from the time it received the DOJ CID

---

[15] Order at 7 (Feb. 3, 2012) (Dkt. #302).
[16] *Id.* at 42 n.13.
[17] Letter from R. Allen to J. Batten at 2 (Feb. 22, 2012) (arguing that "[no] further discovery is necessary to uncover missing or destroyed documents" and that "there is no legitimate purpose to be served by further discovery into Delta's 'document preservation, collection and production'").
[18] DLBFDOC 17170-74, Ex. 3 (listing dates and bates ranges of Delta's productions).

LAW OFFICES

## SCHREEDER, WHEELER & FLINT, LLP

Page 8
November 16, 2012

until *at least* 2011, when it destroyed 53 of the backup tapes that it had "discovered" in March 2011.[19] Delta never issued an adequate litigation hold notice,[20] and failed to suspend auto-deletion of e-mails for months after receiving the DOJ CID. These numerous holes in Delta's collection and production make it especially likely that recoverable deleted items will not be duplicative of previously produced documents. Moreover, Delta's repeated spoliation and concealment of relevant documents indicates that the evidence that Delta is hiding is likely to be unfavorable to Delta.[21]

Further, Delta itself searched for recoverable deleted items from some hard drives. Presumably, Delta would not have undertaken this search unless it believed that the search was reasonably likely to result in the discovery of admissible evidence.

### III. Plaintiffs Will Take Adequate Precautions to Ensure Protection of Delta's Data

Plaintiffs' proposal includes adequate precautions for Delta's confidential or privileged information. (Pls.' Letter at 4). Plaintiffs propose that its vendor be subject to the Court's order governing confidential information, and that a non-waiver order be entered related to Delta's disclosures. (*Id.*) In addition, Plaintiffs have proposed adopting the three-step protocol adopted in *Ameriwood*, 2006 WL 3825291, at *5-7. (*See id.* at 4 & n.10). A proposed order incorporating these protocols is attached.

Because Plaintiffs' request provides adequate protections for Delta's confidential or privileged information and Delta has not otherwise demonstrated an undue burden, Plaintiffs' interest in obtaining responsive recoverable deleted items outweighs the alleged burden on Delta.

In opposing Plaintiffs' motion, Delta relies almost exclusively on a Sixth Circuit case, *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008). In *Goetz*, forensic imaging was sought "predominantly for preservation purposes," *id.* at 459, not for purposes of locating recoverable deleted items. The proposed imaging would have involved federal law enforcement officers accompanying plaintiffs' computer expert into the offices and homes of

---

[19] E-mail from D. Low to R. Allen (Nov. 4, 2012), Ex. 2 at 2.
[20] Delta 30(b)(6) S. McClain Depo. Tr. 202:14-205:13 (Aug. 30, 2012), Ex. 4; E-mail from S. McClain (Feb. 3, 2009), DLBFDOC 1, Ex. 5 (litigation hold notice).
[21] "The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Nation-Wide Check Corp., Inc. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) (Breyer, J.).

LAW OFFICES

SCHREEDER, WHEELER & FLINT, LLP

Page 9
November 16, 2012

state officials, including high-ranking state officials, to make forensic images of both state-owned and privately owned hard drives. *Id.* at 458-61. The Sixth Circuit rejected the proposed forensic imagining, as "nothing in the record indicates that defendants are unwilling, or will refuse, to preserve or produce all relevant ESI," "less intrusive means are available to address the perceived discovery violations," the proposed imaging would result in "disruption of state business" and raised "issues of federalism and comity that are not present in typical civil litigation." *Id.* at 460-61.

Here, unlike in *Goetz*: Plaintiffs are not seeking access to data simply for preservation purposes, but are seeking to locate responsive documents that Delta has refused to search for on its own; Plaintiffs are not seeking access to state-owned or personally-owned hard drives; Plaintiffs' request will not result in disruption of Delta's business; less intrusive discovery sanctions have proven ineffective; and there are no federalism or comity concerns. *See Estate of Boles v. Nat'l Heritage Realty, Inc.*, No. 4:07-CV-99-SA-DAS, 2010 WL 3218386, at *2 (N.D. Miss. Aug. 7, 2010) (declining to follow *Goetz* where "[t]he present case presents none of the federalism and comity considerations present in *Goetz*").

Delta also cites to *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003), where, unlike here, there was no discovery misconduct. In denying direct access to electronic data, the court stated: "While some kind of *direct access might be permissible in certain cases*, this case has not been shown to be one of those cases. Russell is unentitled to this kind of discovery without – at the outset – *a factual finding of some non-compliance with discovery rules by Ford.*" *Id.* at 1317 (emphasis added). Here, unlike in *Ford Motor*, there have already been findings of discovery non-compliance, and discovery misconduct has recurred.

For the foregoing reasons, Plaintiffs' motion to compel should be granted.

Sincerely,

David H. Flint

cc:   All Counsel of Record

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Randall L. Allen        Direct Dial: 404-881-7196        Email: randall.allen@alston.com

November 16, 2012

**_Via Email to:_**
*julee_smilley@gand.uscourts.gov; alice_snedeker@gand.uscourts.gov*

Judge Timothy C. Batten, Sr.
c/o Ms. Julee Smilley and Ms. Alice Snedeker
1788 Richard B. Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30309-3309

       Re:    *In re Delta/AirTran Baggage Fee Antitrust Litigation*
                No: 1:09-md-2089

Dear Judge Batten:

      I am writing to report on two recent developments in discovery, one of which will hopefully resolve one of the issues raised in the Plaintiff's September 12, 2012 Motion to Compel.

      First, in my October 24, 2012 letter, I informed the Court that Delta located 29 additional back-up tapes that existed at the time of PWC's collection and review of back-up tapes in early 2011. Delta promptly scanned those tapes to determine the dates of the backup sessions on those tapes. Based upon those scans, Delta determined that 14 of the 29 tapes contained backup sessions from 2008 or early 2009. Delta restored those fourteen tapes to identify whether they contained email files for any of the previously agreed-upon custodians in this case. Delta processed those custodians' files so that they could be reviewed and responsive documents from those files produced. We are nearing completion of that effort, which will result in the production of a small number of additional responsive documents early next week. Although Plaintiffs have not yet had the opportunity to review the documents or express their view, Delta does not believe the additional documents extracted from the back-up tapes will have any material impact on the merits or discovery in this case.

      Second, as requested by Plaintiffs, Delta has decided voluntarily to scan the remaining back-up tapes collected by PWC in connection with its 2011 review.[1] Any of

---

[1] The only tapes from PWC's inventory that will not be scanned are the two sets of monthly backup tapes that were in the current rotation in 2011, and were returned to the rotation after being inventoried March 2011.

the tapes that contain backup sessions from potentially relevant servers from 2008 through March 2009 will be restored to identify any files of the previously agreed-upon custodians, and any responsive documents from those files will be produced. Scanning of the tapes collected by PWC during 2011 is one of the requests for relief contained in Plaintiffs' September 12, 2012 Motion to Compel, which should now be mooted by Delta's agreement to do so voluntarily.

Although Plaintiffs did not question Delta's decision to scan a subset of the PWC-collected tapes last year, much less ask that all such tapes be scanned, Delta hopes that its decision to do so will move the case forward to completion and reduce the areas of dispute. The processing of the tapes is already underway. We will report the results of this effort to the Court when it is completed.

If the Court has any questions, please do not hesitate to call on us.

Sincerely,

Randall L. Allen

cc: Counsel of Record

LEGAL02/33755315v1