UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: DELTA/AIRTRAN BAGGAGE FEE ANTITRUST LITIGATION | Civil Action No. 1:09-md-2089-TCB<br><br>ALL CASES |

**DELTA AIR LINES, INC.'S REPLY TO
PLAINTIFFS' AND PRECISION DISCOVERY'S RESPONSES TO
NON-PARTY TRUSTED DATA SOLUTIONS, LLC'S APPLICATION FOR
<u>PAYMENT OF FEES AND EXPENSES</u>**

Although Plaintiffs and Precision Discovery ("Precision") apparently disagree about who has a contractual obligation to pay Trusted Data Solutions, LLC ("TDS") – Precision says it is Plaintiffs' counsel, and Plaintiffs' counsel points the finger at Precision – one thing is clear: it is not Delta. Delta takes no position about whether the Court has jurisdiction to resolve that dispute. If Plaintiffs and Precision can work out that dispute amongst themselves, Delta remains willing to pay a portion of the reasonable fees actually due to TDS. However, Plaintiffs' and Precision's responses reinforce the conclusion that Delta should not be held equally responsible for TDS's more than $260,000 in fees, and instead confirm Precision's cavalier disregard for the costs incurred by TDS at

Precision's direction, and Plaintiffs' counsel's abdication of any responsibility for controlling the costs of their expert.

### 1. Precision's Response Confirms Mr. Pixley's "Money Is No Object" Approach and Disregard for the Court's Orders

Precision's response confirms that Mr. Pixley took a "money is no object" approach to his charge from the Court and disregarded the Court's Orders.

*First*, Precision's brief admits that TDS expressed concern to Mr. Pixley about the high cost of the backup tape processing performed at his direction, and that Mr. Pixley then assured TDS that there would be no problem with the amount. Pixley Decl. (Dkt. 425-4) ¶ 6.  While Mr. Pixley denies telling two TDS employees that more than $250,000 in fees were just a "drop in the bucket," and that "there will be no issue" so long as TDS's fees were less than $1 million, he admits that TDS expressed concern to him about the potential "sticker shock" of their fees, and that he told TDS such an amount would be dwarfed by the "few million dollars" incurred by Precision's e-discovery unit.  *Id.*   Mr. Pixley's hair-splitting explanation draws a distinction without a difference.  Even if Mr. Pixley did not use the exact phrase "drop in the bucket" to describe the more than a quarter of a million dollars in charges, he admits he gave comfort to TDS that its fees would not stand out against the backdrop of a "few million dollars," without informing Delta or seeking the Court's guidance.

***Second***, Precision's brief confirms the extraordinary and wasteful scope of the backup tape processing directed by Precision. In addition to re-processing dozens of backup tapes already processed by Delta, as well as hard drives of other extracted tape data (Precision Br. (Dkt. 425) at 7-10), Precision also confirms that Mr. Pixley instructed TDS to extract tape data for *hundreds of random Delta employees* under the guise of attempting to "determine whether potential new sources of data existed, *including new custodians*." *Id.* at 10 (emphasis added). Contrary to prior claims (but exposed by TDS), Precision now admits that this exercise was not limited to one tape – but instead non-custodian mailboxes were extracted from numerous tapes. *Id.* at 10-11 (Precision had TDS extract "the other mailboxes" (i.e., the non-custodian mailboxes) from tapes where the mailboxes had already been restored for the "relevant custodians"). Precision's claim that it "proceeded in this way in order to be as cost effective as possible" (*id.* at 8) is simply not credible in the face of TDS's more than $260,000 in charges. And contrary to Precision's argument, Precision had a strong financial motivation to have TDS process and extract as much tape data as possible – more data from TDS meant more data for Precision to process at $390/GB, which is, as the Court will recall, largely how Precision ran up approximately $5 million in fees.[1]

---

[1] Precision continues to argue that Delta's delay in delivering the tape data forced it

3

*Third*, Precision does not deny that it sent Delta's confidential data to a non-party vendor (TDS) weeks before entry of the Court's March 20, 2013 Order, in violation of its confidentiality obligations under the Court's November 19, 2012 Order.  Precision tries to downplay the significance of this transgression by claiming that the data on the hard drive sent to TDS on March 1, 2013 "was significantly less than one terabyte."  Precision Br. at 7.  But Precision misses the point.  The problem is that Precision sent Delta's confidential data to a third-party without telling Delta or the Court, and then concealed that fact from Delta and the Court during the process that led to the March 20 Order.

### 2. New Information Confirms That Plaintiffs' Counsel Abdicated Their Responsibility to Manage Their Expert's Work

Even though the TDS account was opened in the name of lead counsel Kotchen & Low, Plaintiffs' counsel vehemently disclaim any responsibility for the charges incurred by TDS by, among other things, re-hashing the same estoppel argument they advanced, but the Court rejected, in attempting to shirk their

---

to instruct TDS to re-process so much of the tape data because that was the only way to verify the reliability of eMag's work.  Precision Br. at 8-9.  Leaving aside the dispute over the alleged delay, Precision now admits that a more reasonable, cost-effective "sampling" approach was not only feasible, but that it allegedly employed such an approach in fishing for backup tape data for "new custodians."  *Id.* at 10.  Precision offers no explanation for why it did not use the same "sampling" approach to verify the eMag work.

responsibility for Precision's excessive fees: that "Delta – and not Plaintiffs – knew the volume of data that was delivered to TDS," and Plaintiffs' counsel "did not have visibility about what data sources were being produced to Precision." Plfs' Br. (Dkt. 426) at 2, 4.

This is no more persuasive than it was the last time Plaintiffs' attempted to shift responsibility to Delta. Plaintiffs' argument is contradicted by the parties' correspondence, which shows that *Plaintiffs' counsel*: (1) transmitted Precision's data requests to Delta, including the request for the backup tape data[2]; (2) hounded Delta about the completion of data requests[3]; (3) prevented Delta from "asking Pixley substantive questions" (Sept. 25, 2013 Order (Dkt. 394) at 16); and (4) "held the threat of additional motion practice over Delta's head" (*id.* at 16-17).

Plaintiffs' brief also reveals new inconsistencies between their and their expert's prior representations to Delta and the Court. For instance, Plaintiffs' counsel claim that they had "*no* involvement in TDS's work." Plfs' Br. at 9 (emphasis in original). But at the July 2013 hearing, Mr. Pixley testified that he told Plaintiffs' counsel what he had instructed TDS to do, including searching

---

[2] Delta Response to TDS Application, Ex. 5 (Dkt. 423-5), Mar. 17, 2013 E-mail from D. Low to R. Allen.

[3] *See, e.g.,* Plfs' Ex. C (Dkt. 426-3), Feb. 25, 2013 E-mail from D. Low to R. Allen.

5

backup tapes for "new custodians." July 24, 2013 Hr'g Tr. 125:10-126:5. Plaintiffs' counsel did not dispute Pixley's hearing testimony.

Similarly, Plaintiffs' counsel claim that they "attempted to control costs" and expressed concerns about the reasonableness of Precision's fees. Plfs' Br. at 9-10.[4] But that assertion stands in stark contrast to Plaintiffs' counsel's e-mails haranguing Delta for questioning Precision's work, and demanding that Delta immediately pay Precision's and TDS's exorbitant fees. *See* Sept. 25, 2013 Order, Exhibit 1 (attaching e-mails).[5]

---

[4] Plaintiffs claim that Precision's $390/GB processing charge reflected a discount of approximately 30% (Plfs' Br. at 5), but at the hearing Mr. Avery testified that the $390/GB rate was Precision's standard rate. July 24, 2013 Hr'g Tr. 85:5-12.

[5] Plaintiffs attach a previously undisclosed statement of work from Precision showing that Precision had anticipated their processing work to cost approximately $500,000. Plfs' Ex. A (Dkt. 426-1). Yet, when Precision's costs started spiraling out of control, Plaintiffs sat on their hands, belatedly forwarding the invoices to Delta, and apparently never asking Precision whether or how much more data it planned to process. Plfs' Br. 5-6, n.3 & n.6.

Dated: February 14, 2014						Respectfully submitted,[6]

                s/ Samuel R. Rutherford
                Randall L. Allen
                Georgia Bar No. 011436
                randall.allen@alston.com
                Samuel R. Rutherford
                Georgia Bar No. 159079
                sam.rutherford@alston.com
                ALSTON & BIRD LLP
                1201 West Peachtree Street
                Atlanta, GA 30309-3424
                Tel: 404-881-7196
                Fax: 404-253-8473

                James P. Denvir
                jdenvir@bsfllp.com
                Scott E. Gant
                sgant@bsfllp.com
                Michael S. Mitchell
                mmitchell@bsfllp.com
                BOIES, SCHILLER & FLEXNER LLP
                5301 Wisconsin Avenue, NW
                Suite 800
                Washington, DC 20015
                Tel: 202-237-2727
                Fax: 202-237-6131
                *Counsel for Defendant Delta Air Lines, Inc.*

---

[6] Pursuant to L.R. 7.1D, counsel for Delta certifies that this brief was prepared with a font and point selection approved in L.R. 5.1B.

7

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on this day the foregoing DELTA AIR LINES, INC.'S REPLY TO PLAINTIFFS' AND PRECISION DISCOVERY'S RESPONSES TO NON-PARTY TRUSTED DATA SOLUTIONS, LLC'S APPLICATION FOR PAYMENT OF FEES AND EXPENSES was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record who have appeared in this matter.

This 14th day of February, 2014.

s/ Samuel R. Rutherford
Samuel R. Rutherford
Georgia Bar No. 159079
sam.rutherford@alston.com
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: 404-881-7196
Fax: 404-253-8473

*Counsel for Defendant Delta Air Lines, Inc.*
