# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: DELTA/AIRTRAN BAGGAGE FEE ANTITRUST LITIGATION | CIVIL ACTION FILE NUMBER 1:09-md-2089-TCB<br><br>**FILED UNDER SEAL** |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DARIN N. LEE

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

I.    A *DAUBERT* ANALYSIS IS UNNECESSARY UNTIL AFTER CLASS
      CERTIFICATION ..................................................................................... 1

II.   BACKGROUND ......................................................................................... 3

III.  ARGUMENT ............................................................................................... 6

      A.    Dr. Lee's Opinions on the Relevant Legal Standards Are Outside His
            Expertise as an Economist. ............................................................... 7

      B.    Dr. Lee's Opinions on Theoretical Base Fare Offsets and
            Reimbursements Are Irrelevant as a Matter of Law .......................... 8

      C.    Dr. Lee's Opinions Should be Excluded Because They Do Not Fit the
            Facts of this Case and Are Unreliable ............................................. 10

            1.    Dr. Lee's Base Fare Reduction Opinion Does Not Fit the Facts
                  of This Case ........................................................................... 11

            2.    Dr. Lee's Other Opinions Should Be Excluded as Unreliable  17

IV.   CONCLUSION ......................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335 (S.D. Fla. 1999) ........ 7

*Am. Honda Motor Co. v. Allen*, 600 F.3d 813 (7th Cir. 2010) ................................ 1

*Berkson v. Gogo, LLC*, No. 14-CV-1199, 2015 WL 1600755 (E.D.N.Y. Apr. 9, 2015) ................................................................................................................ 10

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998) ........ 6, 8

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................ 6, 8, 10

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968) 9, 10, 19

*Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977) ..................................................... 9, 10

*In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283 (D. Minn. 1996) ... 8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935 (N.D. Ill. 2011) .............................................................................................. 10

*In re Chocolate Confectionary Antitrust Litig*, 289 F.R.D. 200 (M.D. Pa. 2012) .... 9

*In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677 (N.D. Ga. 1991) ........ 9

*In re Electronic Books Antitrust Litig.*, No. 11 MD 2293(DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) .............................................................................. 10

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ....................................... 9

*In re Northwest Airlines Corp.*, 208 F.R.D. 174 (E.D. Mich. 2002) ...................... 9

*Kansas v. UtiliCorp United Inc.*, 497 U.S. 199 (1990) ...................................... 9, 10

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014) ............................................................ 1

*Midwestern Mach. v. Nw. Airlines, Inc.*, 211 F.R.D. 562 (D. Minn. 2001) ............ 2

*Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990) ............... 7

*Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504 (S.D. Fla. 2013) ............................ 10

*Rink v. Cheminova, Inc*., 400 F.3d 1286 (11th Cir. 2005) ................................... 11

**Rules**

Fed R. Evid. 702 Advisory Committee Notes ....................................................... 6

Fed. R. Evid. 403 .................................................................................................. 6

Fed. R. Evid. 702 ...........................................................................................6, 8, 11

Plaintiffs move to exclude the opinions and testimony of Delta's proffered expert, Darin N. Lee, who has filed two reports related to class certification.  Dkt. #224-4; Dkt. #224-6.[1]  His opinions are neither relevant nor reliable, and should be excluded.

## I.    A *DAUBERT* ANALYSIS IS UNNECESSARY UNTIL AFTER CLASS CERTIFICATION

A full *Daubert* analysis is necessary before a ruling on class certification *only if* the expert's report or testimony is critical to class certification.  If the court does not rely on the challenged expert evidence to resolve any issue, there is no need to engage in a full *Daubert* analysis before resolving class certification.[2]

When it initially granted class certification in this litigation, the Court did not rely on Defendants' experts and therefore implicitly determined that the testimony of Defendants' experts was not critical to any class certification issue.  Although that Order has since been vacated, it is notable that the Court did not find it necessary to weigh the evidence presented by Defendants' proffered experts to reach its initial

---

[1] Dr. Lee also submitted a Merits Rebuttal Report (Dkt. #611-3).  That rebuttal report is devoted to responding to the Merits Report of Plaintiffs' expert Dr. Hal Singer, and in that report Dr. Lee disputes the game theory analysis and proposed methods of calculating damages offered by Dr. Singer.

[2] *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 n.7 (11th Cir. 2014); *see also Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) (district court must perform a full *Daubert* analysis before certifying the class "when an expert's report or testimony is critical to class certification").

conclusions. Instead, the Court found that "analysis and evaluation of Plaintiffs' proposed proof that Defendants conspired to impose the first-bag fee and that the resulting antitrust violation impacted the class 'will be done once for the benefit of the class and not repeatedly for each individual member.'"[3] The Court recognized that even if individualized proof was necessary on damages issues, this also did not preclude certification.[4]

While the initial class certification Order was vacated so that the Court could consider additional briefing, the Court's initial analysis and determinations were sound and well-reasoned, and the issues on which Delta proposes to submit Dr. Lee's testimony are not critical to class certification. As demonstrated by the vacated Order and Defendants' failure to cite Dr. Lee's opinions in their recent briefing, the Court can conduct the class certification analysis without a *Daubert* analysis because Lee's proffered testimony is not relevant to the issue of violation, and is not critical to impact or damages. *See generally* Vacated Order (Dkt. #549) (not referencing Dr. Lee a single time); Defs.' Jt. Supp. Br. in Opp'n to Class Cert. (Dkt. #553) (same).

---

[3] Dkt. #549, at 20-21 (quoting *Midwestern Mach. v. Nw. Airlines, Inc.*, 211 F.R.D. 562, 572 (D. Minn. 2001)).

[4] *Id.* at 21-22.

Because Dr. Lee's testimony is not critical to the class certification, it is unnecessary to consider this *Daubert* motion prior to ruling on class certification. Before trial, however, the motion should be granted for the reasons described herein.

## II.   BACKGROUND

This is a horizontal price-fixing case in which Plaintiffs seek to certify a class of similarly situated individuals and entities who paid a first bag fee as the result of an unlawful conspiracy between Defendants Delta and AirTran Airways, Inc. ("AirTran").   Plaintiffs seek an award of damages for first bag fees paid to Defendants from December 5, 2008, to November 1, 2014.[5]

Dr. Lee attempts to support Defendants' argument that their imposition of first bag fees is correlated with a reduction in average base fares.  Specifically, Dr. Lee conducted an analysis that attempts to demonstrate a correlation between the imposition of a first bag fee and a reduction in average fares across all major airlines that imposed a first bag fee in 2008 and 2009.[6]  Dr. Lee's analysis did not attempt to analyze or provide a result that is specific to Delta (or AirTran).

Dr. Lee admits that "there's all sorts of things that randomly influence fares." D. Lee 12/15/10 Depo. Tr. 170:5-6, Ex. A.  In late 2008 and early 2009, the economy

---

[5] *See* Plaintiffs' Reply to Defendants' Supplemental Class Certification Briefs at 1, 31-32 (Dkt. #607).

[6] Lee Report at ¶¶ 7, 10 (Dkt. #224-4).

was in "the most serious recession since the Great Depression."  Lee Surrebuttal
Report ¶ 4 at p.5 (Dkt. #224-6); D. Lee 12/15/10 Depo. Tr. 97:3-98:12, Ex. A.  Dr.
Lee concedes that the recession led to a decline in demand, and "[a]s a result of a
reduction in demand, the average realized fare that Delta received was lower." Lee
10/14/10 Depo. Tr. 99:14-17 (Dkt. #571).  "In a recession, there tends to be far less
business travel and so . . . the mix of travel . . . tends to be more tilted away from . .
. higher fare passengers."  D. Lee 12/15/10 Depo. Tr. 171:20-172:3, Ex. A.
Similarly, Dr. Lee admits that "when [fuel] prices go down, [airlines' prices] tend to
come down as well."  D. Lee 10/14/10 Depo. Tr. 25:13-17 (Dkt. #571).  Fuel prices
peaked in July of 2008, and then declined.  *Id.* at 109:7-11.  Airfares have also fallen
because the internet has made it easier for consumers to compare fares across
carriers.  *Id.* at 58:7-59:3.

In an econometric study not prepared for this litigation, Dr. Lee found that
"the impact of L[ow] C[ost] C[arrier] competition [on fares] is dramatic," and that
the "effect of legacy competition is slight."  *Id.* at 19:2-20:22 (quoting Darin Lee, *et
al.*, *Airline Competition and Domestic U.S. Airfares: A Comprehensive Reappraisal*
at 5 (June 2010), Ex. E).

Dr. Lee opines that – in stark contrast to contemporaneous documents and
testimony –first bag fees lowered average base fares and certain class members may
not have paid more overall because of the first bag fee or may have even benefitted.

4

Dr. Lee also states that other class members may not have been adversely impacted if they were subsequently reimbursed by a third party for their travel expenses, or if they checked two bags on Delta, where Delta reduced its second bag fee when it imposed its first bag fee.[7]  Dr. Lee also submitted a Surrebuttal Report (Dkt. #224-6) devoted to responding to criticisms of his model and opinions noted by Plaintiffs' expert, Dr. Hal Singer.

As discussed below, Dr. Lee's opinions are not relevant or reliable for several reasons and the Court should exclude them.  First, Dr. Lee's opinions on the relevant legal standard are outside the scope of his expertise as an economist.  Second, offsets and reimbursements are irrelevant as a matter of law.  Third, Dr. Lee's methodology is unreliable and irrelevant – *e.g.*,  it is not specific to Delta or AirTran, but instead purports to analyze the airline industry at large; it fails to account for relevant variables that clearly effect average prices (such as carrier-specific fuel costs); and fails to even consider relevant facts of this case, including evidence that contradicts his hypothesis.  Indeed, according to Dr. Lee, the Defendants' own reasons for lowering their average fares and evidence that first bag fees had no effect on fares are *irrelevant* to his analysis.  D. Lee 10/14/10 Depo. Tr. 127:13-128:3; 130:6-131:3

---

[7] Lee Report ¶ 7 (Dkt. #224-4).

(Dkt. #571); Anderson 10/6/10 Depo. Tr. 102:6-7 (Dkt. #569).[8]  In short, Dr. Lee's opinion is the type of litigation-driven, *post hac* rationalization of events of no utility to the Court and jury.

## III.   ARGUMENT

Expert testimony is admissible under Fed. R. Evid. 702 only if:

(1) the expert is *qualified* to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently *reliable* as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony *assists the trier of fact*, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1998) (emphasis added) (citing Fed. R. Civ. P. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). The burden of establishing these prerequisites lies with the proponent of the evidence.[9]

Expert testimony is also subject to the general evidentiary rules governing relevancy and admissibility, including Rule 403. "[G]iven the potential

---

[8] In his opening 65-page report, Dr. Lee cites only *a single* contemporaneous document, almost certainly because the contemporaneous evidence contradicts the very proposition that he seeks to support.  *See* D. Lee 10/14/10 Depo. Tr. 130:6-131:3 (Dkt. #571); *see generally* Lee Report (#224-4).

[9] *See* Fed R. Evid. 702 Advisory Committee Notes ("[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1335, 1340 (S.D. Fla. 1999).

### A.    Dr. Lee's Opinions on the Relevant Legal Standards Are Outside His Expertise as an Economist.

An economist's opinion "regarding the legal standards applicable to the case are outside of his competence as an economist . . .  and should be excluded." *City of Tuscaloosa*, 158 F.3d at 567 n.27.  An expert witness "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

Dr. Lee offers the opinion that because of purported offsetting benefits, "an analysis of the impact . . . would require a significant amount of class member-specific evidence . . . . [and] it would also be necessary to determine whether that proposed class member was reimbursed."  Lee Report ¶ 7 at 5-6 (Dkt. #224-4); *accord* Lee Surrebuttal ¶ 55 (Dkt. #224-6).  Dr. Lee also opines that different trips must be aggregated to calculate offsets, and that they should not be treated as discrete events.  Lee Surrebuttal ¶¶ 33, 38-39 (Dkt. #224-6) (rejecting as a "false premise[]" the possibility that "each trip should be treated as a discrete event" and opining that "One Must Consider All Trips In Assessing Whether or Not An Individual Class Member Was Harmed.").  But Dr. Lee's opinion on the legal standards applicable to the case are outside of his competence as an economist and should be excluded.  *City*

7

*of Tuscaloosa*, 158 F.3d at 567 n.27. Dr. Lee offers no basis for his opinion about the applicable legal standard. To the contrary, he admits that "I'm just not versed in the law of – of – what should or can't and can be recovered as – as a result of – of collusion." D. Lee 12/15/10 Dep. Tr. 72:22-24, Ex. A. Similarly, Dr. Lee admitted that he was not aware of a single case in which a court found that "damages from one fixed price can be offset from the price of another product or service." *Id.* at 23:10-24. And as discussed below, Dr. Lee's opinion misstates the applicable legal standard.

### B. Dr. Lee's Opinions on Theoretical Base Fare Offsets and Reimbursements Are Irrelevant as a Matter of Law

To be admissible under Rule 702, evidence must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Testimony that is unrelated to any issue in the case "is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

The primary focus of Dr. Lee's testimony is to attempt to demonstrate a correlation between the imposition of a first bag fee and a reduction in base fares and to show that any such fare changes varied among class members. But as a matter of law, any alleged "offsetting benefits" from base fare reductions are not relevant to antitrust injury in a horizontal price-fixing conspiracy. *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286-87 (D. Minn. 1996) ("In a horizontal price-fixing case . . . mitigation and offset generally do not affect the ultimate

measure of damages").[10]   Under long-standing Supreme Court precedent a direct purchaser is entitled to recover the full extent of any overcharge paid, regardless of what happens after the payment.  *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968); *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 217 (1990).[11]

This is so because a direct purchaser is injured the moment the purchaser pays the overcharge (the first bag fee here), and the possibility that the direct purchaser may pay less in another transaction, such as the plane fare, is not legally relevant.[12] In short, purported offsets to an antitrust overcharge do not eliminate the antitrust injury.[13]   Dr. Lee's opinions are directed to demonstrating that the antitrust

---

[10] *See* Pls.' Class Cert. Reply at 19-25 (#269) (analyzing case law); Pls. Supp. Class Cert. Reply at 14-16 (Dkt. #607) (same); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset").

[11] *See also In re Northwest Airlines Corp.*, 208 F.R.D. 174, 225 (E.D. Mich. 2002) (inquiry into reimbursement not relevant at the class certification stage); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 696 (N.D. Ga. 1991) (reimbursement issue "is not properly raised at this time as [it] goes directly to the merits").

[12] *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig*, 289 F.R.D. 200, 221 (M.D. Pa. 2012) ("an impacted customer" is "one who tak[es] at least one transaction at a supracompetitive price").

[13] *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset"); *In re Electronic Books Antitrust Litig.*, No. 11 MD 2293(DLC), 2014 WL 1282293, at *16-17 (S.D.N.Y. Mar. 28, 2014) (rejecting proposed offsets).

overcharge imposed here—the first bag fee—was correlated with an offset in Delta's base fares. Because any such purported offset is irrelevant as a matter of law, Dr. Lee's testimony on the point is similarly not relevant and it should be excluded because it merely serves to confuse the issues. *Daubert*, 509 U.S. at 591.

Similarly, Dr. Lee asserts that it is possible that numerous passengers were reimbursed, and that "in order to determine whether any given proposed class member was injured by adoption of the first bag fee, it would . . . be necessary to determine whether that proposed class member was reimbursed[.]" Lee Report ¶ 7 at 6 (Dkt. #224-4). But antitrust law provides standing to direct purchasers, and reimbursement is irrelevant under the law.[14]  Dr. Lee cites no authority to the contrary.

## C.    Dr. Lee's Opinions Should be Excluded Because They Do Not Fit the Facts of this Case and Are Unreliable

In applying Rule 702, the court acts as a "gatekeeper," admitting expert testimony "only if it is both reliable and relevant."[15]  When performing this function,

---

[14] *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968); *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 217 (1990); *Berkson v. Gogo, LLC*, No. 14-CV-1199, 2015 WL 1600755, at *36-37, 43-44 (E.D.N.Y. Apr. 9, 2015); *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 512 (S.D. Fla. 2013);  *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 967 (N.D. Ill. 2011).

[15] *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

the court "must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable…; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."[16]

### 1.   Dr. Lee's Base Fare Reduction Opinion Does Not Fit the Facts of This Case

There are two fundamental problems with Dr. Lee's opinion that a first bag fee somehow led to base fare reductions.  First, Dr. Lee's analysis is not specific to Delta or AirTran, and does not address the actual facts of this case.  Dr. Lee purports to analyze the *industry-wide* effect of first bag fees on base fares, including on carriers that did not engage in the collusive conduct of Delta and AirTran.  Dr. Lee's initial report failed to provide a single estimate of the alleged reduction in base fares that is specific to Delta or AirTran.  Dr. Lee explained that "a lack of data prevents one from applying the same econometric models to only Delta's fares," and that such an analysis would not "provide *reliable* carrier-specific estimates" because "there is not enough variability in the data."  Lee Report ¶ 45 & n.49 (Dkt. #224-4) (emphasis added).  In his surrebuttal report, Dr. Lee reversed course and did attempt to add a

---

[16] *Id*. at 1291-92.

11

Delta-specific variable, but he admitted in deposition that he would not "endorse in any way" the revised model and he would not agree that the revised model was reliable. [17]

Dr. Lee suggests that he has "reason to believe" that the impact of first bag fees on Delta's fares "would have *similar* characteristics" to the industry-wide impact of first bag fees.  Lee Report ¶ 45 (Dkt. #224-4) (emphasis added).  But if Dr. Lee had considered the Delta (and AirTran) specific facts of this case, he would have realized that the evidence contradicts his unsupported and unreliable belief that Defendants' conspiratorial imposition of first bag fees had the same effect on base fares as other airlines' unilateral imposition of first bag fees.  For example:

- Delta's CEO, Richard Anderson testified:  "I don't think [the first bag fees] had any impact on average[] fares."  R. Anderson 10/6/2010 Dep. Tr. 102:6-7 (Dkt. #557 at PX362).[18]

---

[17] Lee Surrebuttal Report ¶¶ 11-13 (Dkt. #224-6); D. Lee 12/15/10 Dep. Tr. 155:18-158:4, 161:15-16, Ex. A.

[18] *See also* P. Dailey 30(b)(6) 6/10/10 Dep. Tr. 17:4-6 (Dkt. #557 at PX362) ("At the time the fee was implemented, we didn't make an immediate corresponding reduction in price."); M. Rossano 11/5/10 Dep. Tr. 67:3-5 (Dkt. #574) ("Q. Are you aware of Delta lowering any of its fares as a result of charging a first bag fee? A. No."); *see also* J. Esposito 30(b)(6) 6/10/10 Dep. Tr. 62:11-13, Ex. B ("Q. Did the implementation of a first bag fee have any effect on capacity levels for Delta? A. No, it didn't . . . .").

- AirTran corporate representative Kevin Healy admitted that AirTran does not consider the revenue generated from the first bag fee in setting base fares. *See* K. Healy 30(b)(6) 6/3/10 Dep. Tr. 55:12-15 (Dkt. #559) ("Q: So there was no direct communication to people in the pricing group to lower prices because AirTran has introduced a first bag fee; is that right?  A: Not that I recall.").

- At their depositions in this case, the executives for Delta and AirTran testified uniformly, and unequivocally, that they did not consider the possibility of lowering base fares as part of their analysis of whether to impose a first bag fee.[19]

- The Value Proposition never once mentions the possibility that imposing the first bag fee would lead to reduced fares. *See generally* Value Proposition (Dkt. #556 at PX234) (Oct. 24, 2008).

---

[19] *See* Delta Sr. VP G. Grimmett Depo. Tr. 183:7-11 (Dkt. #565) ("Q. Did anyone suggest if we impose this fee, we can reduce . . . fares at all and drive demand?  A. No.  Q. That was never considered?  A. No."); P. Dailey Depo. Tr. 50:18-21 (Dkt. #557 at PX362) ("Q. Was there any discussion at Northwest of reducing base fares to counteract some of the risk of market share shift?  A. No."); AirTran CEO R. Fornaro Depo. Tr. 79:14-17 (Dkt. #362) ("Q. Were you having discussions about reducing base fares in connection with making a decision about whether to implement a first bag fee?  A. I'm not sure we discussed that[.]"); AirTran Sr. VP J. Smith Depo. Tr. 50:4-7 (Dkt. #557 at PX362) ("Q.  Have you ever discussed the possibility that at the same time AirTran imposed the first bag fee, that it would reduce airfares?  A. No, sir.").

13

- An internal Delta analysis in 2012 of first bag fees found that "[t]here were no corresponding pricing reductions in our fare structure directly initiated because of baggage fees."  E-mail from T. Hickey to D. Steadman *et al.* at 2 (Mar. 9, 2012), Ex. C.

- AirTran Senior Vice President Kevin Healy stated that a March 2009 study "validates the view that $15 [bag fee] is viewed as incremental[.]"  E-mail from K. Healy to R. Fornaro (Mar. 31, 2009), AirTran 1718223 (Ex. 2 to Pls.' Supp. Class Cert Br. (Dkt. #357)).

- In 2009, AirTran Vice President Kevin Healy asked an AirTran analyst to perform an "analysis of [AirTran] v. S[outhwest] head-to-head average fares, [and] pa[ssenger] share by quarter," with a goal of "identify[ing] any share shift or yield premiums [i.e., fare differences] attributable to bag fee v no bag fee."  E-mail from K. Healy to B. Munson (Aug. 26, 2009) (Dkt. #556-1 at PX352).  (Unlike AirTran, Southwest has not implemented a first bag fee).  The resulting analysis showed that AirTran's fares *increased* relative to Southwest's in the fourth quarter of 2008 and in the first quarter of 2009 despite AirTran's introduction of a first bag fee in December 2008.  *Id.*

14

- In explaining why AirTran did not conduct focus groups before implementing a first bag fee Kevin Healy recognized that the fee would represent an increase in "the cost of travel":

  > We don't really go out and highlight [to consumers] the fact that we're raising fares or increasing the cost of travel [through first bag fees].  It just doesn't make sense.  So, you know, that's sort of the delicate position of do you really want to do a focus group?  Because if you ask somebody do you want to pay for something that you're currently getting for free, you know, everyone's going to say no.

  K. Healy DOJ Tr. 195:6-13 (Dkt. #361-2).

- During the worst recession the airline industry has ever experienced, AirTran – in 2009 – made record profits.  As AirTran concedes, one principal driver of these profits was:  "ancillary revenue initiatives" – *e.g.,* the first bag fee.  *See* AIRTRAN 02070722-24 (Dkt. #556-1 at PX359) ("What Drove Our Record Profits in 2009? . . . Ancillary revenue initiatives").

Dr. Lee's failure to even consider this evidence – much less try to reconcile it with his opinion that the first bag fee led to base fare reductions – renders his opinions unreliable.

A second fundamental problem with Dr. Lee's analysis is that it attributes any unexplained decline in base fares that happened around the time the first bag fee was instituted to the imposition of the fee.  But in actuality, the decline could be explained

15

by numerous admittedly relevant factors that Dr. Lee did not control for in his model. D. Lee 12/15/10 Depo. Tr. 170:5-6, Ex. A ("there's all sorts of things that randomly influence fares.").   For example, Dr. Lee's analysis failed to account for carrier-specific fuel costs, route-specific fixed effects, capacity, carrier-specific trends, or factors that predate the challenged conduct.[20]   These factors, among others, could have a significant impact on base fares.[21]   Dr. Lee conceded the relevance of factors such as fuel costs in his deposition.[22]   And AirTran economist Eric Gaier included carrier-specific fuel costs in his published non-litigation work. Mem. in Support of Mot. to Exclude E. Gaier at 12 (Dkt. #617).

Indeed, when Plaintiffs' expert Dr. Hal Singer corrected Dr. Lee's regression model and added controls for other relevant explanatory factors such as fuel costs, the data demonstrated that first bag fees did *not* lead to fare reductions.[23]   Rather,

---

[20] *See* Lee 10/14/10 Dep. Tr. 112:14-116:14, 177:3-178:7, 183:10-16 (Dkt. #571); Lee 12/15/10 Dep. Tr. 55:19-24, Ex. A; Singer Am. Merits Report ¶¶ 135-37 (Dkt. #556-1 at PX398).

[21] *See* Dr. Singer's Amended Merits Report ¶¶ 132-144 (Dkt. #556-1 at PX398) (discussing corrections made to Dr. Lee's model to control for additional factors).

[22] *See* Lee 10/14/10 Depo. Tr. 25:12-17 (Dkt. #571) ("because fuel is a very large component of airline cost, that, you know, when fuel prices are very, very high, airlines essentially to cover the cost of that fuel and their prices tend to get elevated and when prices go down, they tend to come down as well").

[23] *See* Singer Class Cert Reply Report ¶ 9 (Dkt. #556-1 at PX378) ("When I add controls for additional potentially explanatory factors—such as fuel prices, and factors that predate the challenged conduct (and thus could not have been caused by it)—Dr. Lee's results are reversed."); *id.* at ¶¶ 27-35.

Defendants' collusive imposition of first bag fees is correlated with an *increase* in base fares.[24]

### 2.    Dr. Lee's Other Opinions Should Be Excluded as Unreliable

In addition to his analysis regarding base fare reductions, Dr. Lee offers opinions that some class members may not have been adversely impacted if they checked two bags (as Delta lowered its second bag fee at the same time it imposed a first bag fee) or if they were subsequently reimbursed for their travel expenses.[25]

Although Dr. Lee includes both of these opinions in his "Summary of Empirical Findings,"[26] neither is based on any empirical analysis nor supported by record evidence. Rather, Dr. Lee apparently has drawn these conclusions without basis, yet attempts to report them as having empirical support.

With respect to the second bag fee, Dr. Lee's report states that he has been "asked to *assume* that Delta would not have reduced its second bag fee had it not

---

[24] *See id.* Dr. Lee took issue with a "structural break" variable that was specific to Delta that Dr. Singer included in his model. However, as Dr. Singer explained, this variable was included to pick up a decline that Delta experienced that *predated* the bag fee and that was not explained by Dr. Lee's other independent variables. Dr. Singer included this "structural break" variable to "rule out the possibility that Dr. Lee's *bag fee* variable is merely picking up a trend that predates the bag fee, and thus could not have been caused by Defendants' imposition of first bag fees." *See* Singer Amended Merits Report ¶ 202 (Dkt. #556-1 at PX398) (citing Singer Class Cert Reply Report ¶¶ 29-35 (Dkt. #556-1 at PX378).

[25] Lee Report ¶ 10 (Dkt. #224-4) (emphasis added).

[26] *See id.*

implemented a first bag fee"[27] but there is no basis or supporting evidence for this assumption.[28]   To the contrary, Delta's $50 second bag fee was twice as much as any of its competitors charged, and Delta was concerned that its second bag fee was uncompetitive: "the highest" and "Least Customer Centric."[29]

Dr. Lee further opines that it is "likely" that numerous class members initially paid first bag fees out-of-pocket "but were subsequently reimbursed," and "suffered no economic harm."[30]   Again, this opinion does not have any basis or supporting evidence.  Dr. Lee does not identify class members who were reimbursed,[31] and in fact, there is no evidence that a significant number of class members were reimbursed.  His opinion about the existence of reimbursed class members is nothing

---

[27] *See id.* (emphasis added)

[28] Dr. Lee later cites one page from a 2009 deposition of Edward H. Bastian, for the proposition that it "appears to be the case" that the reduction of the second bag fee was linked to the imposition of the first bag fee.  *See* Lee Report ¶ 52 (Dkt. #224-4).

[29] Value Proposition at 3, 7 (Oct. 24, 2008) (Dkt. #556 at PX234).  While the Value Proposition lists United as charging a $50 second bag fee, United never charged a $50 second bag fee in 2008.  United had announced that it would increase its second bag fee to $50 effective on November 8, 2008, but United retracted the fee increase before it ever charged anyone the $50 fee.  E-mail from C. Short to J. Graham-Weaver *et al.* (Nov. 7, 2008), AirTran 028373327, Ex. D ("[U]nited . . . scrapped plans for their 50 buck second bag fee.").

[30] Lee Report ¶¶ 7, 51 (Dkt. #224-4).

[31] Lee 10/14/10 Dep. Tr. 121:18-122:5; 155:2-4 (Dkt. #571) ("Q. You're not an expert on reimbursement practices of employers, are you?  A. Only of the practices at LECG.").

more than an unfounded conclusion, which is in fact directly contrary to controlling law on this issue.[32]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the testimony of Defendant Delta's proffered expert, Darin Lee.

Respectfully submitted,                    Dated: November 6, 2015

/s/ Daniel L. Low
Daniel A. Kotchen                          James L. Ward, Jr.
Daniel L. Low                              Robert S. Wood
KOTCHEN & LOW LLP                          RICHARDSON, PATRICK,
1745 Kalorama Rd. NW                        WESTBROOK & BRICKMAN, LLC
Suite 101                                  P.O. Box 1007
Washington, DC 20009                       1037 Chuck Dawley Blvd., Bldg. A
dkotchen@kotchen.com                       Mt. Pleasant, SC 29465
dlow@kotchen.com                           jward@rpwb.com
                                           bwood@rpwb.com


R. Bryant McCulley                         Cale H. Conley
Stuart H. McCluer                          Georgia Bar. #181080
McCULLEY MCCLUER PLLC                       CONLEY, GRIGGS & PARTIN LLP
P.O. Box 505                               1380 West Paces Ferry Road NW
Isle of Palms, SC 29451                     #2100
bmcculley@mcculleymccluer.com              Atlanta, GA 30327
smccluer@mcculleymccluer.com               cale@conleygriggs.com

*Interim Co-Lead Counsel for*
*Plaintiffs*

---

[32] *See supra* Section III(B); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968).

19

David H. Flint
Georgia Bar No. 264600
Andrew Lavoie
Georgia Bar No. 108814
SCHREEDER WHEELER &
FLINT, LLP
1100 Peachtree Street, NE, Suite
800
Atlanta, GA 30309-4516
dflint@swfllp.com
alavoie@swfllp.com

*Interim Liaison Counsel for
Plaintiffs*

## <u>CERTIFICATION UNDER L.R. 7.1D</u>

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned counsel hereby certifies that the above and foregoing is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

So certified, this 6th day of November, 2015.

/s/Daniel L. Low
Daniel L. Low
KOTCHEN & LOW LLP
1745 Kalorama Rd. NW, Suite 101
Washington, DC 20009
dlow@kotchen.com

*Interim Co-Lead Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that on this day he filed the foregoing, under seal, with the Clerk of Court and caused the same to be delivered via e-mail to the following attorneys of record:

| Counsel for Delta Air Lines, Inc. | Counsel for AirTran Airways, Inc. |
|---|---|
| Randall Lee Allen<br>Sam Rutherford<br>Nowell Berreth<br>ALSTON & BIRD<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424<br>randall.allen@alston.com<br>sam.rutherford@alston.com<br>nberreth@alston.com<br><br>James P. Denvir<br>Scott Gant<br>Michael Mitchell<br>BOIES SCHILLER & FLEXNER LLP<br>5301 Wisconsin Avenue, N.W., Suite 800<br>Washington, DC 20015<br>jdenvir@bsfllp.com<br>sgant@bsfllp.com<br>mmitchell@bsfllp.com | Bert W. Rein<br>WILEY REIN LLP<br>1776 K Street N.W.<br>Washington, DC 20006<br>brein@wileyrein.com<br><br>Alden L. Atkins<br>Vincent van Panhuys<br>VINSON & ELKINS L.L.P.<br>2200 Pennsylvania Avenue, N.W.<br>Suite 500 West<br>Washington, DC 20037<br>aatkins@velaw.com<br>vvanpanhuys@velaw.com<br><br>Roger W. Fones<br>Josh Hartman<br>Lauren Navarro<br>MORRISON & FOERSTER LLP<br>2000 Pennsylvania Avenue, N.W.<br>Suite 600<br>Washington, DC 20006<br>rfones@mofo.com<br>jhartman@mofo.com<br>lnavarro@mofo.com<br><br>Thomas W. Rhodes<br>William Parker Sanders<br>SMITH, GAMBRELL & RUSSELL, |

| | LLP<br>Suite 3100, Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>trhodes@sgrlaw.com<br>psanders@sgrlaw.com |
| --- | --- |

So certified, this 6th day of November, 2015.

/s/Daniel L. Low
Daniel L. Low
KOTCHEN & LOW LLP
1745 Kalorama Rd. NW, Suite 101
Washington, DC 20009
dlow@kotchen.com

*Interim Co-Lead Counsel for Plaintiffs*