# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| IN RE: DELTA/AIRTRAN BAGGAGE FEE ANTITRUST LITIGATION | CIVIL ACTION FILE NUMBER 1:09-md-2089-TCB<br><br>**FILED UNDER SEAL** |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. ANDREW DICK

# **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................... i

TABLE OF AUTHORITIES ................................................................................. ii

I. INTRODUCTION ........................................................................................1

II. FACTS .........................................................................................................2

III. LEGAL STANDARD..................................................................................4

IV. ARGUMENT ...............................................................................................5

    A.    Dr. Dick's Heightened Legal Standard and Three New Criteria for Collusion Are Outside His Competence as an Economist and Contrary to Law........................................................................................... 5

    B.    Dr. Dick's Opinion That Delta Would Rationally Ignore AirTran's Public Statements Is Not Based on Any Reliable Methodology and Is Contradicted by the Facts of the Case ............................................. 11

    C.    Dr. Dick Should Not Be Allowed to Offer Opinions on Disputed Factual Issues Unrelated to His Economic Expertise........................ 14

V. CONCLUSION .........................................................................................20

# **TABLE OF AUTHORITIES**

## Cases

*Am. Tobacco Co. v. United States*, 328 U.S. 781 (1946) ........................................ 9

*Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488 (S.D.N.Y. 2005).. 10

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998)........4, 6

*Cook v. Sheriff of Monroe County*, 402 F.3d 1092 (11th Cir. 2005) ..................... 15

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................4, 5, 13

*Esco Corp. v. United States*, 340 F.2d 1000 (9th Cir. 1965) ................................... 8

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002).... 10

*In re Medical X-Ray Film Antitrust Litig.*, 946 F. Supp. 209 (E.D.N.Y. 1996)....... 8

*In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 520930 (N.D. Ohio Feb. 9, 2015) ................................................................................. 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)............7, 8

*Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990) ............... 4

*United States v. Falcon*, 245 F. Supp. 2d 1239 (S.D. Fla. 2003) ....................15, 19

*Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287 (11th Cir. 2003).....6, 7, 8

## Other Authorities

Bruce Chapman, *Common Knowledge, Communication, and Public Reason*, 79 CHI.-KENT L. REV. 1151 (2004) ...................................................................... 13

Dennis W. Carlton, et al., *Communication Among Competitors: Game Theory and Antitrust*, 5 GEO. MASON. L. REV. 423  (1997) ................................................ 13

Tom Ginsburg & Richard McAdams, *Adjudicating in Anarchy: An Expressive Theory of Int'l Dispute Resolution*, 45 WM. & MARY L. REV. 1229 (2004) ...... 14

**Treatises**

VI PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW 136 (3d ed. 2010)
.................................................................................................................. 9

# I.   <u>INTRODUCTION</u>

Defendant AirTran Airways, Inc. ("AirTran") has designated Andrew R. Dick as an expert witness in economics to testify on merits issues.  Unless the Court intends to rely on any of Dr. Dick's challenged opinions in deciding summary judgment, it need not decide this motion before ruling on Defendants' pending summary judgment motions.

At least three of the opinions offered by Dr. Dick fail to comport with the requirements of *Daubert*, and should be excluded.  First, Dr. Dick suggests three criteria that he claims should be present as a precondition to a jury finding that an antitrust conspiracy existed.  But Dr. Dick's criteria are inconsistent with the applicable legal standard, are flawed, and will not assist the jury.  Second, Dr. Dick asserts that Delta rationally would have ignored AirTran's invitation to collude.  But this opinion is contrary to the facts and evidence, which reflects that Delta did not ignore the invitation to collude, is not based on any reliable methodology, and would not assist the jury.  Third, Dr. Dick offers opinions on disputed factual issues without applying any economic analysis, improperly substituting his credibility determinations for those of the jury.

1

## II.   <u>FACTS</u>

Dr. Dick testified that: "in the majority of routes [] the most significant competitor to AirTran is Delta."  A. Dick 2/25/11 Dep. Tr. 91:19-21 (attached as Ex. 1).  "[T]he record is – is consistent with AirTran thinking that . . . it would only be profitable . . . to introduce its own first bag fee if Delta was also charging . . . ."  *Id.* at 132:10-15.  "[L]ower input costs generally will be followed over some time period by – by a reduction in price[,]" *id.* at 162:15-17, including a decline in a "significant input cost like fuel".  *Id.* at 196:13-14.  "[G]enerally a decline in demand will . . . be associated with a decline in price."  *Id.* at 171:7-9.

In late 2008, after fuel prices had fallen dramatically, and during a major economic downturn causing decreased demand, Defendants both announced a $15 first bag fee, effective on the same date.  Plaintiffs allege that Delta and AirTran colluded to impose first bag fees through a variety of collusive private and public communications, including a collusive invitation made by AirTran's CEO, Robert Fornaro, on an October 23, 2008 investor earnings call.  In direct response to Mr. Fornaro's October 23 collusive invitation, Delta materially revised its internal Value Proposition analysis on October 24 to reflect a 90% likelihood (rather than a 50%

2

likelihood) that AirTran would follow if Delta imposed a first bag fee,[1] concluding for the first time that a first bag fee would likely be profitable for Delta.[2]  On October 27, 2008, after discussing the internal Value Proposition analysis and Mr. Fornaro's statements, Delta's Corporate Leadership Team decided to adopt the first bag fee.[3]

AirTran has offered Dr. Dick as an expert witness on the merits.  Dr. Dick offers three main opinions: that three criteria should be added to the legal standard to prove a conspiratorial agreement; that Delta rationally would have ignored AirTran's invitation to collude; and that certain issues of disputed facts should be

---

[1] Value Proposition at 16 (Oct. 24, 2008) (Dkt. #556 at PX234) (reflecting 90% probability that AirTran would impose a first bag fee if Delta imposed one); Value Proposition v4 at 15 (Oct. 22, 2008) (Dkt. #556 at PX213) (reflecting 50% probability); S. Springer 6/16/09 DOJ Dep. Tr. 170:22-178:15, 216:3-217:6, 225:16-226:13, 247:8-249:17; G. Hauenstein 9/30/10 Dep. Tr. 124:14-125:15 (Dkt. #567) (stating that the 90 percent probability to match estimate in the Value Proposition was "indicative of a high confidence level that [AirTran] would match after [] [Mr. Fornaro's] statement").

[2] *Compare* Value Proposition v4 at 15 (Oct. 22, 2008) (Dkt. #556 at PX213), *with* Value Proposition at 16 (Oct. 24, 2008) (Dkt. #556 at PX234). *See also* S. Springer 6/16/09 DOJ Dep. Tr. 225:8-18, 226:9-13 (Dkt. #368-2).

[3] E-mail from G. Hauenstein to R. Anderson (Oct. 24, 2008) DLTAPE 3257 (Dkt. #556 at PX223); E. Bastian 9/17/10 Dep. Tr. 49:7-17, 55:2-12, 58:20-60:13 (Dkt. #564); E. Bastian 10/27/09 DOJ Dep. Tr. 76:13-14, 77:6-9 (Dkt. #366).

resolved in Defendants' favor.  In forming his opinions, Dr. Dick considered only a small subset of the material evidence.[4]

### III.   <u>LEGAL STANDARD</u>

The Eleventh Circuit has held that expert testimony is admissible under Fed. R. Evid. 702 only if "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  Testimony that is unrelated to any issue in the case "is not relevant and, ergo, non-helpful."  *Daubert*, 509 U.S. at 591 (quotation and citation omitted).

An economist's opinion "regarding the legal standards applicable to the case are outside of his competence as an economist . . . and should be excluded." *City of Tuscaloosa*, 158 F.3d at 567 n.27.  An expert witness "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

---

[4] *Compare* Pls.' Statement of Additional Material Facts (Dkt. #554-3) (citing hundreds of contemporaneous documents), *with* A. Dick Report Ex. 2 at 2 (listing discovery materials considered, consisting of multiple "Airline fees" spreadsheets and 27 other documents) (attached as Ex. 2).

Proposed expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (quotation and citation omitted); *see also* Fed. R. Evid. 702(d) (requiring that the expert witness "has reliably applied the principles and methods to the facts of the case").

## IV.   <u>ARGUMENT</u>

The Court should exclude three discrete areas of testimony offered by Dr. Dick that are contrary to law, unreliable, or do not fit the facts of this case, namely: (a) criteria offered by Dr. Dick for finding collusion; (b) Dr. Dick's opinion that Delta would rationally ignore AirTran's invitation to collude; and (c) Dr. Dick's opinions on disputed issues of fact.

**A.    Dr. Dick's Heightened Legal Standard and Three New Criteria for Collusion Are Outside His Competence as an Economist and Contrary to Law**

Dr. Dick manufactures three criteria that he asserts must be met before collusion can be found:  "One is the mutual exchange of assurances leading to an agreement or its equivalent; second is that there has to be a means to detect deviations or cheating from that . . . agreement; and the third is that there has to be credible threats of punishment for deviations or cheating from the . . . agreement." A. Dick. 2/25/11 Dep. Tr. 21:12-20, Ex. 1; *see also* A. Dick Report ¶¶ 32-36, ¶¶ 122-

35, Ex. 2.  Dr. Dick suggests that, before a conspiracy can be found, each of these three requirements must be proven by a standard higher than a preponderance of the evidence: "[t]here has to be evidence to indicate that there's a . . . – *high likel[ihood]* that each of those criteria is met."  A. Dick. 2/25/11 Dep. Tr. 22:5-8, Ex. 1 (emphasis added).

Dr. Dick's opinion regarding the criteria necessary for collusion should be excluded for several reasons.  First, Dr. Dick's opinion "regarding the legal standards applicable to the case are outside of his competence as an economist . . . and should be excluded."  *City of Tuscaloosa*, 158 F.3d at 567 n.27.

Second, Dr. Dick misstates the applicable legal standard by advocating for a heightened standard, *i.e.*, a "high likelihood that each of [his three] criteria is met" before inferring an agreement, which Defendants adopt in their summary judgment briefs. But at summary judgment, Plaintiffs need only demonstrate that there is a "'genuine issue as to any material fact.'"  *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)).  In an antitrust case, plaintiffs are required to offer evidence of one or more "plus factors" that tend to prove a conspiracy because "consciously parallel behavior alone leaves the circumstantial evidence of collusion in equipoise[.]" *City of Tuscaloosa*, 158 F.3d at 571.  The court should "evaluate the evidence proffered by the plaintiffs not to

6

ascertain its credibility, but instead to determine whether that evidence, *if credited*, 'tends to' establish a conspiracy...." *Williamson Oil*, 346 F.3d at 1301 (citation omitted) (emphasis added).

Defendants argue that at summary judgment the court should apply a heightened standard similar to what Dr. Dick advocates, but a heightened standard is only applicable to antitrust cases if the alleged conspiracy is economically implausible, namely: "*if [defendants] had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) (emphasis added); *see also Williamson Oil*, 346 F.3d at 1310, 1323 (stating in a case involving an economically "utterly implausible" conspiracy that "if a benign explanation for the action [alleged to be contrary to a defendant's economic self-interest] is equally or more plausible than a collusive explanation, the action cannot constitute a plus factor.") (quoted in Delta Summ. J. Reply at 26 (Dkt. #603); AirTran Summ. J. Reply at 29 (Dkt. #604); AirTran Summ. J. Sur-Surreply at 3 (Dkt. #624)).[5] In *Matsushita* and *Williamson*

---

[5] *City of Tuscaloosa*, 158 F.3d at 571 n.35 (reversing district court's imposition of requirement that plaintiffs "'exclud[e] the possibility of independent action'") (quotation omitted).

*Oil*, unlike here, the range of permissible inferences was limited because the plaintiffs had alleged conspiracies involving price-*cutting* that were economically implausible, and the courts wanted to avoid deterring procompetitive "price-cutting activities." *Matsushita*, 475 U.S. at 578, 593-94, 597-98 (alleged conspiracy "to fix and maintain *low* prices"); *Williamson Oil*, 346 F.3d at 1320-21, 1323 (economically "utterly implausible" conspiracy). Because Plaintiffs allege an economically sensible horizontal conspiracy to *increase* prices, Dr. Dick's suggestion of a heightened standard does not apply under the facts of this case.

Third, the law does not require a mutual exchange of assurances in an antitrust conspiracy.[6]  Rather, collusion occurs when an invitation to collude is accepted through a company's responsive business practices.  *See Esco Corp. v. United States*, 340 F.2d 1000, 1008 (9th Cir. 1965) ("assurances . . . are unnecessary. . . if a course of conduct . . . once suggested or outlined by a competitor in the presence of other competitors, is followed . . .").[7]  Even contract law does not require a mutual

---

[6] One of the articles relied on by Dr. Dick recognizes that "the law does not require the exchange of explicit mutual assurances."  Gregory J. Werden, *Economic Evidence on the Existence of Collusion: Reconciling Antitrust Law with Oligopoly Theory*, 71 Antitrust L.J. 719, 735 (2004) (citation omitted).

[7] *Accord In re Medical X-Ray Film Antitrust Litig.*, 946 F. Supp. 209, 216 (E.D.N.Y. 1996) ("'Acceptance by competitors, without previous agreement, of an invitation to participate in a plan [to fix prices]…is sufficient to establish an unlawful conspiracy under the Sherman Act.'") (quoting *Interstate Circuit, Inc. v. United*

exchange of assurances, and a price-fixing conspiracy applies a lesser standard in proving an agreement. VI PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW 136 (3d ed. 2010) ("Even the traditional contract offer can be accepted without words. Performance of a requested act can complete the contract (and initiation of performance can even constitute an implied promise to complete it). . . .The solicitor may simply be making a proposal and awaiting the accepting act of performance."); *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) (agreement for purposes of the Sherman Act only requires "a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement").

Fourth, Dr. Dick's second and third criteria – the existence of means to detect cheating, and credible threats of punishing deviations from the agreement – relates to the likelihood that existing conspiracies will be durable and effective, not whether a conspiratorial agreement exists.[8]  Courts have been cautioned to avoid this "trap"

---

*States*, 306 U.S. 208, 227 (1939); VI PHILLIP E. AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW 136 (3d ed. 2010) ("Verbal acceptance [of an invitation to collude] is not essential.").

[8] Dr. Dick suggests that there are no mechanisms for detecting and punishing deviations from an agreement to charge a first bag fee. A. Dick Report ¶¶ 134-35, Ex. 2.  But Delta and AirTran's pricing is publicly available.  And as an article cited by Dr. Dick recognizes, "[n]o one has yet invented a way to advertise price reductions which brings them to the attention of numerous customers but not to that of any rival." George Stigler, *A Theory of Oligopoly*, 72 J. POLITICAL ECONOMY 44,

of "failing to distinguish between the existence of a conspiracy and its efficacy." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 656 (7th Cir. 2002); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 520930, at *7, 22 (N.D. Ohio Feb. 9, 2015) (rejecting defendants' argument that the "absence of any ability to detect cheating" rendered the conspiracy implausible and denying defendants' summary judgment motion, finding that "[t]he Sherman Act proscribes effective as well as ineffective price-fixing conspiracies") (citation omitted).[9]

Fifth, Dr. Dick's testimony is internally inconsistent (and therefore unreliable), as he concedes that two of his three criteria are unnecessary to a finding of conspiracy. *Compare* A. Dick 2/25/11 Dep. Tr. 24:3-33:18, Ex. 1 (testifying that mutual assurances alone are sufficient), *with id.* at 21:12-22:8 (stating that all three of his criteria must be proven).[10]

---

47 (1964). "Once detected, the deviations . . . will be matched by fellow conspirators if they are not withdrawn." *Id.* at 46.

[9] *See also Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 515 (S.D.N.Y. 2005) (finding expert economist's testimony as to the appropriate test for anticompetitive conduct "runs counter to the applicable law and usurps [the court's] role in instructing the jury as to the appropriate legal framework").

[10] *See also* A. Dick Rebuttal ¶ 30 ("Economists have long recognized that the threat of future punishment is necessary (but not sufficient) to achieving a collusive agreement.") (attached as Ex. 3).

**B.      Dr. Dick's Opinion That Delta Would Rationally Ignore AirTran's Public Statements Is Not Based on Any Reliable Methodology and Is Contradicted by the Facts of the Case**

Dr. Dick asserts that "Delta would [] rationally ignore AirTran's [October 23, 2008 earnings call] announcement as being unreliable[,]" and that "AirTran's public statements could not support collusion."  A. Dick Report ¶¶ 120-21, Ex. 2.  Dr. Dick claims that "non-binding forward looking statements…[can only] influence strategic choices and facilitate reaching an agreement" if they are "self-signaling" and "self-committing".   *Id.* at ¶ 116 (emphasis omitted).   He defines "self-signaling" statements as those that "the listener believes that the speaker wants to make . . . *if and only if* it is true."  *Id.*  He defines "self-committing" as meaning that "*if* the statement is believed by the listener, *then* it creates incentives for the speaker to fulfill it."  *Id.*

Dr. Dick opines that AirTran's statement was neither self-signaling nor self-committing.  *Id.*  It is uncontroverted, however, that based on AirTran's October 23, 2008 earnings call, Delta revised its written analysis to reflect that there was a 90% likelihood that AirTran would follow Delta in imposing a first bag fee.[11]

---

[11] *Compare* Value Proposition v4 at 15 (Oct. 22, 2008) (Dkt. #556 at PX213) (50% probability to match), *with* Value Proposition at 16 (Oct. 24, 2008) (Dkt. #556 at PX234) (90% probability to match); G. Hauenstein 9/30/10 Dep. Tr. 124:14-125:15 (Dkt. #567) (stating that the 90 percent probability to match estimate in the Value

Immediately before the earnings call, Delta estimated a 50% likelihood of AirTran matching if Delta imposed a first bag fee,[12] which was not high enough for Delta to risk adopting the fee.[13]  After Delta changed the likelihood of AirTran matching, Delta for the first time found that it would likely be profitable for Delta to impose a first bag fee, and imposed the fee.[14]

Thus, regardless of whether Delta might "*rationally* ignore AirTran's announcement[,]" it is clear based on the facts of this case that Delta did not *actually* ignore AirTran's announcement.  A. Dick Report ¶ 120, Ex. 2 (emphasis added).  And the issue for the jury is not whether Delta rationally might have ignored AirTran's invitation to collude, but how Delta actually responded to it.  Thus, Dr. Dick's opinion does not fit the facts of the case and would not assist a jury, and should therefore be excluded.  *Daubert*, 509 U.S. at 591 (expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute") (quotation and citation omitted).

---

Proposition was "indicative of a high confidence level that [AirTran] would match after [] [Mr. Fornaro's] statement").

[12] Value Proposition v4 at 15 (Oct. 22, 2008) (Dkt. #556 at PX213).

[13] E-mail from G. West to M. Zessin, et al. (Oct. 23, 2008) DLBAG 11053 (Dkt. #557 at PX215) ("it[']s about a was[h] in terms of net revenue which would mean *we would not implement 1st bag fee*") (emphasis added)

[14] S. Springer 6/16/09 DOJ Dep. Tr. 225:8-18, 226:9-13 (Dkt. #368-2).

Further, Dr. Dick's opinion is not based on any reliable scientific methodology.  While he applies the "cheap talk" framework advanced by some economists, other economists (including Delta expert Dennis Carlton) have rejected that framework, and Dr. Dick offers no empirical evidence of its validity or reliability.[15]  *See, e.g.*, Dennis W. Carlton, et al., *Communication Among Competitors: Game Theory and Antitrust*, 5 GEO. MASON. L. REV. 423, 435 (1997) ("[C]heap talk can have an effect by revealing information. . . . If hearing the message [that a competitor will follow a price increase] increases the recipient's belief in the likelihood that its price increase will be matched, it makes the price increase more attractive."); Bruce Chapman, *Common Knowledge, Communication, and Public Reason*, 79 CHI.-KENT L. REV. 1151, 1185 (2004) (rejecting the "cheap talk" framework relied upon by Dr. Dick because "talk is not cheap; it has practical implications for what one must reasonably do, and for what others will reasonably expect one to do"); Tom Ginsburg & Richard McAdams, *Adjudicating in Anarchy: An Expressive Theory of Int'l Dispute Resolution*, 45 WM. & MARY L. REV. 1229, 1262-82 & n.101 (2004) (stating that "cheap talk" messages improve coordination).

---

[15] A. Dick Report ¶ 41 n.30, Ex. 2 (citing academic literature discussing "cheap talk").  *Daubert* requires that a Court consider the degree to which the relevant scientific community accepts the technique as reliable. *City of Tuscaloosa*, 158 F.3d at 562 n.16.

Dr. Dick concludes that AirTran's invitation to collude "fails" his "self-signaling" test because AirTran had an economic incentive to trick Delta into imposing a first bag fee by falsely stating on its earnings call that it would follow Delta in imposing a first bag fee if Delta acted as the leader, even if AirTran had already decided not to impose the fee or had not made a decision.  A. Dick Report ¶ 119, Ex. 2.  But Dr. Dick ignores substantial evidence that AirTran intended to signal Delta on its earnings call in order to encourage Delta to impose a first bag fee so that AirTran could likewise institute the fee.[16]

## C.    Dr. Dick Should Not Be Allowed to Offer Opinions on Disputed Factual Issues Unrelated to His Economic Expertise

"'[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person.  Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.'" *Cook v. Sheriff of Monroe County,* 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *United States v. Frazier,* 387 F.3d 1244, 1262-63 (11th Cir. 2004)).

---

[16] Pls.' Summ. J. Opp'n at 73 & n.195 (Dkt. #554)) (discussing AirTran's anticompetitive intent); Pls.' Statement of Add'l Material Facts ¶¶ 126-130 (Dkt. #554-3).

14

Dr. Dick reaches conclusions regarding disputed issues of fact without applying any economic analysis and without considering all the evidence,[17] improperly substituting his credibility determinations for those of the jury. *See United States v. Falcon*, 245 F. Supp. 2d 1239, 1245 (S.D. Fla. 2003) ("[A]bsent extreme or unusual circumstances, expert scientific testimony concerning the truthfulness or credibility of a witness is inadmissible because it invades the jury's province in determining credibility.") (citing *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996)).  For example, Dr. Dick offers opinions that:

- "Delta's impending merger with Northwest required harmonization of the merged entity's fee structure in the late fall of 2008."  A. Dick Report ¶ 87, Ex. 2.

  o But Dr. Dick provides no economic analysis in support of his conclusion, and fails to explain how, for example, AirTran and Southwest maintained separate first bag fee policies for years after those airlines merged.

---

[17] *Compare* Pls.' Statement of Material Facts (Dkt. #554-3) (citing hundreds of relevant exhibits), *with* A. Dick Report, Ex. 2 at 2-3 (listing limited discovery documents considered) (attached as Ex. 2).

- "AirTran's expansion into some leisure-oriented routes seems to have been facilitated by the introduction of the first bag fee."  A. Dick Report ¶ 138, Ex. 2 (reaching this conclusion without any economic analysis).

  o *But see* H. Singer Am. Rebuttal Report ¶ 102 (Dkt. #556-1 at PX400) ("If AirTran did in fact expand into new routes as a result of its imposition of a first bag fee, one would expect contemporaneous internal documents that support this assertion.  Dr. Dick can point to none.").

- "AirTran's forward-looking public statements lacked sufficient scope and specificity with respect to pricing to lead to . . . [a] meeting of the minds between AirTran and Delta."  A. Dick Report ¶ 122, Ex. 2.

  o But Dr. Dick does not support his characterization of AirTran's statements about first bag fees with any reliable economic test, and ignores the fact that, as laid out in Mr. Fornaro's invitation to collude, Delta led and AirTran followed in imposing a first bag fee, which was

16

for an identical amount[18] and effective the same date.  *See* H. Singer

Am. Merits Rebuttal Report ¶¶ 85-90 (Dkt. #556-1 at PX400).

- "AirTran's CEO Robert Fornaro apparently disregarded certain e-mails from airport station employees as 'a bunch of chatter[.]'" A. Dick Report ¶ 42 n.33, Ex. 2.

  - *But see* J. Smith 9/15/09 DOJ Dep. Tr. 83:3-10 (Dkt. #360) ("you could characterize the culture of the company as wanting to know everything that's going on: all the rumors, the gossips, the chatter; and the airports are good sources of that . . . so the culture is, we feed that Down South to Orlando without questioning the accuracy"); E-mail from R. Fornaro to R. Wiggins (July 14, 2008), AIRTRAN 56127-28 (Dkt. #557 at PX77) (asking to speed up first bag fee technology in response to information from a Northwest airport employee about Delta potentially imposing first bag fees at the end of the summer).

---

[18] Nonsensically, Dr. Dick argues that charging a first bag fee of $0 (rather than, *e.g.*, the $15 fee both Defendants adopted) would be consistent with an agreement to charge first bag fees.  A. Dick Report ¶ 123, Ex. 2.

- "Delta's incentives to adopt a first bag fee would not have been heavily influenced by AirTran's anticipated reaction.  AirTran was a relatively small competitor across Delta's route network."  A. Dick Report ¶ 90, Ex. 2.

  - *But see* Value Proposition at 16 (Oct. 24, 2008) (Dkt. #556 at PX234) (internal Delta analysis identifying AirTran as by far the largest variable in whether imposing a first bag fee would be profitable, with a projected swing in profitability of over $300 million depending on whether AirTran matched); E-mail from G. West to S. Gorman (Sept. 5, 2008) DLBF 187470 (Dkt. #557 at PX148) ("I assume we still want to hold until airtran moves?"); E-mail from P. Elledge to C. Phillips, *et al.* (Sept. 29, 2008) DLTAPE 6392 (Dkt. #557 at PX172) ("One key consideration is the risk when we are up against AirTran, JetBlue, Southwest"); E-mail from G. West to N. Shah, *et al.* (Sept. 5, 2008) DLBAG 9724 (Dkt. #557 at PX146) ("AirTran and jetblue don't charge [a first bag fee] and they are our key competitors in our main hubs.").

Similarly, Dr. Dick suggests that there was no market share shift when airlines imposed first bag fees in 2008,[19] ignoring Delta's own Value Proposition analysis

---

[19] A. Dick Report ¶¶ 78-81, Ex. 2.

demonstrating significant share shift, an internal Delta analysis in 2010 concluding that "[m]arket share is affected by bag fee differences," and Southwest's public statements that it was making significant market share gains from not charging first bag fees.[20]

Because Dr. Dick's conclusions regarding disputed fact issues are not based on any economic analysis, and are within the province of the jury, Dr. Dick's opinions on fact issues should be excluded. *Falcon*, 245 F. Supp. 2d at 1245 (S.D. Fla. 2003).[21]

---

[20] Value Proposition at 10 (Oct. 24, 2008) (Dkt. #556 at PX234); Bag Fees Update (Mar. 9, 2010 draft) DLBF 183065, at DLBF 183069 (finding that Southwest increased its revenue share by not charging first bag fees) (attached as Ex. 4); Southwest Airlines Q3 2008 Earnings Call Tr. (Oct. 16, 2008) DLBAG 19024 (Dkt. #556 at PX200) ("Anecdotally we can tell you all kinds of stories about customer reactions to our low fare no fees approach. . . . I feel like we're being rewarded for [not charging a first bag fee]."); Southwest Airlines Q4 2008 Earnings Call Tr. (Jan. 22, 2009) DLBAG 18708 (Dkt. #556-1 at PX319) ("We continue to out perform our competitors on revenue growth as evidenced once again here in the fourth quarter. And clearly, evidence that our No Hidden Fees campaign is working.").

[21] Many of Dr. Dick's factual assertions are inaccurate, or at least imprecise. For example, he asserts that "AirTran's CEO said publicly *in January 2008* at an investor conference, and again in October 2008 . . . that AirTran 'prefer[red] to be a follower in a situation rather than a leader,' but that if Delta introduced a first bag fee then AirTran 'would strongly consider it.'" A. Dick Report ¶ 84, Ex. 2 (emphasis added). But in January 2008, no major airline had announced a first bag fee -- American Airlines was the first to announce, in May 2008 -- and the record contains no evidence of public statements by AirTran's CEO about charging a first bag fee in January 2008. At an investor conference in *June* 2008, however, "AirTran CEO Bob Fornaro said at the conference his airline has not instituted the fee because it would

19

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the opinions and testimony of Dr. Dick should be excluded.

Respectfully submitted,                    Dated: November 6, 2015

/s/ Daniel L. Low
Daniel A. Kotchen                    James L. Ward, Jr.
Daniel L. Low                        Robert S. Wood
KOTCHEN & LOW LLP                    RICHARDSON, PATRICK,
1745 Kalorama Rd. NW                 WESTBROOK & BRICKMAN, LLC
Suite 101                            P.O. Box 1007
Washington, DC 20009                 1037 Chuck Dawley Blvd., Bldg. A
dkotchen@kotchen.com                 Mt. Pleasant, SC 29465
dlow@kotchen.com                     jward@rpwb.com
                                     bwood@rpwb.com


R. Bryant McCulley                   Cale H. Conley
Stuart H. McCluer                    Georgia Bar. #181080
McCULLEY MCCLUER PLLC                CONLEY, GRIGGS & PARTIN LLP
P.O. Box 505                         1380 West Paces Ferry Road NW
Isle of Palms, SC 29451             #2100
bmcculley@mcculleymccluer.com        Atlanta, GA 30327
smccluer@mcculleymccluer.com         cale@conleygriggs.com

*Interim Co-Lead Counsel for*
*Plaintiffs*

David H. Flint
Georgia Bar No. 264600
Andrew Lavoie

---

be 'pretty uncomfortable' competing in Atlanta with Delta, which doesn't charge the fee."  T. Reed, *Airlines Slow to Get on Board with Bag Fees*, TheStreet.com (June 19, 2008) AIRTRAN 64398-99 (Dkt. #556 at PX50).

Georgia Bar No. 108814
SCHREEDER WHEELER &
FLINT, LLP
1100 Peachtree Street, NE, Suite
800
Atlanta, GA 30309-4516
dflint@swfllp.com
alavoie@swfllp.com

*Interim Liaison Counsel for
Plaintiffs*

## CERTIFICATION UNDER L.R. 7.1D

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned

counsel hereby certifies that the above and foregoing is a computer document

prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

So certified, this 6th day of November, 2015.

/s/Daniel L. Low
Daniel L. Low
KOTCHEN & LOW LLP
1745 Kalorama Rd. NW, Suite 101
Washington, DC 20009
dlow@kotchen.com

*Interim Co-Lead Counsel for Plaintiffs*

21

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on this day he filed the foregoing, under seal, with the Clerk of Court and caused the same to be delivered via e-mail to the following attorneys of record:

| Counsel for Delta Air Lines, Inc. | Counsel for AirTran Airways, Inc. |
|---|---|
| Randall Lee Allen<br>Sam Rutherford<br>Nowell Berreth<br>ALSTON & BIRD<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424<br>randall.allen@alston.com<br>sam.rutherford@alston.com<br>nberreth@alston.com<br><br>James P. Denvir<br>Scott Gant<br>Michael Mitchell<br>BOIES SCHILLER & FLEXNER LLP<br>5301 Wisconsin Avenue, N.W., Suite 800<br>Washington, DC 20015<br>jdenvir@bsfllp.com<br>sgant@bsfllp.com<br>mmitchell@bsfllp.com | Bert W. Rein<br>WILEY REIN LLP<br>1776 K Street N.W.<br>Washington, DC 20006<br>brein@wileyrein.com<br><br>Alden L. Atkins<br>Vincent van Panhuys<br>VINSON & ELKINS L.L.P.<br>2200 Pennsylvania Avenue, N.W.<br>Suite 500 West<br>Washington, DC 20037<br>aatkins@velaw.com<br>vvanpanhuys@velaw.com<br><br>Roger W. Fones<br>Josh Hartman<br>Lauren Navarro<br>MORRISON & FOERSTER LLP<br>2000 Pennsylvania Avenue, N.W.<br>Suite 600<br>Washington, DC 20006<br>rfones@mofo.com<br>jhartman@mofo.com<br>lnavarro@mofo.com |

22

| | Thomas W. Rhodes<br>William Parker Sanders<br>SMITH, GAMBRELL & RUSSELL, LLP<br>Suite 3100, Promenade II<br>1230 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>trhodes@sgrlaw.com<br>psanders@sgrlaw.com |
| --- | --- |

So certified, this 6th day of November, 2015.

/s/Daniel L. Low
Daniel L. Low
KOTCHEN & LOW LLP
1745 Kalorama Rd. NW, Suite 101
Washington, DC 20009
dlow@kotchen.com

*Interim Co-Lead Counsel for Plaintiffs*